1 | ELISE D. KLEIN, SB# 111712
    E-Mail: klein@lbbslaw.com
2 | JANELLE F. GARCHIE, SB# 118453
    E-Mail: garchie@lbbslaw.com
3 | **LEWIS BRISBOIS BISGAARD & SMITH LLP**
    650 West "C" Street, Suite 800
4 | San Diego, California 92101
    Telephone: (619) 233-1006
5 | Facsimile: (619) 233-8627

6 | Attorneys for HEALTH NET OF CALIFORNIA, INC.

*FILED*

2008 MAR -3  PM 4: 17

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

*(left margin, vertical)* **LEWIS BRISBOIS BISGAARD & SMITH LLP**
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

8 | UNITED STATES DISTRICT COURT

9 | SOUTHERN DISTRICT OF CALIFORNIA

11 | FREDA SUSSMAN,                    ) CASE NO. **08 CV 0392 H BLM**
12 |             Plaintiff,            )
                                       ) **NOTICE OF REMOVAL OF
13 |     v.                            ) ACTION UNDER 28 U.S.C.
                                       ) SECTION 1441(b) (FEDERAL
14 | ARMELIA SANI, M.D., SHILEY EYE    ) QUESTION)**
    CENTER, UCSD MEDICAL CENTER,      )
15 | REGENTS OF THE UNIVERSITY OF      )
    CALIFORNIA, HEALTH NET, INC.,     )
16 | HEALTH NET SENIORITY PLUS,        )
    LINDA BEACH, HAIDEE               )
17 | GUTIERREZ, and DOES 1 through 40, )
    inclusive,                        )
18 |                                   )
                 Defendants.           )
19 | _____  )

20 | TO THE CLERK OF THE ABOVE-ENTITLED COURT:

21 |     PLEASE TAKE NOTICE that defendant Health Net of California, Inc.,

22 | ("Health Net") hereby removes to this Court the state court action described below.

23 |     1.    On November 13, 2007, Freda Sussman ("plaintiff") commenced an

24 | action against Health Net entitled *Freda Sussman v. Armelia Sani, M.D. et al.*, San

25 | Diego County Superior Court Case No. 37-2007-00081656-CU-MM-CTL (the

26 | "Action"). True and correct copies of the Summons and Complaint, and the other

27 | documents that were served on Health Net concurrently therewith, are collectively

28 | attached hereto as Exhibit "A."

4825-0901-9138.1

-1-

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1    2.    Health Net was served with the Summons and Complaint on January 31,

2    2008; hence this notice of removal is timely.

3    3.    The Action is a civil action of which this Court has original jurisdiction

4    under 28 U.S.C. section 1331, and is one which may be removed to this Court by

5    defendant pursuant to the provisions of 28 U.S.C. section 1441(b) in that it is based

6    upon federal question jurisdiction.

7    4.    The Complaint filed in the Action asserts claims against Health Net under

8    the Medicare Act and specifically under the 2003 amendment to the Medicare Act

9    known as the Medicare Prescription Drug, Improvement, and Modernization Act of

10   2003 ("MMA").  This Court has jurisdiction over such claims pursuant to the Act,

11   and the Action may therefore be removed to this Court pursuant to 28 U.S.C. section

12   1441(b).

13   5.    In enacting the MMA, Congress declared that "[t]he standards established

14   under this part shall supersede any State law or regulation (other than State licensing

15   laws of State laws relating to plan solvency) with respect to MA [Medicare

16   Advantage] plans which are offered by MA organizations under this part." (42

17   U.S.C. § 1395w-26(b)(3).)

18   6.    The Code of Federal Regulations provides that the MMA "establishes

19   standards and sets for the requirements, limitations, and procedures for Medicare

20   services furnished, or paid for, by Medicare Advantage organizations through

21   Medicare Advantage plans." (42 C.F.R. Ch. IV, Subch. B, Part 422, Medicare

22   Advantage Program, § 422.1.)  The regulations contain a grievance procedure to

23   address complaints regarding benefits and coverage provided by Medicare

24   Advantage plans. (42 C.F.R. §§ 422.560 et seq.)  Section 422.80 regulates marketing

25   materials and election forms used by Medicare Advantage plans.  "Marketing

26   materials" are defined as including "any informational materials targeted to Medicare

27   beneficiaries" which promote the Medicare Advantage plan, inform Medicare

28   beneficiaries about enrollment, explain the benefits of enrollment, or explain how

1  Medicare services are covered under the Medicare Advantage plan. (42 C.F.R. §

2  422.80(b)(1)-(4).)

3      7.    State statutory and common law contract and tort claims that relate to a

4  Medicare Advantage plan are pre-empted by the Medicare Act and the MMA. Even

5  if a complaint asserts only state claims and does not refer to the Medicare Act or the

6  MMA, the suit may be removed because the Medicare Act and the MMA create a

7  federal cause of action over claims by a plan member concerning the " requirements,

8  limitations, and procedures for Medicare services furnished, or paid for, by Medicare

9  Advantage organizations through Medicare Advantage plans." (42 C.F.R. § 422.1.)

10  Any claims alleging the improper denial of Medicare Advantage contract benefits or

11  deceptive marketing of a Medicare Advantage plan are removable, even though the

12  grounds for removal may not appear on the face of the complaint.

13      8.    In this case, Plaintiff alleges three causes of action against Health Net

14  arising out of her membership in the Medicare Advantage plan "Seniority Plus," (1)

15  Bad Faith Insurance Tactics; (2) Fraud and Deceit; and (3) Unfair Business Practices.

16  Plaintiff alleges that Health Net denied recommended rehabilitation services without

17  adequate investigation. Plaintiff further alleges that Health Net made marketing

18  misrepresentations to her and other members of the public to induce them to enroll in

19  Seniority Plus. Finally, plaintiff alleges unfair business practices against Health Net,

20  by using incentives and disincentives to health care providers. (*Complaint*, ¶¶ 52-

21  73.)  The Medicare Act and the MMA afford complete preemption of plaintiff's

22  claims in this Action. (*See Clay v. Permanente Medical Group, Inc.* (N.D. Cal.

23  2007) 2007 WL 4374273; *see also Drissi v. Kaiser Foundation Hospitals, Inc.* (N.D.

24  Cal. 2007) 2008 WL54382.)

25  / / /

26  / /

27  /

28

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1    DATED: March 3, 2008              LEWIS BRISBOIS BISGAARD & SMITH LLP

2

3

4    By _____
                    Elise D. Klein
5                   Janelle F. Garchie
                    Attorneys for HEALTH NET OF
6                   CALIFORNIA, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

**EXHIBIT A**

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
See Attachment A

FOR COURT USE ONLY

CIV... DEPARTMENT... AGE 2
CENTRAL DIVISION

2007 NOV 13  PM 3: 56

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY. CA

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
FREDA SUSSMAN

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California,*
*(www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Diego Superior Court
330 West Broadway
San Diego, CA 92101

CASE NUMBER:
*(Número del Caso)* 2007-00081656-CU-MM-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Nancy Sussman, Esq., SBN108689, Hayworth & Sussman, 1901 First Avenue, Suite 220, San Diego, CA
92101 phone: (619) 231-1215

| DATE: *(Fecha)* NOV 13 2007 | Clerk, by *(Secretario)* K Brown | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☒ as the person sued under the fictitious name of *(specify):* Doe 1
   Healthnet of CALIFORNIA
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

ATTACHMENT A

ARMELIA SANI, M.D., SHILEY EYE CENTER,
UCSD MEDICAL CENTER, REGENTS OF THE
UNIVERSITY OF CALIFORNIA, HEALTH NET
SENIORITY PLUS, LINDA BEACH, HAIDEE
GUTIERREZ, and DOES 1 through 40, inclusive.

1  Nancy Sussman SBN 108689
   HAYWORTH AND SUSSMAN
2  1901 First Avenue, Suite 220
   San Diego, CA 92101
3  Telephone: (619) 231-1215

4  Thor O. Emblem SBN 141880
   Law Office of Thor Emblem
5  205 West Fifth Ave., Suite 105
   Escondido, CA 92025
6  Telephone: (760) 738-9301

7  Attorneys for Plaintiff

8

9

10              SUPERIOR COURT OF CALIFORNIA

11                  COUNTY OF SAN DIEGO

12  FREDA SUSSMAN,                    )  CASE NO. 37-2007-00081656-CU-MM-CTL
                                      )
13  Plaintiff,                        )  COMPLAINT FOR
                                      )  MEDICAL MALPRACTICE, LACK OF
14                                    )  INFORMED CONSENT, VIOLATION OF
                                      )  MEDICAL INFORMATION ACT,
15  v.                                )  RETALIATION AGAINST A PATIENT,
                                      )  BREACH OF FIDUCIARY DUTY, BAD
16  ARMELIA SANI, M.D., SHILEY EYE CENTER) FAITH INSURANCE TACTICS, UNFAIR
    UCSD MEDICAL CENTER, REGENTS      )  BUSINESS PRACTICES, VIOLATION
17  OF THE UNIVERSITY OF CALIFORNIA,  )  OF PENAL CODE SECTION 502
    HEALTH NET, INC., HEALTH NET      )
18  SENIORITY PLUS , LINDA BEACH,     )
    HAIDEE GUTIERREZ,                 )
19                                    )
                                      )
20      DOES 1 through 40,            )
    inclusive,                        )
21                                    )
                                      )
22      Defendants.                   )
                                      )

23

24      Comes now Plaintiff FREDA SUSSMAN for causes of action against defendants, and each of

25  them, alleges as follows:

26      1.      At all times herein mentioned, Plaintiff FREDA SUSSMAN was a resident of San Diego

27  County, California.

28  *Complaint*                              1

1    2.    At all times mentioned herein, Defendant, UCSD MEDICAL CENTER (hereafter

2    referred to as "Medical Center") was a hospital duly licensed and accredited as an acute medical facility

3    in the State of California.

4    3.    Defendants, REGENTS OF THE UNIVERSITY OF CALIFORNIA are the owners and

5    operators of Defendant UCSD MEDICAL CENTER

6    4.    Defendant, SHILEY EYE CENTER is a subsidiary of Defendant UCSD MEDICAL

7    CENTER

8    5.    Defendant, ARMELIA SANI M.D. is a medical doctor in internal medicine and is licensed

9    by the State of California and she is an employee of the Defendant, UCSD and REGENTS OF THE

10   UNIVERSITY OF CALIFORNIA.

11   6.    At all time mentioned herein, Defendant SANI held herself out to possess that degree of skill,

12   ability and learning common to general practitioners, and at all times mentioned herein she held herself

13   out as a licensed and trained physician with experience in internal medicine with an office in San Diego

14   California.

15   7.    At all times mentioned herein, Defendant LINDA BEACH was an agent and employee of

16   Defendants UCSD MEDICAL CENTER and REGENTS OF THE UNIVERSITY OF CALIFORNIA.

17   8.    At all times mentioned herein, Defendant HAIDEE GUTIERREZ was an agent and

18   employee of Defendants UCSD MEDICAL CENTER and REGENTS OF THE UNIVERSITY OF

19   CALIFORNIA.

20   9.    At all times mentioned herein said Defendant HEALTH NET, INC. was an insurance

21   company that administered its "Health Net Seniority Plus" program with UCSD as HMO. Its principal

22   place of business is Woodland Hills, California, but is doing business in San Diego County, California.

23   10.    The true names and capacities of defendants named herein as DOES 1 through 40,

24   inclusive are unknown to plaintiff who therefore sues said defendants, and each of them, by such fictitious

25   names. Plaintiff will amend this complaint to show their true names and capacities when they have been

26   ascertained. Plaintiff is informed and believes and thereon alleges that each of said fictitiously named

27

28   *Complaint*                            2

1  defendants are negligently responsible in some manner for the occurrences herein alleged, and Plaintiff's

2  injuries as herein alleged were proximately caused by the negligence of each defendant.

3      11.  At all times herein mentioned, defendants, DOES 1 through 40, inclusive, and each of them,

4  were the agents or employees of defendants, and each of them, and in doing the things hereinafter alleged,

5  were acting within the scope of their authority as such agents and employees and with the consent of their

6  co-defendants.

7      12.  Plaintiff's 90 Day Notices of Intention to Sue a Health Care Provider pursuant to C.C.P.

8  section 364 were served on 5/25/07.  See Exhibits 1 and 2, attached hereto and incorporated by reference.

9  Plaintiff's action is timely pursuant to C.C.P. Section 340.5.

10      13.  Plaintiff's Demand to Preserve Evidence pursuant to C.C.P. section 2035.010 et seq was

11  served on Defendants REGENTS OF THE UNIVERSITY OF CALIFORNIA and UCSD MEDICAL

12  CENTER on April 30, 2007.  See Exhibit 3.

13                                  I.
                     **FIRST CAUSE OF ACTION**
14                    **MEDICAL MALPRACTICE (I)**
           **(Against Defendants SANI, UCSD MEDICAL CENTER, and REGENTS OF**
15                    **THE UNIVERSITY OF CALIFORNIA)**

16      14.  Plaintiff reasserts paragraphs 1-13 as though fully set forth herein.

17      15.  Defendant SANI had been the Plaintiff's primary physician for several years prior to the

18  subject incidents. Plaintiff had been treating at Defendant UCSD for over 20 years.  The Defendant had a

19  duty to use reasonable care in treating the Plaintiff.  The Defendant knew that the Plaintiff had several

20  medical conditions, including diabetes and hypertension and had developed atrial fibrillation while under

21  defendant's SANI's care but was not treated for the same nor referred to a cardiologist. The Defendant

22  also knew that there was a family history of stroke.

23      16.  Plaintiff manifested unexplained mostly unilateral deficits in her visual field tests, difficulty

24  walking, balance problems, shortness of breath, change in vision, peripheral lower extremity edema, atrial

25  fibrillation untreated, and Diabetes and an undiagnosed, emergent heart murmur.  During the last year of

26  her treatment of the Plaintiff, the Defendant ignored an alarming increase in the number and severity of

27  factors for and signs of a stroke.

28  *Complaint*                              3

17. Defendant SANI failed to diagnose and treat Plaintiff's atrial fibrillation, diabetes, edema, heart problems, and balance problems, and diagnosis murmurs and to perform tests to determine the condition of the carotid arteries and did not diagnose the severe occlusion thereof. Defendant did not treat atrial fibrillation which greatly increased the risks of having a stroke. The Defendant stopped conducting essential tests and ordering lab and medication in order to reduce costs for Defendant HEALTH NET. The Defendant failed to provide continuity of care, and she did not order new medications or laboratory for the nearly entire duration of her care of Plaintiff. The Defendant failed to heed the warnings of the Plaintiff's immediate family members just one month prior regarding the Plaintiff's daughter's concerns about impending stroke symptoms or even call the patient herself. However after the C.V.A. (stroke), Defendant immediately tried to contact the patient and violated H.I.P.A.A. (45 C.F.R. section 164.534 et seq) to acquire information from a subsequent hospital when her family called to complain about the care rendered by Defendant SANI.

18. The misconduct described above was below the standard of care for reasonable practitioners in the same or similar circumstances,

19. As a direct result of the misconduct of the Defendant, on 2/23/07, the Plaintiff suffered a massive stroke. Plaintiff is severely impaired, and completely physically dependent, and requires and will for the rest of her life require 24 hour care from a home health aid for the remainder of her life. As a direct result of the misconduct of the Defendant, the Plaintiff has and will continue to suffer special and general damages, including pain and suffering and emotional distress according to proof.

II.
SECOND CAUSE OF ACTION
MEDICAL MALPRACTICE (II)
(Against Defendants SHILEY EYE CENTER, UCSD MEDICAL CENTER and REGENTS OF THE UNIVERSITY OF CALIFORNIA)

20. Plaintiff reasserts paragraphs 1-19 as though fully set forth herein.

21. Defendant SHILEY EYE CENTER and its agents had a duty to use reasonable care in treating the Plaintiff. The conduct of the Defendants fell below the standard of care by failing to exclude the Plaintiff's sudden visual field deficit that were not related to glaucoma but were indications of her impending stroke and unilateral severe right carotid occlusion. Instead, Defendant's agents merely

*Complaint*                                    4

1   concluded that the Plaintiff's pronounced visual field defects "could not be explained." Defendant's

2   agent, a fellow, ordered an MRI of the brain to exclude a brain tumor. Dr Leung was only a fellow and

3   not an experienced specialist. Defendant SHILEY had very experienced opthamologists who the attending

4   physicians at SHILEY knew had much more experience than Dr Leung. The fellow presented the

5   Plaintiff's case to his superiors requesting help in establishing the rule out diagnoses. When the MRI

6   failed to disclose the cause of Plaintiff's problems, the attending superiors encouraged the fellow to

7   forget about it, because of Plaintiff's age. Instead Defendant failed to attribute the problem, with a

8   primarily unilateral visual change to occlusion of the Carotid artery. Instead, Defendant identified the

9   visual field defects as being due to the Plaintiff's age and were dismissive of the cause due to Plaintiff's

10   age.

11        22.  A pre M.R.I. visit was changed to try to make it appear that the change in visual field was

12   bilateral instead of unilateral.

13        23.  Reasonable and customary practice would have been to conduct further tests to ascertain

14   the cause of Plaintiff's visual field defects. If such tests had been conducted, Plaintiff's massive right

15   sided stroke could and would have been avoided. Although an impending stroke was considered by the

16   Defendant's agents as the cause of the deficit, it was cost prohibitive to go any further as to diagnosis.

17        24.  As a direct result of the negligence of the Defendant's agents, the Plaintiff suffered a

18   massive and debilitating stroke on 2/23/07. Plaintiff is severely impaired, completely physically

19   dependent, and now requires 24 hour care from a home health aid. As a direct result of the misconduct

20   of the Defendants, the Plaintiff has and will continue to suffer special and general damages according to

21   proof at trial.

22                                   III.
                          THIRD CAUSE OF ACTION
23                       LACK OF INFORMED CONSENT (I)
     ( Against Defendants SANI, UCSD MEDICAL CENTER and REGENTS OF THE UNIVERSITY
24                               OF CALIFORNIA)

25        25.  Plaintiff reasserts paragraphs 1-24 as though fully set forth herein.

26        26.  The Defendants had a duty to use reasonable care in treating Plaintiff. During the last nine

27   months of her treatment of the Plaintiff, the Defendant ignored an alarming increase in the number and

28   *Complaint*                                    5

1    severity of factors for and signs of a stroke. Plaintiff manifested unexplained deficits in her visual field

2    tests, difficulty walking, balance problems, shortness of breath, edema on only one side of her body, atrial

3    fibrillation, and a newly discovered heart murmur.

4         27.   Defendant SANI failed to treat the atrial fibrillation, diabetes, edema, heart problems, and

5    balance problems, and did not provide to the Plaintiff a warning regarding the significance of atrial

6    fibrillation. The Defendant failed to provide continuity of care, as evidenced by the fact that she did not

7    order new medications for five years. The Defendant stopped conducting essential tests in order to reduce

8    costs. The Defendant on information and belief had a financial incentive to reduce the cost of treatment to

9    patients such as the Plaintiff. The Defendant did not test or scan the carotid arteries to rule out

10   occlusion.

11        28.   Defendant SANI failed to inform the Plaintiff of the significance of the problems she was

12   experiencing. Defendant failed to inform Plaintiff of the existence and need for tests which would

13   disclose the cause of her problems. Defendant also failed to disclose to Plaintiff the material risks of

14   failing to order appropriate new medications over the last five years of her treatment of Plaintiff. A

15   reasonable patient in the Plaintiff's position would want to know the existence and significance of the

16   tests which would disclose the cause of Plaintiff's medical condition, and of the material risks of failing

17   to order appropriate new medications over the last five years of her treatment particularly with new onset

18   of atrial fibrillation, systolic murmur and problems with walking. Defendant, SANI, failed to disclose the

19   existence and significance of the tests which would disclose the cause of the Plaintiff's medical condition,

20   and failed to order appropriate new medications in an effort to reduce the cost of Plaintiff's care.

21   Defendant ,SANI failed to refer Plaintiff to a cardiologist because of her Medicare supplement.

22   Defendant SANI failed to disclose the financial interest she had in reducing the cost of care rendered to

23   Plaintiff. That is, on information and belief, the Defendant because of incentives the Defendant would

24   increase her income to her employer by saving money for the HMO by reducing the cost of care rendered

25   to the Plaintiff. A reasonable patient in the Plaintiff's situation would have demanded that she receive the

26   relevant tests and appropriate medications. Plaintiff requested to be transferred to the care of Dr

27   Ramsdale, but Defendant SANI's nurse refused, stating that she was not able to transfer the plaintiff. Dr

28   *Complaint*                                        6

1  Ramsdale was a Geriologist and was more familiar with the care and treatment of atrial fibrillation and the

2  administration of Coumadin and the testing involved. Defendant SANI was preoccupied with her two

3  children, one a new baby and was only working part time. Defendant SANI was not taking any new

4  HMO. patients.

5      29.   The failure of the Defendant to disclose the material facts regarding the lack of treatment of

6  the Plaintiff's risk factors for stroke directly caused Plaintiff to acquiesce in the non-treatment by the

7  Defendant as she was not offered any treatment. As a direct result of the negligence of the Defendant,

8  Plaintiff suffered a massive and debilitating stroke on 2/23/07.   Plaintiff is severely impaired, completely

9  physically dependent, and requires 24 hour care from a home health aid for the remainder of her life.   As

10 a direct result of the misconduct of the Defendant, the Plaintiff has and will continue to suffer special and

11 general damages according to proof at trial.

12                                IV.
                   FOURTH CAUSE OF ACTION
13              LACK OF INFORMED CONSENT (II)
     ( Against Defendants SHILEY EYE CENTER, UCSD MEDICAL CENTER, and REGENTS OF
14                   THE UNIVERSITY OF CALIFORNIA)

15     30.   Plaintiff reasserts paragraphs 1-29 as though fully set forth herein.

16     31.   Defendants had a duty to disclose all material risks and benefits of their treatment of

17 Plaintiff, and to obtain Plaintiff's informed consent to any treatment.  Defendant's agents merely

18 concluded that the Plaintiff's pronounced visual field defects "could not be explained."  Defendant's agent

19 ordered an MRI of the brain to exclude a brain tumor.  Dr Leung was only a fellow and not an experienced

20 specialist. He presented the Plaintiff's case to his superiors for help in the diagnosis. Dr. Leung's request

21 for a conference regarding the Plaintiff's case was arbitrarily denied.  When the MRI failed to disclose the

22 cause of the Plaintiff's problems, the fellow's superiors failed to follow up with attempts to determine the

23 true cause of the visual filed defects.  Instead, the attending of the Superior Eye Center simply attributed

24 the visual field defects as being due to the Plaintiff's age.

25     32.   Defendant's agents failed to disclose the risks associated with failing to properly follow up

26 with respect to the actual causes of the plaintiff's visual field defects when the MRI failed to disclose the

27 cause of the Plaintiff's problems.  A reasonable patient in the Plaintiff's situation would want to be

28 *Complaint*                                    7

1  informed regarding the failure to follow up on the actual cause of the Plaintiff's problems given that the

2  MRI failed to disclose the cause.

3      33.   If the appropriate tests had been conducted, the occlusion of the right carotid artery would

4  have been recognized. The massive stroke Plaintiff suffered could have been avoided. Although an

5  impending stroke was considered by Defendant's agents as the cause of the defects, the case was deferred

6  as glaucoma changes due to advanced age.

7      34.  A reasonable patient in the Plaintiff's situation would have demanded that the Defendant's

8  agents conduct further testes in order to ascertain the actual cause of the Plaintiff's problems.  The injury

9  to the Plaintiff resulting from Defendants' misconduct was not manifested until she suffered the massive

10  stroke. As a direct result of the negligence of the Defendant's agents, the Plaintiff suffered a massive and

11  debilitating stroke on 2/23/07. The Plaintiff is severely impaired, completely physically dependent, and

12  requires and will require 24 hour care from a home health aid for the remainder of her life.  As a direct

13  result of the misconduct of the Defendant, the Plaintiff has and will continue to suffer special and general

14  damages according to proof at trial.

V.

**FIFTH CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**(Against Defendant SANI)**

15

16

17

18      35.   Plaintiff reasserts paragraphs 1-34 as though fully set forth herein.

19      36.   As the Plaintiff's treating physician, at all times herein Defendant SANI had a fiduciary

20  duty to the Plaintiff. During the last nine months of her treatment of the Plaintiff, before the CVA of

21  2/23/07, the Defendant ignored an alarming increase in the number and severity of factors and signs of a

22  stroke. The Plaintiff manifested unexplained deficits in her visual field tests, difficulty walking, balance

23  problems, shortness of breath, edema on only one side of her body, atrial fibrillation, and an newly

24  discovered heart murmur.

25      37.   Defendant, SANI failed to treat the atrial fibrillation, diabetes, edema, heart problems, and

26  balance problems, and did not give Plaintiff a warning regarding the significance of atrial fibrillation.

27  Defendant failed to provide continuity of care, as evidenced by the fact that she did not order new

28  *Complaint*                                        8

1  medications for five years. Defendant stopped conducting essential tests in order to reduce costs. The

2  Defendant on information and belief had a financial incentive to reduce the cost of treatment to patients

3  such as Plaintiff.

4       38.  Defendant, SANI intentionally failed to inform the Plaintiff of the significance of the

5  problems she was experiencing. The Defendant intentionally failed to inform the Plaintiff of the

6  existence and need for tests which would disclose the cause of her problems. The Defendant also

7  intentionally failed to disclose to the Plaintiff the material risks of failing to order appropriate new

8  medications over the last five years of her treatment of the Plaintiff, resulting in the CVA of 2/23/07.

9  Defendant SANI failed to disclose the existence and significance of the tests which would disclose the

10  cause of the Plaintiff's medical condition, and failed to order appropriate new medications in an effort to

11  reduce the cost of the Plaintiff's care. Defendant SANI failed to refer Plaintiff to a cardiologist.

12  Defendant SANI failed to disclose the financial interest she had in reducing the cost of care rendered to

13  the Plaintiff. That is, on information and belief, the Defendant because of incentives the Defendant would

14  increase her income to her employer by saving money for the HMO by reducing the cost of care rendered

15  to the Plaintiff. Plaintiff requested to be transferred to the care of Dr Ramsdale, but Defendant SANI's

16  nurse refused stating that she was not able to transfer plaintiff. Dr Ramsdale was a Geriologist and was

17  more familiar with the care and treatment of atrial fibrillation and the administration of Coumadin and the

18  required testing involved. Defendant SANI was preoccupied with her two children, one a new baby and

19  was only working part time. Defendant SANI was not taking any new HMO patients.

20       39.  Further, subsequent to being informed of Plaintiff's CVA, Defendant SANI began to alter

21  with fraudulent intent the Plaintiff's medical records. The alterations were exculpatory. The Defendant

22  cut and pasted information out of a template and/or incorporated information from another patient, and

23  Plaintiff's previous records and conspired with others, including Defendants BEACH and GUTIERREZ,

24  to do the same. The alterations occurred during or immediately before a telephone conversation between

25  the Defendant and the Plaintiff's daughter, Nancy Sussman, in which she complained about Dr SANI's

26  care and lack thereof and Defendant's failure to return the phone call prior to the stroke. Defendant

27  initiated a campaign of inserting false and defamatory statements into the Plaintiff's medical and hospital

28  *Complaint*                                         9

1   records which was entirely irrelevant to the Plaintiff's medical care. After the records were altered and

2   rearranged, the Defendant took them to Risk Management in a fraudulent attempt to have the records

3   validated as the "original" records.

4        40.   The altered medical records provide a false and exculpatory account of the negligent care

5   rendered to Plaintiff by Defendant. The representation Defendant now makes that the records are true

6   and accurate is false and Defendant knows that it is false. Defendant's misconduct was an intentional

7   violation of the fiduciary duties she owed the Plaintiff.

8        41.   As a direct result of the misconduct of the Defendant, the Plaintiff suffered a massive and

9
    debilitating stroke on 2/23/07. Plaintiff is severely impaired, completely physically dependent, and
10
11  requires and will for the rest of her life require 24 hour care from a home health aid. As a direct result of

12  the misconduct of the Defendant that occurred both prior to and after the Plaintiff's stroke, the Plaintiff

13  has and will continue to suffer special and general damages according to proof at trial.

14                                      VI.

15                        SIXTH CAUSE OF ACTION

16  RETALIATION AGAINST A PATIENT IN VIOLATION OF HEALTH AND SAFETY
                    CODE SECTION 1278.5(b)(1) ET SEQ
17
        (Against Defendants SANI, BEACH, GUTIERREZ, UCSD MEDICAL CENTER, and
18                    REGENTS OF THE UNIVERSITY OF CALIFORNIA)

19       42.   Plaintiff reasserts paragraphs 1-41 as though fully set forth herein.

20       43.   Subsequent to being informed of the Plaintiff's CVA, in retaliation against the Plaintiff for

21  her presentation of a complaint and/or grievance, Defendant SANI began to alter with fraudulent intent the

22  Plaintiff's medical records. The alterations were exculpatory. The Defendant cut and pasted information

23  out of a template and/or incorporated information from another patient, and conspired with others,

24  including Defendants BEACH and GUTIERREZ to do the same. The alterations occurred during or

25  immediately before a telephone conversation between the Defendant and the Plaintiff's daughter, Nancy

26
27  Sussman, in which she complained about Dr SANI's care and lack thereof and her failure to return the

28  *Complaint*                          10

1  phone call PRIOR to the stroke. Defendants initiated a campaign of inserting false and defamatory

2  statements into the Plaintiff's medical records which were entirely irrelevant to the Plaintiff's medical

3  care. The inserted statements consisted of personal attacks against Plaintiff's daughter, who was

4  attempting to ensure that Plaintiff receive adequate care after the occurrence of the stroke due to

5  Defendant's negligence. Defendants changed the phone message of the plaintiff's daughter. The

6  Defendants also inserted such irrelevant and inflammatory statement into records of telephone calls with

7  the Plaintiff's daughter. The Defendant also caused other agents of U.C.S.D., including, Defendants

8  BRACH and GUTIERREZ to include such material in their accounts of telephone conversations with the

9  Plaintiff's daughter. After the records were doctored, the Defendant to them to Risk Management in a

10  fraudulent attempt. to have the records validated as the original records.

11

12      44.    The altered medical records provide a false and exculpatory account of the negligent care

13  rendered to Plaintiff by Defendant.   Defendant now falsely represents that the records are true and

14  accurate is false and Defendant knows that it is false.  When the defendant made this representation, she

15  knew it to be false and made this representation with the intent to retaliate against the Plaintiff by

16  discrediting members of Plaintiff's family and to destroy Plaintiff's chance to seek redress for the injuries

17  caused her by Defendant.

18      45.    As a direct result of Defendant's misconduct, Plaintiff has suffered and will continue to

19  suffer humiliation, mental anguish, and damages according to proof.

20      46.    The aforementioned conduct of Defendants was intentional, and was despicable conduct that

21  subjected the plaintiff to a cruel and unjust hardship in conscious disregard of plaintiff's rights.

22  ///

23  ///

24  ///

25  ///

26  ///

27

28  *Complaint*                                11

## VII.

### SEVENTH CAUSE OF ACTION

### VIOLATION OF CONFIDENTIALITY OF MEDICAL INFORMATION ACT CIVIL CODE SECTION 56.10 ET SEQ

### (Against Defendants SANI, BEACH, GUTIERREZ UCSD MEDICAL CENTER, and REGENTS OF THE UNIVERSITY OF CALIFORNIA)

47.   Plaintiff reasserts paragraphs 1-46 as though fully set forth herein.

48.   Pursuant to Civil Code section 56.10 et seq, Defendants had a duty not to disclose medical information without first obtaining the consent of Plaintiff. Subsequent to being informed of the Plaintiff's CVA, in retaliation against Plaintiff for her presentation of a complaint and/or grievance, Defendant SANI began to alter with fraudulent intent the Plaintiff's medical records. The alterations were exculpatory. Defendant cut and pasted information out of a template and/or incorporated information from another patient, and conspired with others to do the same. The alterations occurred during or immediately before a telephone conversation between Defendant and Plaintiff's daughter. Defendant initiated a campaign of inserting false and defamatory statements into Plaintiff's medical records which was entirely irrelevant to Plaintiff's medical care. The inserted statements consisted of personal attacks against the Plaintiff's daughter, who was attempting to ensure that the Plaintiff receive adequate care after the occurrence of the stroke. The Defendant also inserted such irrelevant and inflammatory statement into records of telephone calls with the Plaintiff's daughter. The Defendant also caused or conspired with other agents of UCSD, including Defendants BEACH and GUTIERREZ, to include such material in their accounts of telephone conversations with the Plaintiff's daughter and change the patient's phone messages and visits as well. After the records were altered, the Defendant took them to Risk Management in a fraudulent attempt to have the records validated as the "original" records.

49.   The altered medical records provide a false and exculpatory account of the negligent care rendered to the Plaintiff by Defendant. The representation the Defendant now makes that the records are true and accurate is false and the Defendant knows that it is false. When the defendant made this

*Complaint*                                    12

1  representation, she knew it to be false and made this representation with the intent to retaliate against the

2  Plaintiff and to destroy her chance to seek redress for the injuries caused her by the Defendant.

3      50.   Defendants violated the Confidentiality of Medical Information Act by making false and

4  defamatory statements to others that was not necessary for, or related to, the care of Plaintiff. As a direct

5  result of Defendants' misconduct, Plaintiff has suffered and will continue to suffer humiliation, mental

6  anguish, and damages according to proof at trial.

7      51.   The aforementioned conduct of Defendants was intentional, and was despicable conduct

8  that subjected the plaintiff to a cruel and unjust hardship in conscious disregard of plaintiff's rights.

9

10                                 VIII.
                        EIGHTH CAUSE OF ACTION

11                       BAD FAITH INSURANCE TACTICS

12          (Against Defendants HEALTHNET, INC., and HEALTHNET SENIORITY PLUS)

13      52.   Plaintiff reasserts paragraphs 1-51 as though fully set forth herein.

14

15      53.   At all times herein, Plaintiff FREDA SUSSMAN was a member of Defendant

16  HEALTHNET, an Health Maintenance Organization (HMO). The Plaintiff was a participant in the

17  HEALTHNET SENIORITY PLUS, a Medicare Supplement program administered by Defendant

18  HEALTH NET. HMOs make money by reducing costs, which in this case severely adversely affected the

19  quality of care Plaintiff received.

20      54.   Subsequent to Plaintiff's stroke, the Plaintiff was taken to the ICU at Alvarado Hospital as

21  she was too unstable for transport to UCSD. She remained at Alvarado for seven days. After seven days,

22  the Plaintiff was removed from Alvarado's Telemetry floor at nine p.m. to U.C.S.D., due to the

23  Defendant's contractual relationship with U.C.S.D. Plaintiff was transferred from I.C.U. and was still

24  unstable. She was awakened from her sleep and dragged in the middle of the night to UCSD arriving

25  around 10:00 P.M. because Health Net was afraid that if they waited one more day they would have to pay

26  an outside hospital additional costs.

27

28  *Complaint*                          13

55. Just prior to the transfer to UCSD, an internist, Dr. Ramenini, and a neurologist, Dr. Evens, had recommended that Plaintiff be placed in an acute rehabilitation facility. After all it was the Plaintiff first stroke. The recommendations were placed in the Plaintiff's chart, which was forwarded to UCSD with her hospital records

56. Despite the recommendations for acute rehabilitation, after 4 days at UCSD the Defendant's contracting agent indicated that the Plaintiff was not eligible for rehabilitation therapy because a physical therapist said so at the only contracting facility, i.e. Sharp Rehabilitation Hospital, that was covered by her supplemental insurance. Defendant UCSD refused to fax the recommendations of Drs. Ramenini and Evens to Sharp Rehabilitation Hospital. As a result, a non physician "physical therapist" at UCSD stated that the Plaintiff could not endure three hours of rehabilitation services a day, and so she should be transferred to a nursing facility. However, another case worker at Defendant UCSD on the 8th floor confirmed the two physicians' opinion that the Plaintiff met the criteria for acute rehabilitation and suggested Plaintiff's transfer for rehabilitation at Alvarado Hospital. It is important to note that Sharp and Alvarado have the same criteria for admission into acute rehabilitation. The operative difference is that the Defendants HEALTHNET and HEALTHNET SENIORITY PLUS would pay for therapy at Sharp Rehabilitation, but not at Alvarado Rehabilitation.

57. As a result of the denial of services based upon the opinion of a non physician "physical therapist," the plaintiff's daughter, who had the Plaintiff's power of attorney, was informed that the Plaintiff would have to pay for rehabilitation services out of pocket or the Plaintiff would be transferred to a nursing facility, Magnolia. The Magnolia facility had received numerous citations from the D.H.S. and was one of the worst in San Diego County. The Plaintiff's family had no choice to transfer the plaintiff to Alvarado Medical Center. The out of pocket costs included a week of services and physician bills in excess of $51,000. Defendant also said Plaintiff will have to pay if she wants an ambulance to transfer as Defendant's insurance company only pays for Hospital- nursing home transfers. Plaintiff's family said they would then have to drive the patient to the Rehabilitation Center. All of a sudden an ambulance appeared.

*Complaint*                                                  14

1    58.    Despite being on actual notice of the fact that the Plaintiff had suffered a debilitating stroke

2    and needed immediate rehabilitation services, the Defendant without adequate investigation and with no

3    reasonable basis denied the Plaintiff's request for such services.    The Defendant refused to authorize

4    rehabilitation services in a timely manner, despite being on actual notice that time was of the essence in that

5    immediate rehabilitation was necessary in order to mitigate permanent injury. The Defendant's decision was

6    ostensibly based upon the groundless opinion of a "physical therapist," in contradiction to the considered

7    opinion of two qualified physicians.    The decision was pretextual, as proven by the fact that another case

8    worker at Defendant UCSD on the 8th floor confirmed the two physicians' opinion that the Plaintiff met the

9    criteria for acute rehabilitation and suggested her transfer for rehabilitation at Alvarado Hospital.    Further

10   evidence of the pretextual nature of the decision is the fact that despite the insistence by the Plaintiff's

11   daughter to fax the physicians' recommendations to Sharp Hospital Rehab., UCSD refused.  As a result of the

12   denial of services based upon the opinion of a non physician "physical therapist," the plaintiff's daughter, who

13   had the Plaintiff's power of attorney, was informed that the Plaintiff would have to pay for rehabilitation

14   services out of pocket or would be transferred to a nursing facility, Magnolia.    The Magnolia facility had

15   received numerous citations from the D.H.S. and was one of the worst in San Diego County.  The Plaintiff's

16   family had no choice to transfer the plaintiff to Alvarado Medical Center.    The out of pocket costs included

17   a week of services and physician bills in excess of $51,000.

18   

19   59.    The misconduct of Defendants HEALTHNET and HEALTHNET SENIORITY PLUS is part

20   of a pattern and practice of refusing to pay for adequate care for its members in order to raise its profits.

21   Although Defendants represent to perspective clients that they will receive better care than they would

22   under regular Medicare, such is not the case.  Defendants use a combination of incentives and

23   disincentives to discourage the issuance of prescriptions and the rendering of necessary care.  Defendants

24   do not reimburse providers such as Defendants UCSD and SANI sufficiently, but rather discourage the

25   provision of necessary care.  Defendants effectively cause providers to consider their own financial

26   interests as more important than the care of the members of the health plan.

27   

28   *Complaint*                                                   15

60.    In fact, the members of Defendants' health plan would have their interests better served by not participating in the Defendants' managed health care plan, but rather by being fee for service Medicare patients.  The Defendants effectively discouraged preventative and diagnostic tests such as for diabetes or to detect heart conditions such as atrial fibrillation and murmurs.  They discourage the use of physical therapy for good candidates therefor such as the Plaintiff, and rather attempt to send them to nursing homes, which is cheaper.  Patients receiving ordinary Medicare benefits would have better access to quality care.

61.    As a result of the Defendant's unreasonable refusal to authorize rehabilitation, the Plaintiff has incurred costs in the amount of over $51,000.00.

62.    The aforementioned conduct of the defendant was intentional, and was despicable conduct that subjected the plaintiff, the Defendant's insured, to a cruel and unjust hardship in conscious disregard of the plaintiff's rights.  She has suffered general and special damages in an amount according to proof.

**IX.**
**NINTH CAUSE OF ACTION**
**FRAUD AND DECEIT**
**(Against Defendants HEALTHNET, INC., and HEALTHNET SENIORITY PLUS)**

63.    Plaintiff reasserts paragraphs 1-62 as though fully set forth herein.

64.    At all times herein, Plaintiff FREDA SUSSMAN was a member of Defendant HEALTHNET, an Health Maintenance Organization (HMO ).  The Plaintiff was a participant in the HEALTHNET SENIORITY PLUS, a Medicare Supplement program administered by Defendant HEALTH NET.  HMOs make money by reducing costs, which in this case severely adversely affected the care the Plaintiff received.

65.    Defendants HEALTHNET and HEALTHNET SENIORITY PLUS engage in a practice of representing to members of the public such as Plaintiff that they should enroll in their health plan.  The Defendants represent that members of the public such as Plaintiff will receive thoroughly adequate care, care that is superior to that provided by Medicare.  In fact, Defendants use a combination of incentives

*Complaint*                                16

1  and disincentives to providers to discourage the issuance of prescriptions and the rendering of necessary

2  care, including the performance of necessary tests.

3      66.    When Defendants made these representations, they knew them to be false and made

4  these representation with the intention to deceive and defraud Plaintiff and to induce Plaintiff to

5  act in reliance on these representations in the manner hereafter alleged, or with the expectation

6

7  that Plaintiff would so act.

8      67.  Plaintiff, at the time these representations were made by defendant, and at the

9  time the plaintiff took the actions herein alleged, was ignorant of the falsity of Defendants'

10  representations and believed them to be true. In reliance on these representations, Plaintiff

11  was induced to and did rely to her detriment. Had Plaintiff known the actual facts, she would

12

13  not have taken such action. Plaintiff's reliance on the defendant's representations was

14  justified because Plaintiff reasonably relied upon the Defendants to fulfill their contractual and fiduciary

15  duty to Plaintiff.

16      68.    As a direct result of the misconduct of Defendants, Plaintiff enrolled in their health plan

17  and received substandard care.  As a direct result of the misconduct of Defendants, Plaintiff has and will

18  continue to suffer special and general damages according to proof.

19

20      69.    The aforementioned conduct of Defendants was an intentional misrepresentation,

21  deceit, or concealment of a material fact known to Defendants with the intention on the part

22  of the defendants thereby depriving Plaintiff of property or legal rights or otherwise

23  causing injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust

24  hardship in conscious disregard of Plaintiff's rights.

25

26  ///

27  ///

28  *Complaint*                                    17

**X.**

**TENTH CAUSE OF ACTION**

**UNFAIR BUSINESS PRACTICES**

**(Against Defendants HEALTHNET, INC., and HEALTHNET SENIORITY PLUS)**

70.   Plaintiff realleges paragraphs 1-69 as though fully set forth herein.

71.   The misconduct of Defendants HEALTHNET and HEALTHNET SENIORITY PLUS is part of a pattern of refusing to pay for adequate care for its members in order to raise profits. The Defendants use a combination of incentives and disincentives to providers to discourage the issuance of prescriptions and the rendering of necessary care, including the performance of necessary tests. The Defendants do not reimburse providers such as Defendants UCSD and SANI sufficiently, but rather discourage the provision of adequate care. The Defendants effectively cause providers to consider their own financial interests as more important than the care of the members of the health plan.

72.   In fact, the members of Defendants' health plan would have their interests better served by not participating in the Defendants' managed health care plan, but rather by being fee for service Medicare patients. The Defendants effectively discouraged preventative and diagnostic tests such as for diabetes or to detect heart conditions such as atrial fibrillation and murmurs. They discourage the use of physical therapy for good candidates therefor such as the Plaintiff, and rather attempt to send them to nursing homes, which is cheaper.

73.   The misconduct of the Defendants constitutes an unfair business practice within the meaning of Business and Professions Code section 17200 et seq. The unfair business practice will continue unabated unless this court intervenes to prohibit such practices.

///

///

///

///

///

*Complaint*                                18

**XL**

**ELEVENTH CAUSE OF ACTION**

**VIOLATION OF PENAL CODE SECTION 502**

**(Against Defendants SANI, BEACH, GUTIERREZ, UCSD MEDICAL CENTER, and REGENTS OF THE UNIVERSITY OF CALIFORNIA)**

74.   Plaintiff reasserts paragraphs 1-73 as though fully set forth herein.

75.   Subsequent to being informed of the Plaintiff's CVA, in retaliation against the Plaintiff for her presentation of a complaint and/or grievance, Defendants SANI, BEACH and GUTIERREZ began to alter the Plaintiff's medical records.  The alterations occurred during or immediately before a telephone conversation between the Defendant and the Plaintiff's daughter in which she complained about Dr. SANI's care and lack thereof and not returning the phone call PRIOR to the stroke.  The Defendant initiated a campaign of inserting false and defamatory statements into the Plaintiff's medical records which was entirely irrelevant to the Plaintiff's medical care.  The inserted statements consisted of personal attacks against the Plaintiff's daughter, who was attempting to ensure that the Plaintiff receive adequate care after the occurrence of the stroke due to Defendant's negligence.  Defendant changed the phone message of the plaintiff's daughter.  The Defendant also inserted such irrelevant and inflammatory statement into records of telephone calls with the Plaintiff's daughter.  The Defendant also caused or conspired with other agents of U.C.S.D., including Defendants BEACH and GUTIERREZ, to include such material in their accounts of telephone conversations with the Plaintiff's daughter.

76.   The misconduct of the Defendant constitutes a violation of Penal Code section 502 (a) et seq.  The Defendant abused her right to access to the Plaintiff's medical information contained in electronic form, and caused others who should not have had access to the information.  The Defendant and others misrepresented actual data and fraudulently created entries relating to the Plaintiff and her family.

77.   The aforementioned conduct of the defendant was intentional, and was despicable conduct that subjected the plaintiff to a cruel and unjust hardship in conscious disregard of the plaintiff's rights.

WHEREFORE, Plaintiff prays for judgement against the defendants as follows:

1. For general damages in an amount to be ascertained at trial;

2. For medical and expenses according to proof;

3. For special and damages according to proof;

4. For punitive damages with respect to the FIFTH, SIXTH, SEVENTH, EIGHTH, NINTH, and ELEVENTH causes of action;

5. For attorneys fees;

6. For restitution of moneys paid to Defendants HEALTHNET and HEALTHNET SENIORITY PLUS;

7. For costs of suit herein incurred;

8. For such other and further relief as this court may deem proper.

Dated 11/12/07

HAYWORTH AND SUSSMAN

By:

Nancy Sussman, Esq.

c:\office\WPWIN\SUSSMAN\complaint

*Complaint*                                       20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Complaint*                                    21

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FILED |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*
Nancy Sussman, Esq., SBN 108689
→ Hayworth & Sussman
1901 First Avenue, Suite 220, San Diego, CA. 92101
TELEPHONE NO.: (619) 231-1215    FAX NO.: (619) 234-4889
ATTORNEY FOR *(Name):* FREDIA SUSSMAN

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Downtown Judicial Branch

CASE NAME:
Sussman v. Sani, et al.

FILED
CIVIL BUSINESS OFFICE 2
CENTRAL DIVISION

2007 NOV 13  PM 3: 56

CLERK SUPERIOR COURT
SAN DIEGO COUNTY, CA

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 37-2007-00081656-CU-MM-CTL |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter    ☐ Joinder | | JUDGE: |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | | DEPT: |

*All five (5) items below must be completed (see instructions on page 2).*

**1.** Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☑ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

**2.** This case ☐ is   ☑ is not   complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. ☐ Large number of separately represented parties
b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. ☐ Substantial amount of documentary evidence
d. ☐ Large number of witnesses
e. ☐ Coordination with related actions pending in one or more courts in other counties, states or countries, or in a federal court
f. ☐ Substantial post-judgment judicial supervision

**3.** Type of remedies sought *(check all that apply):*
a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive

**4.** Number of causes of action *(specify):* Eleven

**5.** This case ☐ is   ☑ is not   a class action suit.

Date: November 13, 2007

Nancy Sussman, Esq.
(TYPE OR PRINT NAME)                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate, Family, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2003]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 201.8, 1800–1812;
Standards of Judicial Administration, § 19
www.courtinfo.ca.gov

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS:        330 West Broadway
MAILING ADDRESS:       330 West Broadway
CITY AND ZIP CODE:     San Diego, CA 92101
BRANCH NAME:           Central
TELEPHONE NUMBER: (619) 685-6055

PLAINTIFF(S) / PETITIONER(S):     Freda Sussman

DEFENDANT(S) / RESPONDENT(S):  Amelia Sani, M.D. et.al.

SUSSMAN VS. SANI, M.D.

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER: |
|---|---|
| | 37-2007-00081656-CU-MM-CTL |

Judge: Ronald L. Styn                                    Department: C-62

COMPLAINT/PETITION FILED: 11/13/2007

### CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

COMPLAINTS: Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

DEFAULT: If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE NUMBER: 37-2007-00081656-CU-MM-CTL.     CASE TITLE: Sussman vs. Sani, M.D.

## NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9.

## ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial.

## ADR OPTIONS

1) CIVIL MEDIATION PROGRAM: The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participant in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non binding process in which a trained mediator 1) facilitates communication between disputants and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

Assignment to Mediation, Cost and Timelines: Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. Discovery: Parties do not need to conduct full discovery in the case before mediation is considered, attempted or referred. Attendance at Mediation: Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

2) JUDICIAL ARBITRATION: Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or, if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

Assignment to Arbitration, Cost and Timelines: Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court

**3) SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference Judge.

**4) OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Alternative Dispute Resolution Process" which is included in this ADR package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (619) 238-2400.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

| | FOR COURT USE ONLY |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO** | |

STREET ADDRESS:     330 West Broadway

MAILING ADDRESS:    330 West Broadway

CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827

BRANCH NAME:      Central

PLAINTIFF(S):   Freda Sussman

DEFENDANT(S): Armelia Sani, M.D. et.al.

SHORT TITLE:    SUSSMAN VS. SANI, M.D.

| **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS**<br>**(CRC 3.221)** | CASE NUMBER:<br>37-2007-00081656-CU-MM-CTL |
|---|---|

Judge: Ronald L. Styn                                                Department: C-62

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management time lines.

- [ ] Court-Referred Mediation Program
- [ ] Private Neutral Evaluation
- [ ] Private Mini-Trial
- [ ] Private Summary Jury Trial
- [x] Private Settlement Conference with Private Neutral
- [ ] Other (specify):

- [x] Court-Ordered Nonbinding Arbitration
- [ ] Court-Ordered Binding Arbitration (Stipulated)
- [ ] Private Reference to General Referee
- [ ] Private Reference to Judge
- [x] Private Binding Arbitration

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name)

_____

Alternate: (mediation & arbitration only) _____

Date: _____

Date: _____

Name of Plaintiff

Name of Defendant

Signature

Signature

Name of Plaintiff's Attorney

Name of Defendant's Attorney

Signature

Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

**IT IS SO ORDERED.**

Dated: 11/13/2007

_____

JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 01-07)        **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**        Page 1

3

1   Nancy Sussman (SBN 108689)
    HAYWORTH AND SUSSMAN
2   1901 First Avenue, Suite 220
    San Diego, CA 92101
3   Telephone: (619) 231-1215

4   Thor O. Emblem, SBN 141880
    Law office of Thor Emblem
5   205 West Fifth Ave., Suite 105
    Escondido, CA 92025
6   Telephone: (760) 738-9301

7   Attorney for Plaintiff

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         COUNTY OF SAN DIEGO

10

11  FREDA SUSSMAN,                        )   Case No. 37-2007-00081656-CU-MM-CTL

12            Plaintiff,                  )   AMENDMENT TO COMPLAINT

13       vs.                             )

14  DR. ARMELIA SANI, M.D., SHILEY EYE    )
    CENTER, UCSD MEDICAL CENTER,          )
15  REGENTS OF THE UNIVERSITY OF          )   Department C-62
    CALIFORNIA, HEALTH NET SENIORITY      )   Judge Ronald L. Styn
16  PLUS, LINDA BEACH, HAIDEE             )   Complaint Filed: 11/13/2007
    GUTIERREZ, and DOES 1 through 40      )
17  inclusive                            )

18            Defendants.                 )

19

20       Plaintiffs were ignorant of a defendant's name, stated that fact in the complaint, and designated the

21  defendant by a fictitious name. That defendant's true name has now been discovered and Plaintiffs hereby

22  amend the complaint as follows:

23            "Health Net of California, Inc." to substitute for "Doe 1."

24

25  Dated:

26      1/30/08

27                                            HAYWORTH AND SUSSMAN

28                                            Nancy Sussman
                                              Attorney for Plaintiffs

                                     1

Users\Back_Office\Documents\wpwin\Sussman v Sani\Doe Amendment.wpd

## DECLARATION OF SERVICE

*SUSSMAN V. SANI MD, et al*
**SAN DIEGO SUPERIOR COURT CASE:** 37-2007-00081656-CU-MM-CTL

I, the undersigned, declare that: I am over the age of 18 years and not a party to the within action. I am employed in the County of San Diego, State of California, where the within mailing or other method of service occurs, and my business address is 1901 First Avenue, Suite 220, San Diego, California 92101

On January 30, 2008 I served the foregoing document described as follows:

**AMENDMENT TO COMPLAINT**

On:

Thor Emblem, Esq.
Law Offices of Thor O. Emblem
205 W. 5th Street, Suite 105
Escondido, CA 92025

Lisa Iulianelli, Esq.
Carroll, Kelly, Trotter, Franzen &McKenna
PO Box 22636
Long Beach, CA 90801-5636
For Defendants: Dr Sani, Shiley Eye Center,
UCSD Medical Center, Regents of University
of California, Linda Beach, and Haidee
Gutierrez

C T CORPORATION SYSTEM
818 WEST SEVENTH ST
LOS ANGELES, CA 90017
For: Health Net of California, Inc.

___X___ **U.S. MAIL,** by placing a true copy thereof in a separate sealed envelope for each addressee named above, addressed to each such addressee, respectively, and I then sealed each envelope and, with the postage thereon fully prepaid, placed it for mailing and deposit in the United States Postal Service in accordance with our business' practice on 1/30/2008, at San Diego, California. I am readily familiar with our business practice for collection and processing of correspondence for mailing with the United States Postal Service; and that the correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business.

_____ **PERSONAL SERVICE** by personally delivering a true copy thereof to each addressee named above or corresponding agent _____ on Date:   at __:__ PM in San Diego, California.

David E. Lizarraga

ᏟJS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| FREDA SUSSMAN | 2000 MAR -3  PH 4: 20<br>ARMELIA SANI, MD; SHIRLEY, EYE CENTER; UCSD<br>MEDICAL CENTER; REGENTS OF UNIVERSITY OF CA et al<br>DISTRICT OF CALIFORNIA |

**(b)** County of Residence of First Listed Plaintiff   SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   SAN DIEGO
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**'08 CV 0392 H BLM**

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Nancy Sussman - HAYWORTH & SUSSMAN - 1901 First Avenue, Suite 220, San Diego, California 92101; (619) 231-1215

Attorneys (If Known)

Elise Klein/Janelle Garchie: Lewis, Brisbois, Bisgaard & Smith - 550 West "C" St., Ste 800, San Diego, CA 92101; 619-233-1006

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) |
|---|---|

II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | **PERSONAL INJURY** | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☒ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 895 Freedom of Information Act |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of State Statutes |

**V. ORIGIN** (Place an "X" in One Box Only)

☐ 1  Original Proceeding  ☒ 2  Removed from State Court  ☐ 3  Remanded from Appellate Court  ☐ 4  Reinstated or Reopened  ☐ 5  Transferred from another district (specify)  ☐ 6  Multidistrict Litigation  ☐ 7  Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. Section 1395w-28(b)(3)

Brief description of cause:
Medicare Prescription Drug, Improvement and Modernization Act of 2003

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $   CHECK YES only if demanded in complaint:  JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**   (See instructions):   JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 03/03/2008 | *[signature]* |

FOR OFFICE USE ONLY

RECEIPT # 148297   AMOUNT  $350   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

SH  3|3|08

**PROOF OF SERVICE**
*Freda Sussman v. Armelia Sani, M.D., el al.*
USDC - Southern District Case No.:
Client/Matter: 24592-373

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action. My business address is 550 West C Street, Suite 800, San Diego, California 92101.

On **March 3, 2008**, I served the following document described as:

1. **Civil Cover Sheet**
2. **Notice of Removal of Action Under 28 U.S.C. Section 1441(b) (Federal Question)**
3. **Certification of Service of Notice to Adverse Party of Removal to Federal Court**
4. **Disclosure Statement Pursuant to Federal Rule of Civil Procedure 7.1**
5. **Notice that Action has been Removed to Federal Court**

on all interested parties in this action by placing a true copy thereof enclosed in sealed envelope addressed as follows:

| | |
|---|---|
| Nancy Sussman, Esq.<br>**HAYWORTH & SUSSMAN**<br>1901 First Avenue, Suite 220<br>San Diego, CA 92101<br>Tel: (619)231-1215<br>Attorneys for Plaintiff, Freda Sussman | Thor O. Emblem, Esq.<br>**LAW OFFICES OF THOR EMBLEM**<br>205 West Fifth Avenue, Suite 105<br>Escondido, CA 92025<br>Tel: (760) 738-9301<br>Attorneys for Plaintiff, Freda Sussman |

Lisa Iulianelli, Esq.
**CARROLL, KELLY, TROTTER FRANZEN & McKENNA**
P.O. Box 22636
Long Beach, CA 90801-5636
Attorneys for Defendants, Amelia Sani, M.D., Shiley Eye Center UCSD Medical Center, Regents of the University of California, Linda Beach, Haidee Gutierrez

**BY MAIL, 1013a, 2015.5 C.C.P.; Rules 5 and 6, Fed. R. Civ. Pro.**

I am readily familiar with the firm's practice for collection and processing correspondence for mailing. Under that practice, this document will be deposited with the U.S. Postal Service on this date with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**FEDERAL**

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on **March 3, 2008**, at San Diego, California.

*Jeannet P Farra*

Jeanne P. Farra

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

4823-2034-1506.1

-1-

**UNITED STATES**
**DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 148297    – SH**

**March 03. 2008**
**16:22:12**

**Civ Fil Non-Pris**
USAO #.: 08CV0392
Judge..: MARILYN L HUFF
Amount.:                    $350.00 CK
Check#.: BC67050

**Total–>   $350.00**

FROM: SUSSMAN V. SANI ET AL