Nancy Sussman SBN108689
HAYWORTH AND SUSSMAN
1901 First Avenue, Suite 220
San Diego, CA 92101
Telephone: (619) 231-1215

Thor O. Emblem SBN 141880
Law Office of Thor Emblem
205 West Fifth Ave., Suite 105
Escondido, CA 92025
Telephone: (760)738-9301

Attorneys for Plaintiff

FILED
08 MAR 17 AM 11: 12
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY:            DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDA SUSSMAN, | Case No. 08CV392 H BLM |
| Plaintiff, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND CASE TO STATE COURT |
| v. | |
| ARMELIA SANI, M.D., SHILEY EYE CENTER, UCSD MEDICAL CENTER, REGENTS OF THE UNIVERSITY OF CALIFORNIA, HEALTH NET OF CALIFORNIA, INC., HEALTH NET SENIORITY PLUS, LINDA BEACH, HAIDEE GUTIERREZ, | |
| DOES 1 through 40, inclusive, | Date: 4/14/08 |
| Defendants | Time: 10:30 a.m. |
| | Dept. 13 |
| | Magistrate: Barbara Major |

I.
FACTS

At all times herein, Plaintiff FREDA SUSSMAN was a member of Defendant HEALTH NET OF CALIFORNIA, INC. ("HEALTH NET OF CALIFORNIA") an Health Maintenance Organization (HMO). The Plaintiff was a participant in HEALTH NET SENIORITY PLUS, a

1

1  Supplemental program administered by Defendant HEALTH NET OF CALIFORNIA. Plaintiff
2  joined the HMO plan in which her provider was the "UCSD group." HMOs make money by
3  reducing costs, which in this case severely adversely affected the quality of care Plaintiff received.
4  Before having the catastrophic stroke, Plaintiff was denied tests that would have been paid by
5  Medicare, but HEALTH NET OF CALIFORNIA and UCSD Network had an incentive plan to not
6  offer seniors the same tests or specialists that would have been paid for if she had straight
7  Medicare. Plaintiff's risk factors and signs and symptoms were ignored and Plaintiff was given
8  Beano for her Atrial Fib, Carotid Artery Disease and Diabetes. No stent was offered for her
9  carotid artery stenosis because Defendant Sani, the primary, was limited as to the medical
10  specialists she could send Plaintiff a patient of the HMO, HEALTH NET OF CALIFORNIA. This
11  same limitation would not have applied if Plaintiff had been with straight Medicare and not have
12  had this supplemental HMO plan.
13      After the Plaintiff suffered a major stroke, her first, she was determined to be a candidate
14  for acute rehabilitation by physicians who treated her stroke at Alvarado Hospital, who both
15  wrote an order for Plaintiff to be transferred to rehabilitation. Despite the recommendations for
16  acute rehabilitation, after 5 days post stroke at Alvarado Hospital where she was receiving
17  treatment, the Plaintiff was taken by ambulance during the middle of the night to UCSD Medical
18  Center, (the HMO's contracting hospital) under the instructions from HEALTH NET OF
19  CALIFORNIA. This was directly after HEALTH NET OF CALIFORNIA received a request from
20  Plaintiff's daughter to have her transfered into a rehabilitation facility from Alvarado Hospital. Just
21  two days after the transfer, the Defendant's contracting agent UCSD indicated that the Plaintiff
22  was not eligible for rehabilitation therapy because a "physical therapist" said so at the only
23  contracting rehabilitation facility that was covered by her supplemental insurance. Two qualified
24  physicians had determined that the Plaintiff needed immediate and intensive rehabilitation therapy
25  for her first stroke. By law, a Physical therapist cannot write orders, so the HMO and UCSD
26  Medical Center, working in concert, ignored the valid doctor's order from the previous facility,
27

1 | Alvarado Hospital, in order to save money.

2 |     Nonetheless, a non physician "physical therapist" at UCSD stated that the Plaintiff could
3 | not endure three hours of rehabilitation services a day, and that she should be transferred to a
4 | nursing facility. However, another case worker at Defendant UCSD on the 8th floor confirmed the
5 | two physicians' opinions that the Plaintiff met the criteria for acute rehabilitation and suggested
6 | Plaintiff's transfer for rehabilitation at Alvarado Rehabilitation Center. (It is important to note that
7 | Sharp Rehabilitation and Alvarado Rehabilitation have the same criteria for admission into acute
8 | rehabilitation). The operative difference is that Defendant HEALTH NET OF CALIFORNIA
9 | would have to pay for therapy at Sharp Rehabilitation (a contracting facility), but not at Alvarado
10 | Rehabilitation unless special permission was obtained. Also Plaintiff's daughter was requested to
11 | sign a waiver of any claims against HEALTH NET OF CALIFORNIA which she refused to do in
12 | order to go to the non-contracting facility.

13 |     The Plaintiff's family had no choice to transfer the Plaintiff to Alvarado Rehabilitation
14 | Center. The out of pocket costs included a week of services and physician bills in excess of
15 | $100,000. Defendant also said Plaintiff will have to pay if she wants an ambulance to transfer as
16 | Defendant's insurance company only pays for Hospital- nursing home transfers. Plaintiff's family
17 | said they would then have to acquire a truck to drive the hemiplegic patient to the Rehabilitation
18 | Center. All of a sudden an ambulance appeared.

19 |     Despite being on actual notice of the fact that the Plaintiff had suffered a debilitating stroke
20 | and needed rehabilitation services, the Defendant without adequate investigation and with no
21 | reasonable basis denied the Plaintiff's request for such services. The Defendant refused to
22 | authorize rehabilitation services. The Defendant's decision was ostensibly based upon the
23 | groundless order of a "physical therapist," in contradiction to the considered orders of two
24 | qualified physicians. Plaintiff immediately dropped the Health Net Senior Advantage plan and
25 | within 30 days Medicare began picking up services that Defendant HEALTH NET OF
26 | CALIFORNIA had denied. However Plaintiff has spent $100,000.00 of her own money for
27 |

3

Case No. 08CV392

1 rehabilitation.

2    The misconduct of Defendants HEALTH NET OF CALIFORNIA, and HEALTH NET SENIORITY PLUS is part of a pattern and practice of refusing to pay for adequate care for its members in order to raise its profits. Although Defendants represent to perspective clients that they will receive better care than they would under regular Medicare, such is not the case. Defendants use a combination of incentives and disincentives to discourage the issuance of prescriptions and the rendering of necessary care. The Defendant does not reimburse providers sufficiently, but rather they discourage the provision of necessary care and referrals. The Defendant effectively cause providers to consider their own financial interests as more important than the care of the members of the health plan.

    In fact, the members of Defendant's health plan would have their interests better served by not participating in the Defendant's managed health care plan, but rather by being fee for service Medicare patients or by joining another plan as Plaintiff has now that covers everything that is covered by Medicare. The Defendant effectively discouraged preventative and diagnostic tests such as for diabetes or to detect heart conditions such as atrial fibrillation and carotid artery disease. It refuses referrals to Cardiologists. It discourages the use of rehabilitation therapy for candidates, such as the Plaintiff, and rather attempt to send them to nursing homes, which is cheaper. Patients receiving ordinary Medicare benefits would have much better access to quality care.

    As a result of the Defendant's unreasonable refusal to authorize rehabilitation, the Plaintiff suffered injury, including costs in the amount of over $100,000.00. Plaintiffs' complaint was filed in California Superior Court on 11/7/07. On 1/30/08, Defendant HEALTH NET OF CALIFORNIA was named as a Doe defendant in the state court action. The Plaintiff alleged only state common law claims of fraud, bad faith insurance tactics, and unfair business practices (Complaint on file herein, paragraphs 52-73). (The Complaint does not have anything to do with Medicare). Defendant HEALTH NET OF CALIFORNIA's Notice of Removal was served on Plaintiff on 3/8/08.

## II.
## LEGAL ARGUMENT

### A. 28 U.S.C. 1447(c) REQUIRES REMAND WHERE, AS HERE, THERE IS NO BASIS FOR FEDERAL SUBJECT MATTER JURISDICTION

The federal statute dealing with procedure after removal generally provides, in pertinent part, as follows:

> "A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under sections 1446 (a). If at anytime before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. . . ." (28 U.S.C. 1447(c)) (emphasis added).

A case cannot be removed to federal court simply because the plaintiff's right to sue is derived from federal law. People of Puerto Rico v. Russell & Co, 288 U.S. 476 (1933),

### B. THE DEFENDANT BEARS THE BURDEN OF PROVING THAT REMOVAL IS PROPER AND WARRANTED UNDER THE CIRCUMSTANCES.

**1. In General.**

In order to successfully remove a case, the party seeking removal has the burden of establishing federal court jurisdiction. Holcomb v. Bringham Toyota 871 F.2d 109 (9th Cir. 1989), cert. denied, 493 U.S. 846, 110 S.Ct. 141, 107 L.Ed.2d 100 (1990); Alexander v. Electronic Data Systems Corp. 13 F.3d 940 (6th Cir. 1994). Furthermore, strict compliance with the statutory procedure for removal is required. Wrath v. State Farm Fire & Casualty Co. 792 F.Supp. 101, 102 (M.D. Fla. 1992); Perrin v. Walker 385 F.Supp. 945 (E.D.Ill. 1974). The defendants have not and cannot meet this burden.

**2. Doubts as to whether jurisdiction exists are to be resolved in favor of the plaintiffs.**

It is axiomatic that any doubts concerning removeability are to be resolved against the removing defendants and in favor of remand. McGraw v. FD Services, Inc. 811 F.Supp. 222 (D.S.C. 1993); Cross v. Bankers Multiple Line Ins. Co. 810 F.Supp. 748 (N.D. Tex. 1992). Remand should be granted "if there are any doubts as to the right of removal in the first instance."

Jones v. General Tire & Rubber Co. 541 F.2d 664 (7th Cir. 1976). This is to ensure that federal courts do not encroach upon the state court's rights to hear and determine cases properly brought in the state forum. Skidmore v. Beech Aircraft Corp. 672 F.Supp. 973 (M.D. La. 1990).

**3. The defendant bears the burden of proof on a motion for remand.**

On a motion for remand, the burden of proving the propriety of the removal rests upon the removing party. Garbutt v. Southern Clays, Inc. 844 F.Supp. 1551 (M.D. Ga. 1994); Societa Amonia Lucchese Olii E. Vini v. Catania Spagna Corp. 440 F.Supp. 461 (D.Mass. 1977).

**A. Federal Courts Should Strictly Construe Removals in Favor of a Plaintiff Seeking Redress in State Court.**

Removal statutes are to be strictly construed, and any doubts as to removal are to be resolved in favor of remanding the case to state court. See Shamrock Oil and Gas Corp. v. Sheets 313 U.S. 100 (1941); see also Gaus v. Miles, Inc. 980 F.2d 654, 566 (9th Cir. 1992) (There is a strong presumption against removal jurisdiction, and federal jurisdiction should be rejected "if there is any doubt as to the right of removal in the first instance.") Moreover, the defendant seeking removal of an action to federal court has the burden of establishing federal jurisdiction. See Gaus, 980 F.2d at 566.

**B. The District Court has no Jurisdiction over the Instant Action.**

The District Court has federal question jurisdiction only over claims that could have been originally brought in the District Court pursuant to federal question jurisdiction. Snow v. Ford Motor Co. 561 Fed. 2d. 787,9 (9th Cir. 1977). The Defendant has removed the action from State court on the basis of federal question jurisdiction pursuant to 28 U.S.C. section 1331. The Defendant claims that the action is based upon provisions of the Medicare Prescription Drug, Improvement, and Modernization Act. The Act, however, specifically precludes federal question jurisdiction under 28 U.S.C. section 1331. 42 U.S.C. section 1395ii; County of Pierce v. Leavitt 244 Fed. Appx. 802 (9th Cir. 2007).

///

## C. Plaintiffs' Claims All Arise Under and Are Governed by State Law and Do Not Raise a Federal Question

Plaintiffs' claims involve no substantial questions of federal law. Congress gave federal courts jurisdiction over actions arising under the Constitution and laws of the United States to allow federal courts to construe federal laws, not state tort law. See Misner v. Cleveland Wrecking Co. of Cincinnati 25 F.Supp. 763, 764 (W.D.Md. 1938). There can be no federal-question jurisdiction unless there exists, in fact, a federal question. Id. There is no federal question in a state-tort-law case such as the Plaintiff's, which must be adjudicated with exclusive reference to state law. The Ninth Circuit Court of Appeals has clearly held that unless there exists a substantial question of federal law pled in the complaint, there is no federal jurisdiction. See Galvez v. Kuhn 933 F.2d 773, 776 (9h Cir. 1991) (stating that when federal question does not appear on face of plaintiff's complaint, there is no jurisdiction); see also Ultramar America Ltd. v. Dwelle 900 F.2d 1412, 1415 (9th Cir. 1990) (finding that removal is improper when right to relief is not necessarily dependant on construction of substantial federal question).

The California Supreme Court has determined that claims such as those in the present case are not preempted. In McCall v. Pacificare of California 25 Cal 4th 412 (2001) the Court held:

A Medicare provider may violate state common law or statutory duties owing to beneficiaries, unrelated to its Medicare coverage determinations. The "inextricably intertwined" language in Ringer is more correctly read as sweeping within the administrative review process only those claims that, "at bottom," seek reimbursement or payment for medical services, but not a claim not seeking such reimbursement or payment, which claim as pleaded incidentally refers to a denial of benefits under the Medicare Act. (See Ringer, supra, 466 U.S. at pp. 614-615 [104 S. Ct. at pp. 2021-2022].) The latter type of state-law-based claim by Medicare beneficiaries is not subject to the administrative review process and may be pursued in our state courts. In the language of Ringer, at page 618 [104 S. Ct. at page 2023], such claims are collateral to, not inextricably intertwined with, Medicare benefit claims. For example, a provider may negligently fail to use ordinary skill and care in treating a beneficiary, or properly to advise the beneficiary concerning his health condition or appropriate treatment options, whether or not such options are covered by Medicare, thus preventing the beneficiary from seeking such treatment even at his own expense. Or a provider may fail to provide appropriate referrals to specialists, and thus prevent the beneficiary from obtaining appropriate care, again without regard to coverage. The McCalls' first and second causes of action, for negligence and wilful misconduct, respectively, set forth such allegations and enumerate the statutory and regulatory bases of the relevant duties (see ante, pp. 415-416), none of which necessarily implicates a coverage determination or falls within the scope of the Medicare administrative review process. A provider may make misrepresentations

regarding the nature or extent of the services it intends to provide, either in its application for HMO licensure to the California Department of Corporations or in its marketing materials disseminated to potential enrollees. If the injury to the enrollee is foreseeable, a Randi W. cause of action 8 or a claim of fraud may be stated. 9 The McCalls' third, fourth and fifth causes of action allege such claims, none of which necessarily implicates coverage determinations or falls within the scope of the Medicare administrative review process.

FOOTNOTES

8 See Randi W. v. Muroc Joint Unified School Dist. (1997) 14 Cal. 4th 1066 [60 Cal. Rptr. 2d 263, 929 P.2d 582, 68 A.L.R.5th 719].

9 We note that the recent decision in Buckman Co. v. Plaintiffs' Legal Committee (2001) 531 U.S. 341 [121 S. Ct. 1012, 148 L. Ed. 2d 854] concluded that a state law action seeking damages for injuries allegedly caused by Food and Drug Administration (FDA) approved bone screws, predicated on a "fraud-on-the-FDA" theory, was preempted by the Federal Food, Drug, and Cosmetic Act, as amended by the Medical Device Amendments of 1976, 21 United States Code section 301. The high court reasoned that "[p]olicing fraud against federal agencies is hardly 'a field which the States have traditionally occupied,' [citation], such as to warrant a presumption against finding federal pre-emption of a state-law cause of action." (Buckman, supra, 531 U.S. at p. 348 [121 S. Ct. at p. 1017, 148 L. Ed. 2d at p. 860].) The court contrasted "situations implicating 'federalism concerns and the historic primacy of state regulation of matters of health and safety,' " where a "presumption against pre-emption obtains." ( Id. at p. 348 [121 S. Ct. at p. 1017, 148 L. Ed. 2d at p. 861], citing Medtronic, Inc. v. Lohr, supra, 518 U.S. at p. 485 [116 S. Ct. at p. 2250].) To the extent the McCalls' complaint alleges fraud on the HCFA, defendants may, on remand, assert it is preempted under the rule in Buckman.

A provider may breach the fiduciary duty it owes the enrollee (see Moore v. Regents of University of California (1990) 51 Cal. 3d 120, 129 [271 Cal. Rptr. 146, 793 P.2d 479, 16 A.L.R.5th 903]), inter alia, by permitting its financial interest detrimentally to affect treatment decision making or failing to disclose such interest. The McCalls' sixth cause of action alleges such a claim, which does not necessarily implicate coverage determinations or fall within the scope of the Medicare administrative review process.

If a defendant's violations of state law duties are sufficiently outrageous, a claim for negligent or intentional infliction of emotional distress may be stated; the McCalls' seventh and eighth causes of action allege such violations, none of which necessarily implicates coverage determinations or falls within the scope of the Medicare administrative review process.

Finally, such violations of statutory duties, none necessarily implicating coverage determinations or falling within the scope of the Medicare administrative review process, may amount to unfair practices as prohibited by Business and Professions Code section 17200; the McCalls' ninth cause of action so alleges. 10

FOOTNOTES

10 This case does not call upon us to determine the sufficiency of any of the McCalls' allegations to state a cause of action under California law, and we express no opinion on whether the claims ultimately will be proven.

1 | Because the McCalls may be able to prove the elements of some or all of their causes of action without regard, or **only incidentally**, to Medicare coverage determinations, because (contrary to
2 | the dissent's characterization of the complaint) none of their causes of action seeks, at bottom, payment or reimbursement of a Medicare claim or falls within the Medicare administrative review
3 | process, and because the harm they allegedly suffered thus is not remediable within that process, it follows that the Court of Appeal correctly reversed the trial court's orders sustaining
4 | defendants' demurrers without leave to amend. [footnote omitted]

5 | Id. Emphasis added.

6 | In <u>Zolezzi v. Pacificare of California</u> 105 Cal App 4th 573 (2003), the court stated:

7 | We believe the Act's express preemption of "[s]tate standards relating to . . . [P] . . . [P] [c]overage determinations (including related appeals and grievance processes)" is not clear and
8 | unambiguous. (42 U.S.C. § 1395w-26(b)(3)(B).) Construing that language narrowly, the Act could preempt only state standards that directly relate to coverage determinations, including, for
9 | example, procedures for obtaining payment or reimbursement for medical services. Construing that language broadly, as PacifiCare apparently suggests, the Act could preempt any state
10 | standard that is incidental or collateral to a coverage determination, based on the premise the standard is tangentially related to that determination. To properly interpret that statutory
11 | language, it is helpful to review analogous case law and relevant administrative agency interpretations.
12 | ...........Considering the language of 42 United States Code section 1395w-26(b)(3)(B)(iii), administrative rules and regulations, and analogous case law cited ante, we conclude the phrase
13 | "coverage determinations" in that statute should be interpreted in the same manner as in McCall, and therefore there is no federal preemption of state standards relating to resolution of state law
14 | causes of action that do not seek payment or reimbursement of a Medicare claim or otherwise fall within the Medicare administrative review process for coverage determinations. Absent clear
15 | indication of congressional intent, we decline to find preemption of standards, founded in California law, relating to resolution of claims, also founded in California law, that have no
16 | remedy under the Medicare administrative process. (McCall v. PacifiCare of Cal., Inc., supra, 25 Cal.4th at p. 424.) PacifiCare does not cite, and we have not found, any authority clearly
17 | indicating Congress intended the BBA's specific preemption statute to preempt state standards relating to resolution of state law causes of action that do not seek payment or reimbursement of
18 | a Medicare claim. On the contrary, there is authority to conclude preemption was not intended. The HCFA's administrative rules and regulations, quoted ante, show that agency believes
19 | Congress intended the BBA's specific preemption statute to narrowly apply only to disputes regarding coverage determinations (i.e., whether medical services or other benefits are covered
20 | by a M+C plan) for which the Act provides the exclusive means for resolution and appeal. As we noted ante, the HCFA stated: "We are . . . adopting a narrow interpretation of the scope of
21 | preemption of coverage determinations. Coverage determinations are made initially by M+C organizations and may be appealed as provided for under subpart M of these regulations. Our
22 | view is that the types of decisions related to coverage included in this specific preemption are only those determinations that can be subject to the appeal process of subpart M. These are
23 | decisions about whether an item or service is covered under the M+C contract and the extent of financial liability beneficiaries have for the cost of covered services under their M+C plan." (63
24 | Fed. Reg. 34968, 35013, italics added.) support of its narrow interpretation of the specific preemption statute, the HCFA cited the "conference report language and the overall structure of
25 | the BBA in its delineation of the relative roles of the State and Federal governments." (63 Fed. Reg. 34968, 35012.) Furthermore, because the Act does not provide for tort, contract, or other
26 | remedies for claims that do not request payment or reimbursement of a Medicare claim for

27 |

benefits, it can be reasonably inferred Congress did not intend to preempt state law causes of action that provide those remedies or state standards relating to resolution of those causes of action. A recent decision of the United States Court of Appeals, Ninth Circuit provides support for our interpretation: "[Appellant] has not shown that Congress intended to preempt all state law claims. In the interim final rule for the M+C program, the agency stated that it was adopting a 'narrow interpretation' of the specific preemption provisions and that state tort or contract claims relating to coverage determinations were not preempted. [Citation.] Because Congress did not clearly manifest any intention to convert all state tort claims arising from the administration of Medicare benefits into federal questions, we hold that the Medicare program does not completely preempt state tort law claims." (Hofler v. Aetna US Healthcare of California, Inc. (9th Cir. 2002) 296 F.3d 764, 768.)

In the recent case Masey v. Humana, Inc. 2007 US Dist. LEXIS 63556 (M.D. Fla.) the court held that claims under the Kentucky equivalent to California Business and Professions Code section 17200 et seq were not pre-empted:

The KCPA provides that unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are unlawful. Ky. Rev. Stat. § 367.170. If a plaintiff prevails on a KCPA claim and proves defendant's actions are malicious, oppressive or fraudulent, plaintiff may be eligible to recover punitive damages. Hollon v. Consumer Prot. Recovery Ctr., 417 F. Supp. 2d 849, 852 (E.D. Ky. 2006). The KCPA authorizes the award of attorneys fees and costs. Ky Rev. Stat. § 367.220(3). Assuming the Kentucky consumer protection statute applies to Plaintiff's **claim**, Plaintiff may be eligible to recover punitive damages, attorneys' fees and costs. As such, this **claim** is not a **claim** for reimbursement of medical **benefits** and is not inextricably intertwined with the **Medicare** Act. See e.g., Hofler, 296 F.3d at 768 (not clear and **manifest** intent by **Congress** to **preempt** entire field of state regulations regarding **Medicare** plans); Commonwealth of Pennsylvania v. Tap Pharm. Prods., 415 F. Supp. 2d 516, 525 n.6 (E.D. Pa. 2005)(**Medicare** Act does not **preempt** state's ability to regulate fraudulent billing practices under state consumer protection **laws**); In re Pharm. Indus. Average Wholesale Price Litig., 263 F. Supp. 2d 172, 188 (D. Mass. 2003)(same). Thus, Count IV is not inextricably intertwined with Plaintiff's claim for reimbursement of Medicare benefits.

See also In re: Lipron Mfg. & Sales Practices Litig. 295 Fed Supp 2d 148,78 (2003).

Similarly, the court in the very recent case Williams v. Viva Health Ins. Co. 2008 US Dist. LEXIS 5639 (S.D. Ala.) held:

Moreover, Viva has not shown that Congress intended § 1395w-26(b)(3) to be a complete preemption statute. In effectuating complete preemption under LMRA and ERISA, Congress expressly created a federal cause of action to resolve disputes. 6 See 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ."); 29 U.S.C. § 1132(f) ("The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action."). Unlike

10

Case No. 08CV392

LMRA and ERISA, the MMA does not have a provision providing for a federal cause of action and only requires that federal law "shall supersede any State law or regulation . . . with respect to [Medicare Advantage] plans . . . ." 42 U.S.C. § 1395w-26(b)(3). The plain language of § 1395w-26(b)(3) does not support the conclusion that Congress intended complete preemption.

Finally, in a factually similar case to the case at bar in which the beneficiary of a MMA plan alleged fraud and other state claims, the court in <u>Lassiter v. Pacificare Life & Health Ins. Co.</u> 2007 US Dist LEXIS 91970 (M.D. Ala.) held:

> No circuit court of appeals has addressed the question before this Court of whether the MMA completely preempts state law claims and thereby confers federal jurisdiction. However, the issue has been addressed by other district courts. In Harris v. Pacificare Life & Health Ins. Co., 514 F. Supp. 2d 1280, 2007 WL 2846477 (M.D. Ala. 2007) (DeMent, J.), Pacificare attempted to remove state law claims arising out of the sale of a Medicare insurance policy on the ground that § 1395w-26(b)(3) demonstrated Congress's intent for the MMA to completely preempt state law claims, which is the exact same argument they are making to this Court. In Harris, Judge DeMent held that the MMA did not completely preempt state law claims because it does not create an exclusive cause of action. See Harris, 514 F. Supp. 2d 1280, 2007 WL 2846477, at * 10-12. Furthermore, Judge Granade reached the same conclusion in Bolden v. Healthspring of Ala., Inc., No. CV07-413, 2007 U.S. Dist. LEXIS 77950 (S.D. Ala. October 2, 2007). This Court is aware that one court has held that the MMA does completely preempt state law claims. See Dial v. Healthspring of Ala., Inc., 501 F. Supp. 2d 1348 (S.D. Ala. 2007).
>
> This Court is persuaded by the reasoning in Harris and Bolden that the MMA does not completely preempt state law claims. A federal statute does not completely preempt state law claims unless Congress intended the federal statute to provide the "exclusive cause of action." See Beneficial Nat'l Bank, 539 U.S. at 8; Geddes, 321 F.3d at 1353 ("The Supreme Court has cautioned that "complete preemption can be found only in statutes with 'extraordinary' preemptive force. Moreover, that 'extraordinary' preemptive force must be manifest in the clearly expressed intent of Congress." (internal citations omitted)). The MMA provides in § 1395w-26(b)(3) that "The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part."
>
> This language is not sufficient to demonstrate a clear intent by Congress to create an exclusive private federal remedy. Harris, 514 F. Supp. 2d 1280, 2007 WL 2846477, at *11-12. Indeed, Pacificare compares this language to the preemption language in the Employee Retirement Income Security Act of 1974 ("ERISA") § 514(a), codified at 29 U.S.C. § 1144(a). While ERISA is one of the few statutes where the Supreme Court has found complete preemption, it is well settled that complete preemption arises from ERISA's civil enforcement scheme in § 502(a), codified at 29 U.S.C. § 1132(a), and that § 514(a) establishes only ordinary preemption. See Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1211-12 (11th Cir. 1999). Accordingly, § 1395w-26(b)(3) is insufficient to establish a clear Congressional intent that the MMA provides an exclusive private federal remedy. Therefore, this Court lacks jurisdiction over the Plaintiffs' claims and the case must be remanded back to the state court.

## CONCLUSION

The Defendant has not and cannot fulfill its burden of showing that the case at bar was properly removed to federal court as there is no Federal Question Jurisdiction. The case should immediately be remanded to State Court.

Dated: 3/13/08

Respectfully Submitted:

HAYWORTH AND SUSSMAN

Nancy Sussman,

Attorney for Plaintiff