Nancy Sussman SBN108689
HAYWORTH AND SUSSMAN
1901 First Avenue, Suite 220
San Diego, CA 92101
Telephone: (619) 231-1215

Thor O. Emblem SBN 141880
Law Office of Thor Emblem
205 West Fifth Ave., Suite 105
Escondido, CA 92025
Telephone: (760)738-9301

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDA SUSSMAN, | Case No. 08CV0392 |
| Plaintiff, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DISMISS |
| v. | |
| ARMELIA SANI, M.D., SHILEY EYE CENTER, UCSD MEDICAL CENTER, REGENTS OF THE UNIVERSITY OF CALIFORNIA, HEALTH NET OF CALIFORNIA, INC., HEALTH NET SENIORITY PLUS, LINDA BEACH, HAIDEE GUTIERREZ, | |
| DOES 1 through 40, inclusive, | Date: 4/21/08<br>Time: 10:30 a.m. |
| Defendants | Dept. 13<br>Magistrate: Barbara Major |

**I.    FACTS** - At all times herein, Plaintiff FREDA SUSSMAN was a member of Defendant HEALTH NET OF CALIFORNIA, INC. ("HEALTH NET OF CALIFORNIA"), senior advantage, an Health Maintenance Organization (HMO).  The Plaintiff was a participant in HEALTH NET SENIORITY PLUS, a  Supplemental program administered by Defendant

1
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DISMISS

HEALTH NET OF CALIFORNIA. Plaintiff joined the HMO plan in which her provider was the "UCSD group." ( HMOs make money by reducing costs, which in this case severely adversely affected the quality of care Plaintiff received.)   Before having the catastrophic stroke, Plaintiff was denied tests that would have been paid by Medicare alone had a supplement not been in place, but HEALTH NET OF CALIFORNIA and UCSD Network had an incentive plan to not offer seniors the same tests, medications and medical specialists that would have been paid for if she had straight Medicare. Plaintiff's risk factors and signs and symptoms were ignored and Plaintiff was given Beano for her Atrial Fib, Carotid Artery Disease , Diabetes and hypertension. No stent was offered for her carotid artery stenosis because Defendant Sani, the primary, was limited as to the medical specialists she could send Plaintiff a patient of the HMO, HEALTH NET OF CALIFORNIA. This same limitation would not have applied if Plaintiff had been with straight Medicare and not have had this supplemental HMO plan.

    After the Plaintiff suffered a major stroke, her first, she was determined to be a candidate for acute rehabilitation by physicians who treated her stroke at Alvarado Hospital, who both wrote an order for Plaintiff to be transferred to rehabilitation. Despite the recommendations for acute rehabilitation, after 5 days post stroke at Alvarado Hospital where she was receiving treatment, the Plaintiff was taken by ambulance during the middle of the night to U.C.S.D. Medical Center, (the HMO's contracting hospital) under the instructions from HEALTH NET OF CALIFORNIA. This was directly after HEALTH NET OF CALIFORNIA received a request from Plaintiff's daughter to have her transferred into a rehabilitation facility from Alvarado Hospital.

    Just two days after the transfer to U.C.S.D, the Defendant's contracting agent indicated that the Plaintiff was not eligible for rehabilitation therapy because a "physical therapist" said so at the only contracting rehabilitation facility that was covered by her supplemental insurance. Two qualified physicians had determined that the Plaintiff needed immediate and intensive rehabilitation therapy for her first stroke. By law, a Physical therapist cannot write orders, so the HMO and UCSD Medical Center, working in concert, ignored the valid doctor's order from the previous

facility, Alvarado Hospital, in order to save money.

Nonetheless, a non physician "physical therapist" at U.C.S.D. stated that the Plaintiff could not endure three hours of rehabilitation services a day, and that she should be transferred to a nursing facility. However, another case worker at Defendant U.C.S.D. on the 8th floor confirmed the two physicians' opinions that the Plaintiff met the criteria for acute rehabilitation and suggested Plaintiff's transfer for rehabilitation at Alvarado Rehabilitation Center. (It is important to note that Sharp Rehabilitation and Alvarado Rehabilitation have the same criteria for admission into acute rehabilitation**).** The operative difference is that Defendant HEALTH NET OF CALIFORNIA would have to pay for therapy at Sharp Rehabilitation (a contracting facility), but not at Alvarado Rehabilitation unless special permission was obtained. Also Plaintiff's daughter was requested to sign a waiver of any claims against HEALTH NET OF CALIFORNIA which she refused to do in order to go to the non-contracting facility.

The Plaintiff's family had no choice to transfer the Plaintiff to Alvarado Rehabilitation Center. The out of pocket costs included a week of services and physician bills in excess of $100,000. Defendant also said Plaintiff will have to pay if she wants an ambulance to transfer as Defendant's insurance company only pays for Hospital- nursing home transfers. Plaintiff's family said they would then have to acquire a truck to drive the hemiplegic patient to the Rehabilitation Center. All of a sudden an ambulance appeared.

Despite being on actual notice of the fact that the Plaintiff had suffered a debilitating stroke and needed rehabilitation services, the Defendant without adequate investigation and with no reasonable basis denied the Plaintiff's request for such services. The Defendant refused to authorize rehabilitation services. The Defendant's decision was ostensibly based upon the groundless order of a "physical therapist," in contradiction to the considered orders of two qualified physicians. Plaintiff immediately dropped the Health Net Senior Advantage plan and within 30 days Medicare began picking up services that Defendant HEALTH NET OF

3
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DISMISS

1  CALIFORNIA had denied.  However Plaintiff has spent in excess of $100,000.00 of her own
2  money for rehabilitation.
3      The misconduct of Defendants HEALTH NET OF CALIFORNIA, and HEALTH NET
4  SENIORITY PLUS is part of a pattern and practice of refusing to pay for adequate care for its
5  members in order to raise its profits. Although Defendants represent to perspective clients that
6  they will receive better care than they would under regular Medicare, such is not the case.
7  Defendants use a combination of incentives and disincentives to discourage the issuance of
8  prescriptions and the rendering of necessary care.  The Defendant does
9   not reimburse providers sufficiently, but rather they discourage the provision of necessary care
10 and referrals.  The Defendant effectively cause providers to consider their own financial interests as
11 more important than the care of the members of the health plan.
12     In fact, the members of Defendant's health plan would have their interests better served by not
13 participating in the Defendant's managed health care plan, but rather by being fee for service Medicare
14 patients or by joining another plan as Plaintiff has now that covers everything that is covered by
15 Medicare.  The Defendant effectively discouraged  preventative and diagnostic tests such as for
16 diabetes or to detect heart conditions such as atrial fibrillation and carotid artery disease.  It refuses
17 referrals to Cardiologists. It discourages the use of rehabilitation therapy for  candidates, such as the
18 Plaintiff, and rather attempt to send them to nursing homes, which is cheaper.  Patients receiving
19 ordinary Medicare benefits would have much better access to quality care.
20     As a result of the Defendant's unreasonable refusal to authorize rehabilitation, the Plaintiff
21 suffered injury, including costs in the amount of over $100,000.00.  Plaintiffs' complaint was filed
22 in California Superior Court on 11/7/07. On 1/30/08, Defendant HEALTH NET OF
23 CALIFORNIA was named as a Doe defendant in the state court action.  The Plaintiff alleged only
24 state common law claims of fraud, bad faith insurance tactics, and unfair business practices
25 (Complaint on file herein, paragraphs 52-73).   The basis of the Plaintiff's Complaint does not have
26
27

anything to do with Medicare, but rather the conduct of the Defendant).

Defendant HEALTH NET OF CALIFORNIA's Notice of Removal was served on Plaintiff on 3/8/08. Plaintiff's Motion for Remand is scheduled to be heard concurrently with the present motion to dismiss. The Defendant has delayed responding to discovery in the present case, in an apparent attempt to take advantage of the fact that the Plaintiff is elderly and extremely infirm. The Defendant is apparently hoping that the Plaintiff will expire prior to the remand to state court.

**II. LEGAL ARGUMENT**

A. **The Defendant's jurisdictional attack should be rejected.** In Safe Air v Meyer 373 Fed 3d 1035 (9th Cir. 2004), the Ninth Circuit held that jurisdictional argument as a basis for dismissal under FRCP 12(b) (1) should rarely be accepted:

The district court dismissed Safe Air's claim for lack of subject matter jurisdiction under Rule 12(b)(1). A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. The Growers' jurisdictional attack was factual because the Growers challenged Safe Air's contention that grass residue constitutes solid waste under RARA. *Morrison v. Away Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003) (jurisdictional challenge was a factual attack where it "relied on extrinsic evidence and did not assert lack of subject matter jurisdiction solely on the basis of the pleadings").

In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *White*, 227 F.3d at 1242). The court need not presume the truthfulness of the plaintiff's allegations. *White*, 227 F.3d at 1242. "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage*, 343 F.3d at 1039 n.2.

However, "jurisdictional dismissals in cases premised on federal-question jurisdiction are exceptional, and must satisfy the requirements specified in *Bell v. Hood*, 327 U.S. 678, 90 L. Ed. 939, 66 S. Ct. 773 (1946)." *Sun Valley Gas., Inc. v. Ernst Enters.,* 711 F.2d 138, 140 (9th Cir. 1983). In *Bell*, the Supreme Court determined that jurisdictional dismissals are warranted "where the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." 327 U.S. at 682-83.

We have held that a "jurisdictional finding of genuinely disputed facts is inappropriate when 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is

5
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DISMISS

dependent on the resolution of factual issues going to the merits' of an action." *Sun Valley,* 711 F.2d at 139 (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). 3 The question of jurisdiction and the merits of an action are intertwined where "a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." *Id. See also Thornhill Publ'g Co. v. Gen. Tel. Co.*, 594 F.2d 730, 734 (9th Cir. 1979) ("When a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiffs' substantive claim for relief, a motion to dismiss for lack of subject matter jurisdiction rather than for failure to state a claim is proper only when the allegations of the complaint are frivolous.") (quotation omitted).

In the present case, the Defendant has argued that the res gestae of the Plaintiff's claims are "in reality" a claim under the MMA and as such are pre-empted, despite the fact that they are pled as ordinary common law claims. On this basis, the Defendant has argued that the Plaintiff's claims are pre-empted and that the complaint should be dismissed. Therefore, the subject matter of the claims and the basis for jurisdiction are essentially related and the motion should be denied.

**B. The Plaintiff's Claims are not Pre-empted.**

The California Supreme Court has determined that claims such as those in the present case are not inextricably related to Medicare. In <u>McCall v. Pacificare of California</u> 25 Cal 4th 412 (2001) the Court held:

A Medicare provider may violate state common law or statutory duties owing to beneficiaries, unrelated to its Medicare coverage determinations. The "inextricably intertwined" language in Ringer is more correctly read as sweeping within the administrative review process only those claims that, "at bottom," seek reimbursement or payment for medical services, but not a claim not seeking such reimbursement or payment, which claim as pleaded incidentally refers to a denial of benefits under the Medicare Act. (See Ringer, supra, 466 U.S. at pp. 614-615 [104 S. Ct. at pp. 2021-2022].) The latter type of state-law-based claim by Medicare beneficiaries is not subject to the administrative review process and may be pursued in our state courts. In the language of Ringer, at page 618 [104 S. Ct. at page 2023], such claims are collateral to, not inextricably intertwined with, Medicare benefit claims. For example, a provider may negligently fail to use ordinary skill and care in treating a beneficiary, or properly to advise the beneficiary concerning his health condition or appropriate treatment options, whether or not such options are covered by Medicare, thus preventing the beneficiary from seeking such treatment even at his own expense. Or a provider may fail to provide appropriate referrals to specialists, and thus prevent the beneficiary from obtaining appropriate care, again without regard to coverage. The McCalls' first and second causes of action, for negligence and wilful misconduct, respectively, set forth such allegations and enumerate the statutory and regulatory bases of the relevant duties (see ante, pp. 415-416), none of which necessarily implicates a coverage determination or falls within the scope of the Medicare administrative review process. A provider may make misrepresentations regarding the nature or extent of the services it intends to provide, either in its application for HMO licensure to the California Department of Corporations or in its marketing materials disseminated to potential enrollees. If the injury to the enrollee is foreseeable, a Randi W. cause of action 8 or a claim of fraud may be stated. 9 The McCalls' third, fourth and fifth causes of action allege such claims, none

6
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DISMISS

1  of which necessarily implicates coverage determinations or falls within the scope of the Medicare administrative review process.

FOOTNOTES

8 See Randi W. v. Muroc Joint Unified School Dist. (1997) 14 Cal. 4th 1066 [60 Cal. Rptr. 2d 263, 929 P.2d 582, 68 A.L.R.5th 719].

9 We note that the recent decision in Buckman Co. v. Plaintiffs' Legal Committee (2001) 531 U.S. 341 [121 S. Ct. 1012, 148 L. Ed. 2d 854] concluded that a state law action seeking damages for injuries allegedly caused by Food and Drug Administration (FDA) approved bone screws, predicated on a "fraud-on-the-FDA" theory, was preempted by the Federal Food, Drug, and Cosmetic Act, as amended by the Medical Device Amendments of 1976, 21 United States Code section 301. The high court reasoned that "[p]olicing fraud against federal agencies is hardly 'a field which the States have traditionally occupied,' [citation], such as to warrant a presumption against finding federal pre-emption of a state-law cause of action." (Buckman, supra, 531 U.S. at p. 348 [121 S. Ct. at p. 1017, 148 L. Ed. 2d at p. 860].) The court contrasted "situations implicating 'federalism concerns and the historic primacy of state regulation of matters of health and safety,' " where a "presumption against pre-emption obtains." ( Id. at p. 348 [121 S. Ct. at p. 1017, 148 L. Ed. 2d at p. 861], citing Medtronic, Inc. v. Lohr, supra, 518 U.S. at p. 485 [116 S. Ct. at p. 2250].) To the extent the McCalls' complaint alleges fraud on the HCFA, defendants may, on remand, assert it is preempted under the rule in Buckman.

A provider may breach the fiduciary duty it owes the enrollee (see Moore v. Regents of University of California (1990) 51 Cal. 3d 120, 129 [271 Cal. Rptr. 146, 793 P.2d 479, 16 A.L.R.5th 903]), inter alia, by permitting its financial interest detrimentally to affect treatment decision making or failing to disclose such interest. The McCalls' sixth cause of action alleges such a claim, which does not necessarily implicate coverage determinations or fall within the scope of the Medicare administrative review process.

If a defendant's violations of state law duties are sufficiently outrageous, a claim for negligent or intentional infliction of emotional distress may be stated; the McCalls' seventh and eighth causes of action allege such violations, none of which necessarily implicates coverage determinations or falls within the scope of the Medicare administrative review process.

Finally, such violations of statutory duties, none necessarily implicating coverage determinations or falling within the scope of the Medicare administrative review process, may amount to unfair practices as prohibited by Business and Professions Code section 17200; the McCalls' ninth cause of action so alleges. 10

FOOTNOTES

10 This case does not call upon us to determine the sufficiency of any of the McCalls' allegations to state a cause of action under California law, and we express no opinion on whether the claims ultimately will be proven.

Because the McCalls may be able to prove the elements of some or all of their causes of action without regard, or only incidentally, to Medicare coverage determinations, because (contrary to the dissent's characterization of the complaint) none of their causes of action seeks, at bottom,

7
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DISMISS

payment or reimbursement of a Medicare claim or falls within the Medicare administrative review process, and because the harm they allegedly suffered thus is not remediable within that process, it follows that the Court of Appeal correctly reversed the trial court's orders sustaining defendants' demurrers without leave to amend. 11

In <u>Zolezzi v. Pacificare of California</u> 105 Cal App 4th 573 (2003), the court stated:

We believe the Act's express preemption of "[s]tate standards relating to . . . [P] . . . [P] [c]overage determinations (including related appeals and grievance processes)" is not clear and unambiguous. (42 U.S.C. § 1395w-26(b)(3)(B).) Construing that language narrowly, the Act could preempt only state standards that directly relate to coverage determinations, including, for example, procedures for obtaining payment or reimbursement for medical services. Construing that language broadly, as PacifiCare apparently suggests, the Act could preempt any state standard that is incidental or collateral to a coverage determination, based on the premise the standard is tangentially related to that determination. To properly interpret that statutory language, it is helpful to review analogous case law and relevant administrative agency interpretations.

...........Considering the language of 42 United States Code section 1395w-26(b)(3)(B)(iii), administrative rules and regulations, and analogous case law cited ante, we conclude the phrase "coverage determinations" in that statute should be interpreted in the same manner as in McCall, and therefore there is no federal preemption of state standards relating to resolution of state law causes of action that do not seek payment or reimbursement of a Medicare claim or otherwise fall within the Medicare administrative review process for coverage determinations. Absent clear indication of congressional intent, we decline to find preemption of standards, founded in California law, relating to resolution of claims, also founded in California law, that have no remedy under the Medicare administrative process. (McCall v. PacifiCare of Cal., Inc., supra, 25 Cal.4th at p. 424.) PacifiCare does not cite, and we have not found, any authority clearly indicating Congress intended the BBA's specific preemption statute to preempt state standards relating to resolution of state law causes of action that do not seek payment or reimbursement of a Medicare claim. On the contrary, there is authority to conclude preemption was not intended. The HCFA's administrative rules and regulations, quoted ante, show that agency believes Congress intended the BBA's specific preemption statute to narrowly apply only to disputes regarding coverage determinations (i.e., whether medical services or other benefits are covered by a M+C plan) for which the Act provides the exclusive means for resolution and appeal. As we noted ante, the HCFA stated: "We are . . . adopting a narrow interpretation of the scope of preemption of coverage determinations. Coverage determinations are made initially by M+C organizations and may be appealed as provided for under subpart M of these regulations. Our view is that the types of decisions related to coverage included in this specific preemption are only those determinations that can be subject to the appeal process of subpart M. These are decisions about whether an item or service is covered under the M+C contract and the extent of financial liability beneficiaries have for the cost of covered services under their M+C plan." (63 Fed. Reg. 34968, 35013, italics added.) support of its narrow interpretation of the specific preemption statute, the HCFA cited the "conference report language and the overall structure of the BBA in its delineation of the relative roles of the State and Federal governments." (63 Fed. Reg. 34968, 35012.) Furthermore, because the Act does not provide for tort, contract, or other remedies for claims that do not request payment or reimbursement of a Medicare claim for benefits, it can be reasonably inferred Congress did not intend to preempt state law causes of action that provide those remedies or state standards relating to resolution of those causes of action. A recent decision of the United States Court of Appeals, Ninth Circuit provides support for our interpretation: "[Appellant] has not shown that Congress intended to preempt all state law claims. In the interim final rule for the M+C program, the agency stated that it was adopting a 'narrow interpretation' of the specific preemption provisions and that

8
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DISMISS

1  state tort or contract claims relating to coverage determinations were not preempted. [Citation.]
2  Because Congress did not clearly manifest any intention to convert all state tort claims arising from the administration of Medicare benefits into federal questions, we hold that the Medicare program does not completely preempt state tort law claims." (Hofler v. Aetna US Healthcare of California,
3  Inc. (9th Cir. 2002) 296 F.3d 764, 768.)

4

5       In the recent case Masey v. Humana, Inc. 2007 US Dist. LEXIS 63556 (M.D. Fla.) the

6  court held that claims under the Kentucky equivalent to California Business and

7  Professions Code section 17200 et seq were not pre-empted:

8  The KCPA provides that unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are unlawful. Ky. Rev. Stat. § 367.170. If a plaintiff prevails on a KCPA
9  claim and proves defendant's actions are malicious, oppressive or fraudulent, plaintiff may be eligible to recover punitive damages. Hollon v. Consumer Prot. Recovery Ctr., 417 F. Supp. 2d
10 849, 852 (E.D. Ky. 2006). The KCPA authorizes the award of attorneys fees and costs. Ky Rev. Stat. § 367.220(3). Assuming the Kentucky consumer protection statute applies to Plaintiff's
11 **claim,** Plaintiff may be eligible to recover punitive damages, attorneys' fees and costs. As such, this **claim** is not a **claim** for reimbursement of medical **benefits** and is not inextricably intertwined with
12 the **Medicare** Act. See e.g., Hofler, 296 F.3d at 768 (not clear and **manifest** intent by **Congress** to **preempt** entire field of state regulations regarding **Medicare** plans); Commonwealth of
13 Pennsylvania v. Tap Pharm. Prods., 415 F. Supp. 2d 516, 525 n.6 (E.D. Pa. 2005)(**Medicare** Act does not **preempt** state's ability to regulate fraudulent billing practices under state consumer
14 protection **laws)**; In re Pharm. Indus. Average Wholesale Price Litig., 263 F. Supp. 2d 172, 188 (D. Mass. 2003)(same). Thus, Count IV is not inextricably intertwined with Plaintiff's claim for
15 reimbursement of Medicare benefits.

16
   See also In re; Lipron Mfg. & Sales Practices Litig. 295 Fed Supp 2d 148,78 (2003).
17

18       The Defendant's significant reliance upon the reasoning and the result in Dial v
   Healthspring of Alabama Inc.  501 Fed. Supp. 2d 1348 (S.D. Ala. 2007) is extremely misplaced.
19 The decision has ***uniformly*** been criticized. In denying a post trial motion the Dial court admitted:

20
   The parties point out that at least two other district courts have ruled differently from this court in
21 substantially similar cases and entered orders granting remand upon a finding that plaintiffs' claims were not subject to complete preemption under the MMA. (Doc. 32, Exhibit A, Bolden, et al., v.
22 Healthspring of Alabama, Inc., et al., Civil Action 07-413-CG-B, 2007 U.S. Dist. LEXIS 77950 and Acoff, et al., v. Healthspring of Alabama, Inc., et al., Civil Action 07-414-CG-M, 2007 U.S.
23 Dist. LEXIS 77950 (S.D. Ala., 2007); Exhibit B, Harris v. Pacificare Life & Health Ins. Co., et al., Civil Action 2:06-956-ID, 2007 U.S. Dist. LEXIS 73383 (M.D. Ala., 2007)).

24
   The holding in the Dial case was in fact contradicted by the holding in a companion case, Bolden v.
25  Healthspring of Alabama Inc. 2007 U.S. Dist. LEXIS 77950 (S.D. Ala. 2007):

26
                                         9
27 MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DISMISS

The court thus finds that Part C of the Medicare Act, as amended by the MMA in 2003, lacks sufficient indication that Congress intended not only to preempt state law within the parameters of the federal statutory scheme, but also to turn state law claims in that area into federal claims or to establish that federal courts had original and removal jurisdiction over such state law claims. In so doing, the court is aware that this ruling is at odds with Judge DuBose's decision in *Dial v. HealthSpring of Ala., Inc.,* 501 F. Supp. 2d 1348, 2007 WL 2317783 (S.D. Ala). Nonetheless, in light of the presumption against finding jurisdiction, *Univ. Of S. Ala. v. Am. Tobacco Co.,* 168 F.3d at 411, the court can not find the requisite evidence of congressional intent to add to the court's limited jurisdictional grant.

Further, the court in *Harris v. Pacificare Life & Health Ins. Co., et al.,* Civil Action 2:06-956-ID, 2007 U.S. Dist. LEXIS 73383 (M.D. Ala., 2007)):

Pacificare's reliance on 42 U.S.C. § 1395w-26(b)(3) as a complete preemption statute is not supported by any convincing authority or compelling reasoning. Because Pacificare has not demonstrated that 42 U.S.C. § 1395w-26(b)(3) "provide[s] the exclusive cause of action" for the wrongful conduct alleged by Plaintiffs or "set[s] forth procedures and remedies governing" Plaintiffs' causes of action, Beneficial National Bank, 539 U.S. at 8, the court finds that complete preemption does not constitute an adequate ground for removal.

Similarly, the court in the very recent case Williams v. Viva Health Ins. Co. 2008 US Dist. LEXIS 5639 (S.D. Ala.) stated that the Dial case was the *only* court to hold that the relevant portions of the Medicare Act entail complete preemption in every case:

Neither the Eleventh Circuit nor any other circuit has addressed whether 1395w-26(b)(3) carries complete preemptive force, but other district courts have found that it does not. *See Lassiter v. Pacificare Life & Health Ins. Co.,* No. 07-583, 2007 U.S. Dist. LEXIS 91970, 2007 WL 4404051, at  (M.D. Ala. Dec. 13, 2007); *Bolden v. Healthspring of Ala., Inc.,* Nos. 07-413, 07-414, 2007 U.S. Dist. LEXIS 77950, 2007 WL 4403588, at *10 (S.D. Ala. Oct. 2, 2007); *Harris,* 514 F. Supp. 2d at 1296. **While one court has found that § 1395w-26(b)(3) does completely preempt state law claims, *Dial v. Healthspring of Ala., Inc.,* 501 F. Supp. 2d 1348 (S.D. Ala. 2007), this court joins others in declining to follow *Dial*.** *See Lassiter,* 2007 U.S. Dist. LEXIS 91970, 2007 WL 4404051, at *2; *Bolden,* 2007 U.S. Dist. LEXIS 77950, 2007 WL 4403588, at *10; *Harris,* 514 F. Supp. 2d at 1294 n.13.

Id at   (Emphasis added).

The Court continued:

Moreover, Viva has not shown that Congress intended § 1395w-26(b)(3) to be a complete preemption statute. In effectuating complete preemption under LMRA and ERISA, Congress expressly created a federal cause of action to resolve disputes. 6 See 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees  in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ."); 29 U.S.C. § 1132(f) ("The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action."). Unlike

LMRA and ERISA, the MMA does not have a provision providing for a federal cause of action and only requires that federal law "shall supersede any State law or regulation . . . with respect to [Medicare Advantage] plans . . . ." 42 U.S.C. § 1395w-26(b)(3). The plain language of § 1395w-26(b)(3) does not support the conclusion that Congress intended complete preemption.

Finally, in a factually similar case to the case at bar in which the beneficiary of a MMA plan alleged fraud and other state claims, the court in <u>Lassiter v. Pacificare Life & Health Ins. Co.</u> 2007 US Dist LEXIS 91970 (M.D. Ala.) held:

No circuit court of appeals has addressed the question before this Court of whether the MMA completely preempts state law claims and thereby confers federal jurisdiction. However, the issue has been addressed by other district courts. In Harris v. Pacificare Life & Health Ins. Co., 514 F. Supp. 2d 1280, 2007 WL 2846477 (M.D. Ala. 2007) (DeMent, J.), Pacificare attempted to remove state law claims arising out of the sale of a Medicare insurance policy on the ground that § 1395w-26(b)(3) demonstrated Congress's intent for the MMA to completely preempt state law claims, which is the exact same argument they are making to this Court. In Harris, Judge DeMent held that the MMA did not completely preempt state law claims because it does not create an exclusive cause of action. See Harris, 514 F. Supp. 2d 1280, 2007 WL 2846477, at * 10-12. Furthermore, Judge Granade reached the same conclusion in Bolden v. Healthspring of Ala., Inc., No. CV07-413, 2007 U.S. Dist. LEXIS 77950 (S.D. Ala. October 2, 2007). This Court is aware that one court has held that the MMA does completely preempt state law claims. See Dial v. Healthspring of Ala., Inc., 501 F. Supp. 2d 1348 (S.D. Ala. 2007).

This Court is persuaded by the reasoning in Harris and Bolden that the MMA does not completely preempt state law claims.  A federal statute does not completely preempt state law claims unless Congress intended the federal statute to provide the "exclusive cause of action." See Beneficial Nat'l Bank, 539 U.S. at 8; Geddes, 321 F.3d at 1353 ("The Supreme Court has cautioned that "complete preemption can be found only in statutes with 'extraordinary' preemptive force. Moreover, that 'extraordinary' preemptive force must be manifest in the clearly expressed intent of Congress." (internal citations omitted)). The MMA provides in § 1395w-26(b)(3) that "The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part."

This language is not sufficient to demonstrate a clear intent by Congress to create an exclusive private federal remedy.  Harris, 514 F. Supp. 2d 1280, 2007 WL 2846477, at *11-12. Indeed, Pacificare compares this language to the preemption language in the Employee Retirement Income Security Act of 1974 ("ERISA") § 514(a), codified at 29 U.S.C. § 1144(a). While ERISA is one of the few statutes where the Supreme Court has found complete preemption, it is well settled that complete preemption arises from ERISA's civil enforcement scheme in § 502(a), codified at 29 U.S.C. § 1132(a), and that § 514(a) establishes only ordinary preemption. See Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1211-12 (11th Cir. 1999). Accordingly, § 1395w-26(b)(3) is insufficient to establish a clear Congressional intent that the MMA provides an exclusive private federal remedy. Therefore, this Court lacks jurisdiction over the Plaintiffs' claims and the case must be remanded back to the state court.

The Defendant's reliance on two companion cases from the Northern District of California

11
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DISMISS

1 is similarly unavailing. Despite the Defendant's misleading implication that the two cases are
2 independent of one another, they were explicitly based upon almost identical facts and involve the
3 same narrow issue. In <u>Clay v. Permanente Medical Group</u> 2007 WL 4374273 (N.D. Cal. 2007)
4 and <u>Drissi v. Kaiser Foundation Hospitals, Inc.</u> 2008 WL 54382 (N.D. 2007), the single issue was
5 whether or not the Defendant's arbitration contract was misleading and violated California law
6 relating to the construction of such agreements. It is crucial to note that *neither court referred to*
7 *any of the extensive authority* relating to complete pre-emption of state tort claims. The reason is
8 simple: it is clear that federal law pre-empts state claims relating to the contents of MMA
9 agreements. The extensive authority cited *supra* relates on the other hand not to the content of
10 agreements but to the conduct of the Defendant and its agents. The Defendant has therefore not
11 even begun to prove that the two courts "implicitly agreed" that all state tort claims based upon
12 conduct, rather than terms of a contract, are pre-empted.

13 In fact, the Defendant's reference to the Plaintiff's bad faith claim discloses that the
14 Plaintiff's claim is based upon actionable misconduct, not the terms of a contract. Bad faith
15 insurance tactics are tactics which constitute the withholding of benefits without proper cause.
16 <u>Prudential Ins. Co. of Am. v. Superior Court</u>  98 Cal App 4th 585,605 (2002). The court in <u>Love</u>
17 <u>v. Fire Ins. Exch.</u> 221 Cal App 3d 1136, 49 (1990) held that improper conduct is actionable:

Thus, an insurer must investigate claims thoroughly ( Egan, supra, 24 Cal.3d at p. 819); it may not deny coverage based on either unduly restrictive policy interpretations ( Delgado v. Heritage Life Ins. Co. (1984) 157 Cal.App.3d 262, 277-278 [203 Cal.Rptr. 672]) or standards known to be improper ( Moore v. American United Life Ins. Co. (1984) 150 Cal.App.3d 610, 637-638 [197 Cal.Rptr. 878]); it may not unreasonably delay in processing or paying claims ( McCormick v. Sentinel Life Ins. Co. (1984) 153 Cal.App.3d 1030, 1048 [200 Cal.Rptr. 732]).

These special duties, at least to the extent breaches thereof give rise to tort liability, find no counterpart in the obligations owed by parties to ordinary commercial contracts. The rationale for the difference in obligations is apparent. If an insurer were free of such special duties and could deny or delay payment of clearly owed debts with impunity, the insured would be deprived of the precise benefit the contract was designed to secure (i.e., peace of mind) and would suffer the precise harm (i.e., lack of funds in times of crisis) the contract was designed to prevent. ( Wallis v. Superior Court (1984) 160 Cal.App.3d 1109, 1117-1118 [207 Cal.Rptr. 123].) To avoid or discourage conduct which would thus frustrate realization of the contract's principal benefit (i.e.,

12
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DISMISS

1  peace of mind), special and heightened implied duties of good faith are imposed on insurers and made enforceable in tort. While these "special" duties are akin to, and often resemble, duties which
2  are also owed by fiduciaries, the fiduciary-like duties arise because of the unique nature of the insurance contract, not because an insurer is a fiduciary.
3

4  The Plaintiff has alleged specific acts of misconduct on the part of the Defendant. After the
5  Plaintiff suffered a major stroke, her first, she was determined to be an excellent candidate for
6  acute rehabilitation. Despite the recommendations for acute rehabilitation, after 4 days at the
7  medical facility where she received treatment for the stroke, UCSD Medical Center, the
8  Defendant's contracting agent indicated that the Plaintiff was not eligible for rehabilitation therapy
9  because a physical therapist said so at the only contracting facility, i.e. Sharp Rehabilitation
10 Hospital, that was covered by her supplemental insurance. Two qualified physicians had
11 determined that the Plaintiff needed immediate and intensive physical therapy. Nonetheless, a non
12 physician "physical therapist" at UCSD stated that the Plaintiff could not endure three hours of
13 rehabilitation services a day, and that she should be transferred to a nursing facility. However,
14 another case worker at Defendant UCSD on the 8th floor confirmed the two physicians' opinion
15 that the Plaintiff met the criteria for acute rehabilitation and suggested Plaintiff's transfer for
16 rehabilitation at Alvarado Hospital. It is important to note that Sharp and Alvarado have the same
17 criteria for admission into acute rehabilitation. The operative difference is that Defendant
18 HEALTHNET would pay for therapy at Sharp Rehabilitation, but not at Alvarado Rehabilitation.

19 As a result of the denial of services based upon the opinion of a non physician "physical
20 therapist," the plaintiff's daughter, who had the Plaintiff's power of attorney, was informed that the
21 Plaintiff would have to pay for rehabilitation services out of pocket or the Plaintiff would be
22 transferred to a nursing facility, Magnolia. The Magnolia facility had received numerous citations
23 from the D.H.S. and was one of the worst in San Diego County. The Plaintiff's family had no
24 choice to transfer the plaintiff to Alvarado Medical Center, to their great expense.

25 Despite being on actual notice of the fact that the Plaintiff had suffered a debilitating stroke
26

27
13
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DISMISS

and needed immediate rehabilitation services, the Defendant without adequate investigation and with no reasonable basis denied the Plaintiff's request for such services. The Defendant refused to authorize rehabilitation services in a timely manner, despite being on actual notice that time was of the essence in that immediate rehabilitation was necessary in order to mitigate permanent injury. The Defendant's decision was ostensibly based upon the groundless opinion of a "physical therapist," in contradiction to the considered opinion of two qualified physicians.

The Plaintiff has alleged that the misconduct of the Defendants HEALTHNET is part of a pattern and practice of refusing to pay for adequate care for its members in order to raise its profits. Although Defendants represent to perspective clients that they will receive better care than they would under regular Medicare, such is not the case. The Defendant uses a combination of incentives and disincentives to discourage the issuance of prescriptions and the rendering of necessary care. The Defendant does not reimburse providers sufficiently, but rather discourage the provision of necessary care. The Defendant effectively cause providers to consider their own financial interests as more important than the care of the members of the health plan.

In fact, the members of Defendant's health plan would have their interests better served by not participating in the Defendant's managed health care plan, but rather by being fee for service Medicare patients. The Defendant effectively discouraged preventative and diagnostic tests such as for diabetes or to detect heart conditions such as atrial fibrillation and murmurs. It discourages the use of physical therapy for good candidates therefor such as the Plaintiff, and rather attempt to send them to nursing homes, which is cheaper. Patients receiving ordinary Medicare benefits would have better access to quality care.

The Plaintiff has alleged that the conduct of the Defendants is actionable, not that the terms of any agreement were not in conformity with federal law. All of the Plaintiff's claims----fraud, bad faith insurance tactics, and unfair business practices—are based upon ordinary state law theories, not federal law. As such, the claims are not pre-empted and the Defendant's motion

14
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DISMISS

1 should be denied.

2 **CONCLUSION**

3     The Plaintiff's claims are not pre-empted by federal law. Therefore, the Defendant's motion
4 to dismiss should be denied. Moreover, the case was improperly removed to federal court, as
5 there is no basis for federal jurisdiction. The case should not be dismissed, but rather remanded to
6 State Court (cf. Plaintiff's Motion to Remand, heard concurrently.

8 Dated:                                               HAYWORTH AND SUSSMAN

                                                Nancy Sussman
                                                Attorney for Plaintiff

15
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DISMISS