1  RICHARD B. WOLF, SB# 046173
      E-Mail: rwolf@lbbslaw.com
2  ELISE D. KLEIN, SB# 111712
      E-Mail: klein@lbbslaw.com
3  JANELLE F. GARCHIE, SB# 118453
      E-Mail: garchie@lbbslaw.com
4  KRISTIN P. KYLE de BAUTISTA, SB# 221750
      E-Mail: kyledebautista@lbbslaw.com
5  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   650 West "C" Street, Suite 800
6  San Diego, California 92101
   Telephone: (619) 233-1006
7  Facsimile: (619) 233-8627

8  Attorneys for HEALTH NET OF CALIFORNIA, INC.

9                UNITED STATES DISTRICT COURT

10              SOUTHERN DISTRICT OF CALIFORNIA

11

12  FREDA SUSSMAN,                    ) CASE NO. 08 CV 0392 H BLM
                                      )
13        Plaintiff,                  ) Honorable Marilyn L. Huff
                                      ) Action Removed: March 3, 2008
14        v.                          )
                                      )
15  ARMELIA SANI, M.D., SHILEY EYE    )
    CENTER, UCSD MEDICAL CENTER,      ) **DEFENDANT HEALTH NET**
16  REGENTS OF THE UNIVERSITY OF      ) **OF CALIFORNIA, INC.'S OPPOSITION**
    CALIFORNIA, HEALTH NET, INC.,     ) **TO PLAINTIFF'S MOTION TO**
17  HEALTH NET SENIORITY PLUS,        ) **REMAND CASE TO STATE COURT**
    LINDA BEACH, HAIDEE               )
18  GUTIERREZ, and DOES 1 through 40, )
    inclusive,                        ) DATE:   April 21, 2008
19                                    ) TIME:   10:30 a.m.
          Defendants.                 ) CTRM:   13
20                                    )
                                      )
21                                    )
                                      )
22                                    )
    _____   )

23

24        Defendant Health Net of California, Inc. hereby submits the following brief in

25  opposition to the motion to remand this action to state court filed by plaintiff Freda

26  Sussman:

27  ///

28  ///

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................... 2

II.     FACTUAL BACKGROUND ........................................ 3

III.    ARGUMENT ....................................................... 4

A.      Overview of Complete Preemption Created by the Medicare Act
        As Amended .................................................... 4

B.      Plaintiff's "State Law" Claims Are Expressly Pre-Empted By
        Federal Law ................................................... 5

C.      The Medicare Act, as Amended, Sets Forth a Detailed, and Exclusive,
        Administrative and Post-Exhaustion Judicial Review Scheme
        Addressing All of Plaintiff's State Law Claims for Relief .......... 8

        1.      Plaintiff's claim of entitlement to MA benefits is preempted. ... 9

        2.      Plaintiff's "bad faith" claim is preempted. ............... 12

        3.      Plaintiff's Fraud And Deceit claim is preempted by the Medicare
                Act ................................................... 12

        4.      Plaintiff's Unfair Business Practices claim is preempted by the
                Medicare Act ......................................... 16

IV.     CONCLUSION .................................................... 17

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

OPPOSITION TO PLAINTIFF'S MOTION TO REMAND CASE TO STATE COURT

**TABLE OF AUTHORITIES**

**Federal Cases**

*Ardary v. Aetna Health Plans of Calif., Inc.*, 98 F.3d 496
(9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003) . . . . . . . . . . . . . . . . . . . . . 4

*Clay v. Permanente Medical Group, Inc.*, 2007 WL 4374273
(N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

*County of Pierce v. Leavitt*, 244 Fed.Appx. 802 (9th Cir. 2007) . . . . . . . . . . . . . 8

*Dial v. Healthspring of Ala., Inc.*, 501 F.Supp.2d 1348 (S.D. Ala. 2007) . . . . . . 13,16

*Dielsi v. Falk*, 916 F.Supp. 985 (C.D. Cal. 1006) . . . . . . . . . . . . . . . . . . . . . 3

*Drissi v. Kaiser Foundation Hospitals, Inc.*, 2008 WL 54382
(N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14, 16

*First Medical Health Plan, Inc. v. Vega-Ramos*, 479 F.3d 46
(1st Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14

*Heckler v. Ringer*, 466 U.S. 602 (1984) . . . . . . . . . . . . . . . 5, 8, 9, 10, 11, 12

*Hooker v. United States Department of Health and Human Services*,
858 F.2d 525 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990) . . . . . . . . . . . . . . . . . . . . 6

*Jenkins v. Social Security Administration*, 42 Fed. Appx. 995
(9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lassiter v. Pacificare Life & Health Insurance Co.*,
2007 U.S.Dist. LEXIS91970 (D. Ala. 2007) . . . . . . . . . . . . . . . . . . . . 15

*Masey v. Humana, Inc.*, 2007 U.S.Dist. LEXIS 63556 (D. Fla. 2007) . . . . . . . . . . 15

*Riegel v. Medtronic, Inc.*, __ U.S. __, 128 S.Ct. 999 (2008) . . . . . . . . . . . . . . . . . 7

**State Cases**

*20th Century Insurance Co. v. Superior Court*, 90 Cal.App.4th 1247 (2001) . . . . . 12

*Brodkin v. State Farm Fire & Casualty Co.*, 217 Cal.App.3d 210 (1989) . . . . . . . . 12

*Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal.App.3d 758 (1989) . . . . . . 15

*Industrial Indemnity Co. v. Superior Court*, 209 Cal.App.3d 1093 (1989) . . . . . . . 15

*Love v. Fire Insurance Exchange*, 221 Cal.App.3d 1136 (1990) . . . . . . . . . . . . . . 12

*McCall v. Pacificare of California, Inc.*, 25 Cal.4th 412 (2001) . . . . . . . . . . . . 5, 14

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

*Prieto v. State Farm Fire & Casualty Co.*, 225 Cal.App.3d 1188 (1990) . . . . . . . . 12

*Ray v. Farmers Insurance Exchange*, 200 Cal.App.3d 1411 (1988) . . . . . . . . . . . 12

*Waller v. Truck Insurance Exchange, Inc.*, 11 Cal.4th 1 (1995) . . . . . . . . . . . . . . 12

*Zolezzi v. Pacificare of California, Inc.*, 105 Cal.App.4th 573 (2003) . . . . . . . . . 14

## Federal Statutes

42 U.S.C. § 405 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 11

29 U.S.C. §1144 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

42 U.S.C. § 1395w-21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 1394w-22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

42 U.S.C. § 1395w-26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

## Federal Regulations

42 C.F.R. Ch. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

42 C.F.R. Part 422 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

42 C.F.R. § 422.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

42 C.F.R. § 422.80 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13, 14

42 C.F.R. § 422.564 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15

## State Statutes

Business & Professions Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . . 4, 15, 16

Health & Safety Code § 1363.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## Other Treatises

P.L. 108-173 (Dec. 8,2003), 42 U.S.C.S. 1395w-21 note . . . . . . . . . . . . . . . . . 2

H. Conf. Rep. 108-391 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

OPPOSITION TO PLAINTIFF'S MOTION TO REMAND CASE TO STATE COURT

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

## I.    **INTRODUCTION**

On November 13, 2007, plaintiff commenced a state court action in San Diego County Superior Court alleging three causes of action against defendant Health Net of California, Inc. ("Health Net"), all arising from an alleged denial of Medicare Act benefits she claims were due her through her membership in the federal Medicare Advantage (MA) program[1] health plan issued by Health Net, known as "Seniority Plus": (1) "Bad Faith Insurance Tactics"; (2) Fraud and Deceit; and (3) Unfair Business Practices.   Plaintiff alleges that she was denied benefits under her Medicare health plan for post-stroke rehabilitation services, had to pay for them herself, and makes claim for reimbursement.  Plaintiff further alleges that Health Net made marketing misrepresentations to her and other members of the public that they would receive adequate care, inducing them to rely on Health Net to fulfill its contractual duty to plaintiff.  Finally, plaintiff alleges Health Net engaged in unfair business practices in refusing to pay for its members' adequate care, and in causing health care providers to consider their own financial interests paramount by offering them incentives that discourage them from rendering necessary care to plan members. (*Complaint*, ¶¶ 52-73.).

Health Net removed the action to this Court on March 3, 2008.  The action presents a federal question, since the Medicare Act as amended completely preempts the three purported state law causes of action plaintiff alleges against Health Net. Plaintiff filed a remand motion, asserting that her allegedly state law claims are not preempted by the Medicare Act, even as amended, and that she need not exhaust her Medicare administrative remedies under federal law before seeking judicial review.

/ / /

---

[1]The federal Medicare Advantage program, originally enacted by Congress as the "Medicare + Choice" program (Medicare Prescription Drug, Improvement, and Modernization Act of 2003, § 201 (P.L. 108-173 (Dec. 8,2003), 42 U.S.C. 1395w-21 note)), provides eligible Medicare beneficiaries with the option of receiving their Medicare benefits through enrollment in a Medicare Advantage health plan issued by a private insurer or health care service plan. (42 U.S.C. § 1395w-21(a)(1)(B).)

4822-9354-4962.1                                    -2-

1    Although federal question removal jurisdiction in this Court is established, and

2  remand should be denied, the Court should refrain from exercising jurisdiction now

3  on ripeness grounds, and should dismiss plaintiff's claims as requested in Health

4  Net's pending motion for that relief.[2/]  That will allow plaintiff to exhaust her

5  administrative remedies, which were most recently broadened by the 2003

6  amendments to the Medicare Act known as the Medicare Prescription Drug,

7  Improvement, and Modernization Act of 2003 ("MMA").

8  **II.  FACTUAL BACKGROUND**

9    According to the complaint, plaintiff was a participant in the Health Net

10  "Seniority Plus" plan, a Medicare Advantage plan administered by Health Net.

11  (*Complaint,* ¶ 53.)  On or about February 23, 2007, plaintiff suffered a stroke, and

12  was admitted to the intensive care unit of Alvarado Hospital (Alvarado). (*Complaint,*

13  ¶¶ 19, 54.)  Plaintiff claims that, contrary to her MA health plan, Health Net refused

14  her request for medically necessary rehabilitation services for her as part of a pattern

15  and practice of refusing to pay for adequate care for its members in order to increase

16  its profits. (*Complaint,* ¶¶ 58-59.)  As a result, plaintiff was forced to incur the more

17  than $51,000 out-of-pocket cost of rehabilitation services and physician bills.

18

19    [2/] As detailed at pages 15-17 of its motion to dismiss, Health Net asks the Court
20  to follow such cases as *Dielsi v. Falk,* 916 F.Supp. 985, 994 (C.D. Cal. 1996), by
declining to remand based on complete federal pre-emption (there Copyright law),
21  but, exercising its removal jurisdiction, dismissing the action for lack of subject
matter jurisdiction.  Here, the lack of subject matter jurisdiction is reinforced by
22  plaintiff's failure to exhaust her administrative remedies.  As pointed out by the
Court in *Dielsi,* pp. 994-995, "federal courts are often presented with removed state
23  claims that are completely preempted by the Employees' Retirement Income Security
Act ('ERISA').  In such a case, the federal court will exercise removal jurisdiction.
24  Then, the Court is presented with the question of whether the plaintiff has exhausted
his or her administrative remedies.  If exhaustion is not futile, a federal court should
25  refrain from exercising jurisdiction on ripeness grounds and *dismiss* the preempted
ERISA claim without prejudice.  *See, e.g., Franklin H. Williams Ins. Trust v.*
26  *Travelers Ins. Co.,* 847 F. Supp. 23 (S.D.N.Y. 1994), *rev'd on other grounds,* 50 F.3d
144 (2d Cir. 1995) (accepting removal jurisdiction but then dismissing for failure to
27  exhaust)".  (Footnote omitted. Emphasis in original.)  As the court did in *Dielsi,* this
Court should decline to remand the case to state court as meaningless, since federal
28  courts have exclusive jurisdiction under the Medicare Act to review the ruling
emerging from the administrative process.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1  (*Complaint,* ¶¶ 57, 61.)  Plaintiff alleges that Health Net's conduct constitutes "bad

2  faith insurance tactics."

3      Additionally, plaintiff alleges a cause of action against Health Net for fraud and

4  deceit.  Plaintiff asserts that Health Net engages in a practice of representing to

5  members of the public that, by enrolling in the Seniority Plus plan, enrollees will

6  receive thoroughly adequate care that is superior to that provided by Medicare.

7  (*Complaint,* ¶ 65.)  Plaintiff claims that through the use of incentives and

8  disincentives to providers, Health Net actually discourages the rendering of necessary

9  care to its members. (*Complaint,* ¶ 65.)

10     Finally, plaintiff alleges that Health Net's marketing of Seniority Plus and its

11  use of combined incentives and disincentives to providers to discourage the rendering

12  of necessary care in order to garner more profits constitute unfair business practices

13  under California Business and Professions Code Section 17200 *et seq.*  (*Complaint,*

14  ¶¶ 70, 72-73.)

15  **III.   ARGUMENT**

16     **A.   Overview of Complete Preemption Created by the Medicare Act As**

17         **Amended**

18     While removal jurisdiction based on a federal question generally requires that

19  question to appear on the face of the complaint:

20         "a state claim may be removed to federal court . . . when a federal

21         statute wholly displaces the state-law cause of action through

22         complete preemption.  When the federal statute completely

23         preempts the state-law cause of action, a claim which comes

24         within the scope of that cause of action, even if pleaded in terms of

25         state law, is in reality based on federal law.  This claim is then

26         removable under 28 U.S.C. § 1441(b), which authorizes any claim

27         that 'arises under' federal law to be removed to federal court."

28  (*Beneficial National Bank v. Anderson,* 539 U.S. 1, 8-9 (2003).)

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1    When a federal statute provides the exclusive cause of action for the claims
2  asserted by a plaintiff--especially when it sets forth procedures and remedies
3  governing that cause of action--the state law claims will be recharacterized as federal
4  claims under the "complete preemption" doctrine. (*Id.*, p. 9.)  As demonstrated
5  below, both of these requirements are met here. The Medicare Act and its regulations
6  expressly supersede "*any State law or regulation*" with respect to MA plans (42
7  U.S.C. § 1395w-26(b)(3); emphasis added), and the Medicare Act, as amended, sets
8  forth a detailed, and exclusive, administrative scheme for addressing all of plaintiff's
9  state law claims for relief.

**B.    Plaintiff's "State Law" Claims Are Expressly Pre-Empted By
Federal Law**

Congress has progressively broadened the sweep of the federal preemption
effect of the Medicare Act.  Initially, the Medicare Act afforded only limited
preemption, vesting in the Secretary of Health and Human Services the exclusive
authority to determine what claims are covered by the act, and judicial review of that
determination exclusively in federal district courts. (*Heckler v. Ringer*, 466 U.S. 602,
605 [104 S.Ct. 2013, 80 L.Ed.2d 622] (1984).)  Then the Medicare Act was amended
by the Balanced Budget Act of 1997 (BBA), which established the Medicare +
Choice program (now MA) as a new part of Medicare, affording beneficiaries a new
range of Medicare managed care options.  The BBA modified the Medicare Act to
preempt state laws concerning only specific subjects, and otherwise only where the
state laws were inconsistent with Medicare. (*McCall v. Pacificare of California, Inc.*,
25 Cal.4th 412, 423 (2001).)

In 2003, the Medicare Act was again amended, this time to outlaw any state
law relating to MA plans, period.  The complete preemption provision was adopted as
part of the MMA:

/ / /

/ / /

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1    Relation to State laws. The standards established under this part shall

2    supersede *any* State law or regulation (other than State licensing laws or

3    State laws relating to plan solvency) *with respect to* MA plans which are

4    offered by MA organizations under this part.

5    (42 U.S.C. § 1395w-26(b)(3). Emphasis added.) Quoting this preemption provision,

6    Judge Conti of the district court in Northern California, stated:

7    "[W]hen Congress has 'unmistakably . . . ordained,' that its enactments alone

8    are to regulate a part of commerce, state laws regulating that aspect of

9    commerce must fall. . . . Here, Congress has unmistakably ordained that

10    Medicare preempts all state regulation. . . ."

11   (*Drissi v. Kaiser Foundation Hospitals, Inc., supra.*)

12   This Medicare provision parallels the wording of ERISA,[3/] which expressly and

13   broadly preempts "any and all state laws" that "relate to any employee benefit plan".

14   (*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139-140 (1990) [ERISA preempts

15   employee's state law claim of wrongful discharge in order to avoid paying pension

16   benefits].)

17   The Supreme Court recently held that legislative preemption provisions

18   referring to such matters as "state law or regulation" include not only statutes and

19   administrative regulation, but also the states' common-law duties, which here would

20   be implicated by two of plaintiff's three state law claims:

21    Absent other indication, reference to a State's "requirements" includes

22    its common-law duties. . . . [C]ommon law liability is "premised on the

23    existence of a legal duty," and a tort judgment therefore establishes that

24    the defendant has violated a state-law obligation. . . . And while the

25

26

27   [3/]"Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 USCS § 1003(a)] and not exempt under section 4(b) [29 USCS § 1003(b)]." (29 U.S.C. § 1144(a).)

28

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

4822-9354-4962.1

-6-

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1  common-law remedy is limited to damages, a liability award "'can be,

2  indeed is designed to be, a potent method of governing conduct and

3  controlling policy.'" . . . [I]t is implausible that the [Medical Device

4  Amendments of 1976 (MDA)] was meant to 'grant greater power (to set

5  standards "different from, or in addition to" federal standards) to a single

6  state jury than to state officials acting through state administrative or

7  legislative lawmaking processes.' . . . That perverse distinction is not

8  required or even suggested by the broad language Congress chose in the

9  MDA, and we will not turn somersaults to create it."

10  (*Riegel v. Medtronic, Inc.*, __ U.S. __, 128 S.Ct. 999, 1008-1009 (February 20, 2008),

11  citations and footnotes omitted.)

12      The legislative history of the preemption provision of the MMA makes clear

13  that it means what it says: "[T]he [Medicare Advantage Program] is a federal program

14  operated under Federal rules and that State laws, [sic] do not, and should not apply,

15  with the exception of state licensing laws or state laws related to plan solvency." (H.

16  Conf. Rep. 108-391 at 557, as quoted in *First Medical Health Plan, Inc. v. Vega-*

17  *Ramos*, 479 F.3d 46, 51 (1st Cir. 2007).)

18      The Code of Federal Regulations explains that the scope of Part 422

19  "establishes standards and sets forth the requirements, limitations, and procedures for

20  Medicare services furnished, or paid for, by Medicare Advantage organizations

21  through Medicare Advantage plans." (42 C.F.R. Ch. IV, Subch B, Part 422, Medicare

22  Advantage Program, 42 C.F.R. § 422.1.) Under these standards, when a member is

23  unhappy about the denial of benefits, she first appeals to the plan, then to an

24  administrative law judge. Either party dissatisfied with the ruling of the

25  administrative law judge can appeal to the Secretary of Health and Human Services.

26  If either party is dissatisfied with that ruling, he, she or it may seek judicial review in

27  the United States District Court. (42 U.S.C. §§ 405(g); 1395w-22(g)(5); 42 C.F.R.

28  Part 422, Subpart M. § 422.560, et seq.)

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1   Additional standards regulate the remaining matters at issue in plaintiff's

2   complaint.  Marketing materials and election forms used by MA plans are regulated

3   by 42 C.F.R. § 422.80.  "Marketing materials" are defined as including "any

4   informational materials targeted to Medicare beneficiaries" which promote the

5   Medicare Advantage plan, inform Medicare beneficiaries about enrollment, explain

6   the benefits of enrollment, or explain how Medicare services are covered under the

7   Medicare Advantage plan. (42 C.F.R. § 422.80(b)(1)-(4).)  If an enrollee believes that

8   a Medicare Advantage plan is marketing its product in violation of these regulations,

9   he or she can file a grievance and participate in a multi-step grievance procedure with

10  CMS.  (42 C.F.R. § 422.564.)

11   Thus, the Medicare Act expressly and completely preempts plaintiff's causes of

12  action against Health Net.  Her complaints about benefits must be addressed through

13  the administrative process described at 42 U.S.C. § 1395w-22(g) and her complaints

14  about marketing representations must be addressed through the administrative process

15  described at 42 C.F.R. § 422.564.[4/]

16  **C.    The Medicare Act, as Amended, Sets Forth a Detailed, and**

17  **Exclusive, Administrative and Post-Exhaustion Judicial Review**

18  **Scheme Addressing All of Plaintiff's State Law Claims for Relief.**

19   In *Heckler v. Ringer, supra,* the United States Supreme Court held that a claim

20  which "arises under" the Medicare Act must first be brought before the Secretary

21  through a multilevel administrative review process.  (*Id.* at 615.)  This administrative

22  review process (which is also expressly set forth in the contract between plaintiff and

23

24  _____

[4/]Plaintiff cites *County of Pierce v. Leavitt,* 244 Fed.Appx. 802 (9th Cir. 2007)
25  for the proposition that the Medicare Act specifically precludes federal question
jurisdiction under 28 U.S.C. section 1331.  However, *Leavitt* specifically states that
26  "§ 405(g) [of the Medicare Act] is the exclusive means of judicial review of the
Secretary's decisions in Medicare cases.  Therefore, unless the requirements of §
27  405(g) would lead to complete preclusion of review, a party bringing suit under the
Medicare statute may only do so pursuant to § 405(g)." (*Id.* at 803.)  As described
28  above, section 405(g) provides for review of the Secretary's decision in the district
court, upon exhaustion of the remedial process set forth therein.

1    Health Net) provides the exclusive remedy for such claims. Judicial review of such
2    claims is available only after the claimant has pressed the claim through every level
3    of the administrative review process to a "final" decision by the Secretary and even
4    then such review may only be obtained in *federal* court. (*Id.* at 605; *see also* 42
5    U.S.C. §§ 405(g), 1394w-22(g)(5).)

6         1.    **Plaintiff's claim of entitlement to MA benefits is preempted.**

7         In her complaint, plaintiff has combined both her claim of entitlement to
8    benefits and allegations of bad faith conduct into one cause of action labeled "bad
9    faith insurance tactics." Plaintiff alleges that Health Net failed to approve and pay for
10   rehabilitation services - clearly health care services - and that Health Net did so in bad
11   faith. Because plaintiff's benefit claims "arise under" Medicare, her cause of action
12   for bad faith failure to pay for services is barred by the exclusive review provisions of
13   the Medicare Act.

14        In the seminal decision in this area, *Heckler v. Ringer, supra,* the United States
15   Supreme Court held that a claim arises under Medicare if (1) both the standing and
16   the substantive basis for the presentation of the claim is the Medicare Act (*Id.* at 615),
17   or (2) the claim is "inextricably intertwined" with a claim for Medicare benefits. (*Id.*
18   at 614.) A claim that is "wholly collateral" to a claim for benefits under the Medicare
19   Act is not subject to the exclusive review provisions of the Act.

20        In *Ringer*, the plaintiffs were four Medicare beneficiaries who suffered from
21   respiratory distress; three had undergone bilateral carotid body resection (BCBR)
22   surgery and were seeking reimbursement of the cost of the procedure, and one sought
23   to have the BCBR surgery but could not afford it unless the procedure was covered
24   by Medicare. (*Id.* at 609-610.) The Secretary of Health and Human Services had
25   ruled that Medicare did not cover the procedure when performed to relieve respiratory
26   distress because the procedure was not generally accepted in the professional medical
27   community and was, therefore, not reasonable and necessary within the meaning of
28   Medicare. (*Id.* at 607.) Plaintiffs filed a complaint in federal district court seeking

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1  both declaratory and injunctive relief.  The district court dismissed the action for lack

2  of jurisdiction concluding that the essence of plaintiffs' claim was one of entitlement

3  to benefits for the BCBR procedure and that plaintiffs were required to exhaust

4  administrative remedies before seeking relief in federal court.  (*Id.* at 610-611.)  The

5  Court of Appeals reversed the decision concluding that exhaustion would be futile

6  and might not fully compensate plaintiffs for their injuries.  (*Id.* at 612.)  The

7  Supreme Court held that the Medicare beneficiaries in *Ringer,* at bottom, sought

8  Medicare reimbursement or authorization for a particular surgical procedure.  Thus,

9  the Court had no difficulty concluding that both the standing and substantive basis of

10  the claims was the Medicare Act, that the claims, therefore, were ones "arising under"

11  Medicare, and that "all aspects of of respondents' claims for benefits should be

12  channeled first into the administrative process which Congress has provided for the

13  determination of claims for benefits."  (*Id.* at 614.)

14       Even before enactment of the 2003 complete pre-emption provision for MA

15  program health plans, cases decided after *Ringer* have interpreted the "arising under"

16  language to mean that claims that are, at bottom, claims for reimbursements of

17  benefits are "inextricably intertwined" with a claim for benefits and, therefore, arise

18  under the Medicare Act.  *(See, e.g., Ardary v. Aetna Health Plans of Calif., Inc.,* 98

19  F.3d 496, 500 (9th Cir. 1996).)  In *Ardary*, the Court of Appeals held that an action

20  for compensatory and punitive damages brought by the heirs of a deceased Medicare

21  beneficiary for a private Medicare provider's failure to authorize an airlift to a larger

22  hospital resulting in the beneficiary's death was not preempted by the Medicare Act.

23  The Court found that the claims were not, at bottom, seeking to recover benefits as a

24  beneficiary's death could not be remedied by the retroactive authorization or payment

25  of the airlift transfer. (*Id.* at 500.)

26  / / /

27  / / /

28  / / /

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1    However, in *Hooker v. United States Department of Health and Human*

2  *Services,* 858 F.2d 525 (9th Cir. 1988), the Ninth Circuit rejected plaintiffs' state law

3  claims arising out of the Social Security Administration's allegedly wrongful

4  termination of disability benefits.  There, Laurence Hooker committed suicide after he

5  was denied further disability benefits.  Among other things, his heirs sued two state

6  employees for negligence.  The district court dismissed the action, holding that 42

7  U.S.C. Section 405 barred plaintiffs' state law claim for negligence, since it was

8  "merely a disguised dispute with the Secretary." (*Id.* at 529.)  The Ninth Circuit

9  affirmed, holding that claims for damages arising out of the Secretary's acts "arise

10  under" the Medicare Act. (*Id.*)  The Court specifically cited to the six-step

11  administrative process that controls this dispute. (*See also, Jenkins v. Social Security*

12  *Administration,* 42 Fed. Appx. 995 (9th Cir. 2002) [plaintiff could not circumvent

13  exhaustion requirement of 42 U.S.C. § 405(h) by characterizing his action as one for

14  civil rights violations].)

15    Here, just as three of the plaintiffs in *Ringer*, plaintiff explicitly seeks

16  reimbursement for medical services she claims should have been provided her, and

17  that she paid for as a result of Health Net's denial of her request for authorization.

18  (*Complaint,* ¶¶ 57 and 61.)  Plaintiff's claim for reimbursement of her out-of-pocket

19  expenses may be addressed by the retroactive payment of the disputed benefits.  Just

20  as in *Ringer*, too, where the plaintiffs challenged the determination that the medical

21  procedure in issue was not "reasonable and necessary" under the Medicare Act (466

22  U.S. at p. 607), so plaintiff here challenges the medical basis of Health Net's decision

23  not to provide her with rehabilitation therapy (*Complaint,* ¶ 58), and seeks

24  reimbursement of the cost of such therapy (*Complaint,* ¶ 61).  Accordingly, her sole

25  remedy is that set forth in the Medicare Act.  As explained in *Ringer*, because

26  Congress has vested in the Secretary the exclusive power to administer the Medicare

27  system, any state court damage award that is logically dependent on a finding of a

28  wrongful denial of benefits is "inextricably intertwined" with a Medicare claim.

4822-9354-4962.1

-11-

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1   (*Ringer, supra* at 614.)  Plaintiff's claims are "inextricably intertwined" with a claim

2   for Medicare benefits and, therefore, arise under the Medicare Act.

### 2.   Plaintiff's "bad faith" claim is preempted.

4   To the extent this claim is for "bad faith" or breach of the implied covenant,

5   instead of for breach of contract, it, too, is preempted.  While Health Net operates a

6   health care service plan and not an insurer, analogizing to insurance law demonstrates

7   that this cause of action must fail, as a matter of law.  It has long been established that

8   a "bad faith" cause of action is "on the contract."  (*See, e.g., 20th Century Ins. Co. v.*

9   *Superior Court,* 90 Cal.App.4th 1247, 1280 (2001); *Prieto v. State Farm Fire &*

10  *Casualty Co.,* 225 Cal.App.3d 1188, 1193 (1990).)  This is because an insurer can be

11  liable for breach of the implied covenant of good faith and fair dealing only if it

12  unreasonably withholds benefits due under the policy.  (*Waller v. Truck Ins.*

13  *Exchange, Inc.,* 11 Cal.4th 1, 35 (1995); *Love v. Fire Ins. Exchange,* 221 Cal.App. 3d

14  1136, 1151 (1990).)  If no benefits are due under the policy, a bad faith claim is

15  barred as a matter of law. (*Brodkin v. State Farm Fire & Casualty Co.,* 217

16  Cal.App.3d 210, 218 (1989); *Ray v. Farmers Ins. Exchange,* 200 Cal.App.3d 1411,

17  1418, fn. 4 (1988).)

18  Thus, a necessary predicate to any "bad faith" cause of action is a

19  determination by the Secretary that there was a breach of contract; i.e., that plaintiff is

20  entitled to rehabilitation services benefits that she did not receive.  Since only the

21  Secretary can make that determination, this cause of action is not yet ripe.

### 3.   Plaintiff's Fraud And Deceit claim is preempted by the Medicare Act

24  Plaintiff alleges in her fraud and deceit cause of action that Health Net engages

25  in a practice of representing to members of the public that, by enrolling in the

26  Seniority Plus plan, enrollees will receive thoroughly adequate care that is superior to

27  that provided by Medicare.  (*Complaint,* ¶ 65.)  Plaintiff claims, however, that Health

28  Net, through the use of incentives and disincentives to health care providers, actually

4822-9354-4962.1

-12-

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1  discourages the rendering of necessary care to its members. (*Complaint,* ¶ 65.)  As a

2  result, plaintiff claims she relied on Health Net's marketing misrepresentations,

3  enrolled in the health plan and received substandard care. (*Complaint,* ¶ 68.)

4      The MMA regulations squarely preempt this cause of action.  Section 422.80 of

5  the Code of Federal Regulations regulates marketing materials, including any

6  informational materials targeted to Medicare beneficiaries which promote the

7  Medicare Advantage plan, inform Medicare beneficiaries about enrollment, explain

8  the benefits of enrollment, or explain how Medicare services are covered under the

9  Medicare Advantage plan, and provide an exclusive remedy for complaints arising

10  out of that marketing material.  (42 C.F.R. § 422.80(b)(1)-(4).)

11      In *Dial v. Healthspring of Ala., Inc.*, 501 F.Supp.2d 1348 (S.D. Ala. 2007) [on

12  appeal to the 11th Circuit], plaintiffs claimed that agents of a Medicare Advantage

13  plan fraudulently induced them to join the plan by misrepresenting plan benefits.

14  They sued the plan for breach of contract, fraud, negligence and other torts.  The plan

15  removed the action, and plaintiffs moved to remand. Plaintiffs argued that they were

16  seeking relief under state law only, and the preemption provision applies only to

17  preclude a state's attempt to establish standards relating to or regulating Medicare

18  Advantage plans.  They also argued that their claims were not related to marketing,

19  enrollment, benefit and coverage, and grievance procedures.  The plan argued that the

20  standards relating to the marketing of the plan and benefits disputes fell solely under

21  federal law, so removal was proper.  The district court found that:

22      [P]laintiffs' causes of action based upon defendants' meeting with the

23      plaintiffs, soliciting their enrollment, and making representations as to

24      the quality and scope of benefits and coverage, and as to plaintiffs'

25      ability to continue treatment with their doctors and hospitals, fall within

26      areas which Congress intended to regulate through the MMA, and thus

27      are preempted by federal law.

28  (*Id.* at 1359.)

4822-9354-4962.1

-13-

1    *Dial* relied, in part, on *First Medical Health Plan, Inc. v. Vega-Ramos, supra,*

2    which stated in dictum, "Congress' purpose in enacting § 1395w-26(b)(3) was to

3    protect the purely federal nature of Medicare Advantage plans operating under

4    Medicare...." (*Id.* at 51-52.)

5    Two cases from the Northern District of California have agreed that the MMA

6    completely pre-empts matters relating to the marketing process underlying plaintiff's

7    fraud claim. In *Clay v. Permanente Medical Group, Inc.*, 2007 WL 4374273 (N.D.

8    Cal. 2007), plaintiff alleged nine causes of action against Kaiser related to the alleged

9    mishandling of a kidney transplant. Kaiser removed the case, alleging jurisdiction

10   pursuant to the Medicare Act, and moved to compel arbitration. The court granted

11   the motion to compel arbitration over the objection that the arbitration clause of the

12   MA plan and enrollment form did not satisfy prominent display requirements of a

13   California statute, Health & Safety Code § 1363.1. Holding that the enrollment form

14   and evidence of coverage were "marketing materials," as that term is defined in 42

15   C.F.R. Section 422.80(b), subject to CMS regulation, the court held that the Medicare

16   Act preempted application of the state statute to litigation claims based on the

17   marketing or sale of MA plans – the basis of plaintiff's fraud and deceit claim here.

18   (*See also, Drissi v. Kaiser Foundation Hospitals, Inc.*, 2008 WL 54382 (N.D. Cal.

19   2007) [same holding].)

20   Plaintiff relies on *McCall v. Pacificare of California, Inc.*, 25 Cal.4th 412

21   (2001) and *Zolezzi v. Pacificare of California, Inc.*, 105 Cal.App.4th 573 (2003) for

22   the proposition that both her fraud and unfair business practices causes of action are

23   not preempted by Medicare. However, both *McCall* and *Zolezzi* were decided before

24   the most recent amendment to Medicare, the MMA, which not only expressly and

25   completely preempted any state law or regulation with respect to MA plans, but also

26   established new standards relating to the regulation of marketing materials and

27   enrollment forms used by MA plans. (42 C.F.R. § 422.80.) If an enrollee believes

28   that a Medicare Advantage plan is marketing its product in violation of these

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1   regulations, he or she can file a grievance and participate in a multi-step grievance

2   procedure with CMS. (42 C.F.R. § 422.564.) Plaintiff's state court fraud claim

3   alleges the improper marketing of Health Net's Medicare Advantage product, and it is

4   therefore preempted, and plaintiffs may only seek judicial review in federal court of

5   the Secretary's decision once the administrative process has been exhausted.

6       Plaintiff also relies on two district court cases out of Alabama and Florida in

7   claiming that the MMA does not preempt plaintiff's causes of action. (*Lassiter v.*

8   *Pacificare Life & Health Ins. Co.*, 2007 U.S. Dist. LEXIS 91970 (Dist. Ala. 2007);

9   *Masey v. Humana, Inc.*, 2007 U.S. Dist. LEXIS 63556 (Dist. Fla. 2007).) Plaintiff,

10  however, misinterprets the *Masey* court's ruling. In *Masey*, plaintiff alleged that

11  Humana improperly categorized her chemotherapy drugs as being covered under

12  Medicare Part D, but that they should have been paid pursuant to Medicare Part B.

13  The Court held that "because Plaintiff's contract claims are inextricably intertwined

14  with a claim of benefits under the Medicare Act, the requirements of presentment and

15  exhaustion must be met prior to the exercise of judicial review." (*Masey, supra* at

16  *24-25.)[5]/ Thus, the holding in *Masey* actually supports Health Net's argument that

17  Sussman's causes of action are preempted.

18      The *Lassiter* opinion is part of the split of authority that currently exists in the

19  11th Circuit with respect to Medicare preemption. The split in authority will be

20  addressed through review of the *Dial* decision, which is currently pending before the

21  11th Circuit Court of Appeals. (*Dial v. Healthspring of Ala., Inc., supra.*) However,

22

---

23  [5]/ With respect to plaintiff's claim under Kentucky's consumer protection law,
    it differs from California's unfair business practices statute in Kentucky's law permits
24  the recovery of punitive damages (*Id.* at *28), while in California, only injunctive
    relief and disgorgement are available. (*See, Dean Witter Reynolds, Inc. v. Superior*
25  *Court*, 211 Cal.App.3d 758, 774 (1989) [a plaintiff can only recover the equitable
    remedy of restitution, not compensatory damages, in an unfair competition claim
26  pursuant to Business & Professions Code section 17200 *et seq.*]; *see also Indus.*
    *Indemnity Co. v. Superior Court*, 209 Cal.App.3d 1093, 1096 (1989) [a private
27  litigant is allowed only injunctive relief and not damages under the unfair
    competition laws].) The services have been rendered so an injunction is moot.
28  Plaintiff is also not entitled to disgorgement of her premium payment (if, indeed, she
    made one) because she admits she received services under her plan.

1    the Ninth Circuit concludes that the MMA completely preempts all state court causes

2    of action concerning Medicare benefits and the marketing of Medicare Advantage

3    health plans. (*See Clay v. Permanente Medical Group, Inc., supra; Drissi v. Kaiser*

4    *Foundation Hospitals, Inc., supra.*)

### 4.    Plaintiff's Unfair Business Practices claim is preempted by the Medicare Act

7        Plaintiff's unfair business practices claim is preempted for the same reason as

8    her fraud and deceit claim.  Plaintiff alleges that Health Net's misleading marketing

9    and its use of combined incentives and disincentives to providers to discourage the

10   rendering of necessary care in order to garner more profits constitutes an unfair

11   business practice within the meaning of California Business and Professions Code

12   Section 17200 *et seq.* (*Complaint*, ¶¶ 71-73.)  Specifically, plaintiff avers that Health

13   Net discouraged the use of physical therapy for good candidates such as the plaintiff

14   and rather attempted to send her to a nursing home as a purportedly less expensive

15   alternative. (*Complaint*, ¶ 72.) These allegations concern both the alleged wrongful

16   denial of benefits to plaintiff, and the purported improper marketing of Health Net's

17   Medicare Advantage product to the public at large.  As discussed above, such claims

18   are preempted by the Medicare Act and the MMA and, therefore, plaintiff's unfair

19   business practices claim is also subject to preemption.

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

## IV.   **CONCLUSION**

For the foregoing reasons, defendant Health Net respectfully requests that the Court deny plaintiff's motion to remand the action to state court in its entirety based on the grounds stated herein.

DATED: April 7, 2008              Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH LLP


By: /s/ KRISTIN P. KYLE de BAUTISTA
        RICHARD B. WOLF
        ELISE D. KLEIN
        JANELLE F. GARCHIE
        KRISTIN P. KYLE de BAUTISTA
        Attorneys for Defendant Health Net of
        California, Inc.
        E-Mail: kyledebautista@lbbslaw.com

OPPOSITION TO PLAINTIFF'S MOTION TO REMAND CASE TO STATE COURT

# FEDERAL COURT CERTIFICATE OF SERVICE
Fred Sussman v. Armelia Sani, M.D., et al. - Case No. 08 CV 0392 H BLM

UNITED STATES DISTRICT COURT
SAN DIEGO FEDERAL COURT - SOUTHERN DISTRICT OF CALIFORNIA

At the time of service, I was over 18 years of age and not a party to the action. My business address is 221 North Figueroa Street, Suite 1200, Los Angeles, California 90012. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On April 7, 2008, I served the following document(s): DEFENDANT HEALTH NET OF CALIFORNIA, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND CASE TO STATE COURT
I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses registered with the Court, if applicable):

Nancy Sussman, Esq.
**HAYWORTH & SUSSMAN**
1901 First Avenue, Suite 220
San Diego, CA 92101
Tel: (619) 231-1215
Attorneys for Plaintiff, *FREDA SUSSMAN*

Thor O. Emblem, Esq.
**LAW OFFICES OF THOR EMBLEM**
205 West Fifth Avenue, Suite 105
Escondido, CA 92025
Tel: (760) 738-9301
Attorneys for Plaintiff, *FREDA SUSSMAN*

Lisa Iulianelli, Esq.
**CARROLL, KELLY, TROTTER, FRANZEN & McKENNA**
P. O. Box 22636
Long Beach, CA 90801-5636
Attorneys for Defendants,*ARMELIA SANI, M.D., SHILEY EYE CENTER UCSD MEDICAL CENTER, REGENTS OF THE UNIVERSITY OF CALIFORNIA, LINDA BEACH, HAIDEE GUTIERREZ*

The documents were served by the following means:

[X]     (BY U.S. MAIL) I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and I placed the envelope or package for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collection and processing correspondence for mailing. Under that practice, on the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service, in a sealed envelope of package with the postage fully prepaid..

[X]     (BY COURT'S CM/ECF SYSTEM) Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on April 7, 2008, at Los Angeles, California.

_Rosa Reza_
Rosa Reza

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

4822-9354-4962.1