RICHARD B. WOLF, SB# 046173
E-Mail: rwolf@lbbslaw.com
ELISE D. KLEIN, SB# 111712
E-Mail: klein@lbbslaw.com
JANELLE F. GARCHIE, SB# 118453
E-Mail: garchie@lbbslaw.com
KRISTIN P. KYLE de BAUTISTA, SB# 221750
E-Mail: kyledebautista@lbbslaw.com
**LEWIS BRISBOIS BISGAARD & SMITH** LLP
650 West "C" Street, Suite 800
San Diego, California 92101
Telephone: (619) 233-1006
Facsimile: (619) 233-8627

Attorneys for HEALTH NET OF CALIFORNIA, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDA SUSSMAN,<br><br>Plaintiff,<br><br>v.<br><br>ARMELIA SANI, M.D., SHILEY EYE CENTER, UCSD MEDICAL CENTER, REGENTS OF THE UNIVERSITY OF CALIFORNIA, HEALTH NET, INC., HEALTH NET SENIORITY PLUS, LINDA BEACH, HAIDEE GUTIERREZ, and DOES 1 through 40, inclusive,<br><br>Defendants. | CASE NO. 08 CV 0392 H BLM<br><br>Honorable Marilyn L. Huff<br>Action Removed: March 3, 2008<br><br>**DEFENDANT HEALTH NET OF CALIFORNIA, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**<br><br>[Filed concurrently with Appendix of Unpublished Federal Authority]<br><br>DATE: April 21, 2008<br>TIME: 10:30 a.m.<br>CTRM: 13 |

Defendant Health Net of California, Inc. hereby submits the following reply brief in support of its motion to dismiss the action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6):

/ / /

/ / /

## I. INTRODUCTION

Plaintiff obfuscates the issues raised in Health Net's motion by ignoring its basis and instead arguing superceded or otherwise inapplicable case law. Simply stated, this action arises out of plaintiff's claim that Health Net wrongfully denied her benefits that should have been available through her Health Net Medicare Advantage (MA) plan. Plaintiff also complains that the marketing materials were misleading. Health Net moved to dismiss on the ground that these complaints are squarely preempted by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA") and the regulations promulgated thereunder. The Medicare Act, as amended, offers internal administrative procedures both to challenge payment or benefit denials and to press claims of misrepresentation in the marketing of MA plans. Moreover, there is clear evidence that Congress's intent in the 2003 amendment was to expand regulatory control over Medicare plans to avoid inconsistent rulings throughout the 50 states.

Plaintiff does not squarely address the impact of the MMA and the regulations on her complaint against Health Net. Instead, she argues case law decided before the passage of the MMA and argues non-controlling authority in an attempt to avoid the administrative remedies afforded by the MMA regulations.

Federal question removal jurisdiction in this Court is appropriate based on the complete preemption of all of plaintiff's claims under the Medicare Act. However, the Court should refrain from exercising jurisdiction now on ripeness grounds, and should dismiss plaintiff's claims to allow her first to exhaust her administrative remedies.

## II. ARGUMENT

### A. Health Net's Jurisdictional And Administrative Arguments Are Based On Settled Law

Where removal jurisdiction is predicated on the existence of a federal question, the federal question must generally appear on the face of the complaint. However, "the 'complete preemption doctrine' carves an exception to this rule. 'Once an area of state law has been completely preempted, any claim purportedly based on that preempted state

law is considered, from its inception, a federal claim, and therefore arises under federal law.'" (*Galvez v. Kuhn*, 933 F.2d 773, 776 (9th Cir. 1991) [citations omitted].)

> [A] state claim may be removed to federal court . . . when a federal statute wholly displaces the state-law cause of action through complete preemption. When the federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. This claim is then removable under 28 U.S.C. § 1441(b), which authorizes any claim that 'arises under' federal law to be removed to federal court.

(*Beneficial National Bank v. Anderson*, 539 U.S. 1, 8-9 (2003).)

### 1. For purposes of this motion, Health Net assumes as true the facts alleged in plaintiff's complaint.

Health Net's motion to dismiss is based on federal preemption and failure to exhaust administrative remedies. It does not dispute any of the facts alleged in plaintiff's complaint; it assumes their truth. Accordingly, *Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004), cited by plaintiff, is irrelevant: It dealt with a motion to dismiss that disputed the truth of jurisdictional and substantive factual allegations. Health Net asserts that the facts, as pleaded, attempt to state claims completely preempted by the Medicare Act. Thus, the motion is not a factual attack on the basis for jurisdiction, but rather an assertion, based on plaintiff's own allegations, of complete Medicare preemption and of the doctrine requiring her to exhaust the administrative remedies of the Medicare Act as amended.

### 2. Plaintiff's state law claims are pre-empted by the Medicare Act as amended by the MMA.

When a federal statute provides the exclusive cause of action for the claims asserted by a plaintiff--especially when it sets forth procedures and remedies governing that cause of action--the state law claims will be recharacterized as federal claims under the "complete preemption" doctrine, establishing federal question removal jurisdiction, if only for the purpose of dismissal on ripeness grounds. (*Beneficial National Bank v. Anderson*, 539 U.S. 1, 9 (2003).) Both of these features – administrative remedies

addressing plaintiff's complaints, followed by exclusive district court judicial review jurisdiction – are present in the case of the Medicare Act, as amended. The Medicare Act and its regulations expressly supersede *"any State law or regulation"* with respect to MA plans (42 U.S.C. § 1395w-26(b)(3)); emphasis added), and the Medicare Act, as amended, sets forth a detailed, and exclusive, administrative scheme for addressing all of plaintiff's state law claims for relief.

Congress has progressively broadened the sweep of the federal preemption effect of the Medicare Act. Initially, the Medicare Act afforded only limited preemption, vesting in the Secretary of Health and Human Services the exclusive authority to determine what claims are covered by the act, and judicial review of that determination exclusively in federal district courts. (*Heckler v. Ringer*, 466 U.S. 602, 605 [104 S.Ct. 2013, 80 L.Ed.2d 622] (1984).) Then the Medicare Act was amended by the Balanced Budget Act of 1997 (BBA), which established the Medicare + Choice program (now MA) as a new part of Medicare, affording beneficiaries a new range of Medicare managed care options. The BBA modified the Medicare Act to preempt state laws concerning only specific subjects, and otherwise only where the state laws were inconsistent with Medicare. (*McCall v. Pacificare of California, Inc.*, 25 Cal.4th 412, 423 (2001).)

In 2003, the Medicare Act was again amended, this time to prohibit any state law relating to MA plans, period. The complete preemption provision was adopted as part of the MMA:

> Relation to State laws. The standards established under this part shall supersede *any* State law or regulation (other than State licensing laws or State laws relating to plan solvency) *with respect to* MA plans which are offered by MA organizations under this part.

(42 U.S.C. § 1395w-26(b)(3). Emphasis added.) Quoting this preemption provision, Judge Conti of the Northern District of California, found:

> [W]hen Congress has 'unmistakably . . . ordained,' that its enactments alone are to regulate a part of commerce, state laws regulating that aspect of commerce must fall. . . . Here, Congress has unmistakably ordained that

Medicare preempts all state regulation. . . .
(*Drissi v. Kaiser Foundation Hospitals, Inc.*, 2008 U.S. Dist LEXIS 2125 (N.D. Cal. 2008).) Plaintiff incorrectly argues that *Clay* and *Drissi* do not refer to the extensive authority relating to complete preemption. On the contrary, in *Clay*, the Court analyzed both the case law and statutory authority in finding complete preemption of plaintiff's Medicare-related claims. The Court considered both *McCall* and *Zolezzi,* and found - as should this Court - that the Court must examine the Medicare Act "as it read at the time relevant to this case." (*Clay v. Permanente Medical Group, Inc.*, 2007 U.S. Dist LEXIS 94670, *12 (N.D. Cal. 2007).) Applying the 2003 MMA amendment, both *Clay* and *Drissi* confirm that Congress intended to "broaden the preemptive effects of the Medicare statutory regime ..." and that claims related to marketing misrepresentations are preempted. (*Clay, supra* at *17; *see also Drissi, supra* at *10.)

The legislative history of the preemption provision of the MMA makes clear that it means what it says: "[T]he [Medicare Advantage Program] is a federal program operated under Federal rules and that State laws, [sic] do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency." (H. Conf. Rep. 108-391 at 557, as quoted in *First Medical Health Plan, Inc. v. Vega-Ramos*, 479 F.3d 46, 51 (1st Cir. 2007).)

3. **Plaintiff's claims are not ripe because plaintiff must first exhaust the administrative remedies afforded under the Medicare Act before she may obtain judicial review in this district court.**

The Medicare Act sets forth a detailed and exclusive administrative scheme for addressing an enrollee's concerns about the provision for, or payment of, medical care under a Medicare Advantage ("MA") plan. In *Heckler v. Ringer, supra,* the United States Supreme Court held that a claim which "arises under" the Medicare Act must first be brought before the Secretary through a multilevel administrative review process. (466 U.S. at 615.) This administrative review process provides the exclusive remedy for such claims. Judicial review of such claims is available **only** after the claimant has pursued

-4-

the administrative review process to a "final" decision by the Secretary and even then such review may only be obtained in *federal* court. (*Id.* at 605; *see also Three Lower Counties Community Health Services, Inc. v. U.S. Dept. of Health & Human Servs.*, 517 F. Supp. 2d 431, 435 (Dist. D.C. 2007) ["Federal subject matter jurisdiction over claims arising under the Medicare Act is permitted only upon the completion of the administrative process outlined in that statute and its implementing regulations."].) Plaintiff's complaints about benefits must be addressed through the administrative process described at 42 U.S.C. § 1395w-22(g) and her complaints about marketing representations must be addressed through the administrative process described at 42 C.F.R. § 422.564.

Health Net asks the Court to follow such cases as *Dielsi v. Falk*, 916 F.Supp. 985, 994 (C.D. Cal. 1996), by declining to remand based on complete federal preemption (there Copyright law), and subsequently dismissing the action for lack of subject matter jurisdiction. Here, the lack of subject matter jurisdiction is reinforced by plaintiff's failure to exhaust her administrative remedies. As pointed out by the Court in *Dielsi*, pp. 994-995,

> [F]ederal courts are often presented with removed state claims that are completely preempted by the Employees' Retirement Income Security Act ('ERISA'). In such a case, the federal court will exercise removal jurisdiction. Then, the Court is presented with the question of whether the plaintiff has exhausted his or her administrative remedies. If exhaustion is not futile, a federal court will refrain from exercising jurisdiction on ripeness grounds and *dismiss* the preempted ERISA claim without prejudice. *See, e.g., Franklin H. Williams Ins. Trust v. Travelers Ins. Co.*, 847 F. Supp. 23 (S.D.N.Y. 1994), *rev'd on other grounds*, 50 F.3d 144 (2d Cir. 1995) (accepting removal jurisdiction but then dismissing for failure to exhaust) ....

(Footnote omitted. Emphasis in original.)

As the court did in *Dielsi*, this Court should dismiss this action as unripe until plaintiff has concluded the mandated administrative process.

**B.  Each of Plaintiff's Claims for Relief Is Squarely Addressed by the Medicare Act, as Amended, and Regulations Thereunder**

While plaintiff pleads three separate claims for relief, the facts alleged describe

-5-
REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)

improper conduct by Health Net in only two areas, both of which are : (1) refusal to reimburse plaintiff after she paid for medical treatment when Health Net declined, because it concluded the treatment was not medically necessary; and (2) false marketing of MA plans to plaintiff and the public, not disclosing that Health Net increases its profits by discouraging care through the use of financial incentives to providers.

### 1. **Plaintiff's reimbursement claim based on Health Net's denial of payment for treatment is preempted.**

A claim arises under Medicare if (1) both the standing and the substantive basis for the presentation of the claim is the Medicare Act, or (2) the claim is "inextricably intertwined" with a claim for Medicare benefits. (*Heckler, supra* 466 U.S. at 614.) A claim that is "wholly collateral" to a claim for benefits under the Medicare Act is not subject to the exclusive review provisions of the Act.

Even before enactment of the 2003 complete preemption provision for MA plans, cases decided after *Ringer* have interpreted the "arising under" language to mean that claims that are, at bottom, claims for reimbursements of benefits are "inextricably intertwined" with a claim for benefits and, therefore, arise under the Medicare Act. *(See, e.g., Ardary v. Aetna Health Plans of Calif., Inc.,* 98 F.3d 496, 500 (9th Cir. 1996).)

Here, plaintiff explicitly seeks reimbursement for medical services she claims should have been provided her, and that she paid for as a result of Health Net's denial of her request for authorization. (*Complaint*, ¶¶ 57 and 61.) Plaintiff's claim for reimbursement of her out-of-pocket expenses may be addressed by the retroactive payment of the disputed benefits. Just as in *Heckler*, too, where the plaintiffs challenged the determination that the medical procedure in issue was not "reasonable and necessary" under the Medicare Act (466 U.S. at p. 607), so plaintiff here challenges the medical basis of Health Net's decision not to provide her with rehabilitation therapy (*Complaint*, ¶ 58), and seeks reimbursement of the cost of such therapy (*Complaint*, ¶ 61). Accordingly, her sole remedy is that set forth in the Medicare Act, which she has failed to exhaust. As explained in *Heckler*, because Congress has vested in the Secretary the

exclusive power to administer the Medicare system, any state court damage award that is logically dependent on a finding of a wrongful denial of benefits is "inextricably intertwined" with a Medicare claim. (*Heckler, supra* at 614.)

### 2. Plaintiff's claim of false marketing of MA plans is preempted.

With the enactment of the MMA in 2003, additional standards regulating the remaining matters at issue in plaintiff's complaint are now in place. Marketing materials and election forms used by MA plans are regulated by 42 C.F.R. § 422.80. "Marketing materials" are defined as including "any informational materials targeted to Medicare beneficiaries" which promote the MA plan, inform Medicare beneficiaries about enrollment, explain the benefits of enrollment, or explain how Medicare services are covered under the MA plan. (42 C.F.R. § 422.80(b)(1)-(4).) If an enrollee believes that a MA plan is marketing its product in violation of these regulations, he or she can file a grievance and participate in a multi-step grievance procedure with CMS. (42 C.F.R. § 422.564.)

Plaintiff alleges in her fraud and deceit cause of action that Health Net engages in a practice of representing to members of the public that, by enrolling in the Seniority Plus plan, enrollees will receive thoroughly adequate care that is superior to that provided by Medicare. (*Complaint,* ¶ 65.) Plaintiff claims, however, that Health Net, through the use of incentives and disincentives to health care providers, actually discourages the rendering of necessary care to its members. (*Complaint,* ¶ 65.) As a result, plaintiff claims she relied on Health Net's marketing misrepresentations, enrolled in the health plan and received substandard care. (*Complaint,* ¶ 68.)

Plaintiff also alleges that Health Net's misleading marketing and its use of combined incentives and disincentives to providers to discourage the rendering of necessary care in order to garner more profits constitutes an unfair business practice within the meaning of California Business and Professions Code Section 17200 *et seq.* (*Complaint,* ¶¶ 71-73.) Specifically, plaintiff avers that Health Net discouraged the use of physical therapy for good candidates such as the plaintiff and rather attempted to send

her to a nursing home as a purportedly less expensive alternative. (*Complaint,* ¶ 72.) These allegations concern both the alleged wrongful denial of benefits to plaintiff, and the purported improper marketing of Health Net's Medicare Advantage product to the public at large. The MMA regulations squarely preempt each of these claims.

### C. Plaintiff Fails to Defeat Preemption and her Duty to Exhaust the MMA Administrative Remedies Prior To Seeking Judicial Review

As described in Health Net's opening brief, two cases from the Northern District of California have held that the MMA completely preempts matters relating to the marketing process underlying plaintiff's fraud and unfair business practices claims. (*Clay v. Permanente Medical Group, Inc.*, 2007 U.S. Dist LEXIS 94670 (N.D. Cal. 2007); *Drissi v. Kaiser Foundation Hospitals, Inc.*, 2008 U.S. Dist LEXIS 2125 (N.D. Cal. 2008).) Plaintiff attempts to distinguish these cases in her opposition brief by characterizing them as disputes over the arbitration clauses contained within the health contracts. However, plaintiff fails to acknowledge that the basis for removal of both *Clay* and *Drissi* to federal court was based on the complete preemption of each plaintiff's state law claims pursuant to the MMA. In other words, the district courts in both *Clay* and *Drissi* could not have retained jurisdiction to even consider the respective motions to compel arbitration absent preemption. Holding that the enrollment form and evidence of coverage were "marketing materials," as defined in 42 C.F.R. § 422.80(b), subject to CMS regulation, the *Clay* court held that the Medicare Act preempted application of the state statute to litigation claims based on the marketing or sale of MA plans – the basis of plaintiff's fraud and deceit and unfair business practices claims here. (*See also Drissi, supra* [same holding].)

Moreover, Plaintiff's opposition brief does not offer any real explanation for why she believes that the MMA should not apply to her benefits and marketing misrepresentation claims. Plaintiff relies on two California cases, *McCall v. Pacificare of California, Inc.*, 25 Cal.4th 412 (2001) and *Zolezzi v. Pacificare of California, Inc.*, 105 Cal.App.4th 573 (2003) for the proposition that both her fraud and unfair business

practices causes of action are not preempted by Medicare. However, both *McCall* and *Zolezzi* were decided before the most recent amendment to Medicare, the MMA, which not only expressly and completely preempted any state law or regulation with respect to MA plans, but also established the new standards relating to the regulation of marketing materials and enrollment forms used by MA plans. (42 C.F.R. § 422.80.)

Plaintiff also relies on several district court cases out of Alabama and one from Florida in claiming that the MMA does not preempt plaintiff's causes of action. (*See Harris v. Pacificare Life & Health Ins. Co.*, 514 F. Supp. 2d 1280 (Dist. Ala. 2007); *Lassiter v. Pacificare Life & Health Ins. Co.*, 2007 U.S. Dist. LEXIS 91970 (Dist. Ala. 2007); *Williams v. Viva Health Ins. Co.*, 2008 U.S. Dist. LEXIS 5639 (Dist. Ala. 2008); and *Masey v. Humana, Inc.*, 2007 U.S. Dist. LEXIS 63556 (Dist. Fla. 2007) ["*Masey I*"].) Plaintiff cites to *Masey I*, a magistrate judge's report recommending dismissal of plaintiff's contract claims, but not her tort or consumer protection claims. (*Masey I, supra.*) The district court **overruled** the magistrate's recommendation that two causes of action be permitted to proceed, and held that the <u>entire action</u> was preempted by Medicare and should be dismissed for plaintiff's failure to exhaust the administrative remedies afforded by the Medicare Act. (*Masey v. Humana, Inc.*, 2007 U.S. Dist LEXIS 70464 (M.D. Fla. 2007) ["*Masey II*"].) The Court held:

> the breach of fiduciary duty and consumer protection claims are 'inextricably intertwined' with what is 'in essence' a claim for Medicare benefits.... The fact that Plaintiff also seeks disgorgement of profits, punitive damages, attorneys' fees, and costs for her tort claims, but not her contract claims, is an artificial distinction designed to "circumvent[] the administrative process by creatively styling [her] benefits claims as collateral [claims] not 'arising under' Medicare." *United States v. Blue Cross & Blue Shield of Ala., Inc.*, 156 F. 3d 1098, 1104 (11th Cir. 1998); *see also Am. Acad. of Dermatology v. Dep't of Health & Human Servs.*, 118 F. 3d 1495, 1499 (11th Cir. 1997) (ruling that a claim seeking an order enjoining the Department of Health and Human Services from refusing to reimburse claims "clearly involves claims for benefits under the Medicare Act.")

(*Masey II, supra* at *9-10.) Thus, the holding in *Masey II* fully supports Health Net's argument that Sussman's causes of action are both preempted and premature.

The *Harris*, *Lassiter* and *Williams* opinions are part of the split of authority that

currently exists in the 11th Circuit concerning Medicare preemption. Plaintiff criticizes *Dial v. Healthspring of Ala., Inc.*, 501 F. Supp.2d 1348 (S.D. Ala. 2007), currently on appeal, which held that state law claims for breach of contract, fraud, negligence and other torts, based on the fraudulent inducement to join a Medicare Advantage plan by the misrepresentation of plan benefits, were preempted by the MMA. Similarly, *Harris*, *Lassiter* and *Williams* each involves allegations that agents made misrepresentations to induce them to enroll in MA plans, allegations not made here.[1] Here, on the other hand, plaintiff's allegations are each squarely addressed by the MMA and its regulations so are, as were the allegations in *Drissi,,Clay*, and *Masey*, unquestionably preempted by the MMA regulations.

Plaintiff's claims alleging marketing misrepresentations and the denial of payment for services fall squarely within two areas for which specific Medicare regulations and internal administrative processes exist. Where such regulations exist, preemption and exhaustion of administrative remedies apply.

## IV. CONCLUSION

For the foregoing reasons, defendant Health Net respectfully requests that its plaintiff's motion to dismiss be granted on the grounds stated herein.

DATED: April 14, 2008        LEWIS BRISBOIS BISGAARD & SMITH LLP

By: /s/ KRISTIN P. KYLE de BAUTISTA
RICHARD B. WOLF
ELISE D. KLEIN
JANELLE F. GARCHIE
KRISTIN P. KYLE de BAUTISTA
Attorneys for Defendant Health Net of California, Inc.
E-Mail: kyledebautista@lbbslaw.com

---

[1] Health Net's motion to dismiss argued that the misrepresentations alleged concern marketing materials, within the regulatory control of the MMA, and plaintiff does not challenge that assertion.