Nancy Sussman SBN108689
HAYWORTH AND SUSSMAN
1901 First Avenue, Suite 220
San Diego, CA 92101
Telephone: (619) 231-1215

Thor O. Emblem SBN 141880
Law Office of Thor Emblem
205 West Fifth Ave., Suite 105
Escondido, CA 92025
Telephone: (760)738-9301

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDA SUSSMAN, | Case No. 08CV0392 |
| Plaintiff, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPLY TO OPPOSITION TO MOTION TO REMAND CASE TO STATE COURT |
| v. | |
| ARMELIA SANI, M.D., SHILEY EYE CENTER, UCSD MEDICAL CENTER, REGENTS OF THE UNIVERSITY OF CALIFORNIA, HEALTH NET OF CALIFORNIA, INC., HEALTH NET SENIORITY PLUS, LINDA BEACH, HAIDEE GUTIERREZ, | |
| DOES 1 through 40, inclusive, | Date: 4/21/08 |
| Defendants | Time: 10:30 a.m. Dept. 13 Magistrate: Barbara Major |

## I.
### THE CASE SHOULD BE REMANDED TO STATE COURT AS THERE IS NO BASIS FOR FEDERAL JURISDICTION

All of the authority referred to by the Defendant is either irrelevant or supports the Plaintiff's

1
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPLY TO OPPOSITION TO MOTION
TO REMAND CASE TO STATE

position. The Defendant's significant reliance upon the reasoning and the result in <u>Dial v Healthspring of Alabama Inc.</u> 501 Fed. Supp. 2d 1348 (S.D. Ala. 2007) is extremely misplaced. The decision has ***uniformly*** been criticized. In denying a post trial motion the Dial court admitted:

The parties point out that at least two other district courts have ruled differently from this court in substantially similar cases and entered orders granting remand upon a finding that plaintiffs' claims were not subject to complete preemption under the MMA. (Doc. 32, Exhibit A, <u>Bolden, et al., v. Healthspring of Alabama, Inc., et al.</u>, Civil Action 07-413-CG-B, 2007 U.S. Dist. LEXIS 77950 and <u>Acoff, et al., v. Healthspring of Alabama, Inc., et al.</u>, Civil Action 07-414-CG-M, 2007 U.S. Dist. LEXIS 77950 (S.D. Ala., 2007); Exhibit B, <u>Harris v. Pacificare Life & Health Ins. Co., et al.</u>, Civil Action 2:06-956-ID, 2007 U.S. Dist. LEXIS 73383 (M.D. Ala., 2007)).

The holding in the <u>Dial</u> case was in fact contradicted by the holding in a companion case, <u>Bolden v. Healthspring of Alabama Inc.</u> 2007 U.S. Dist. LEXIS 77950 (S.D. Ala. 2007):

The court thus finds that Part C of the Medicare Act, as amended by the MMA in 2003, lacks sufficient indication that Congress intended not only to preempt state law within the parameters of the federal statutory scheme, but also to turn state law claims in that area into federal claims or to establish that federal courts had original and removal jurisdiction over such state law claims. In so doing, the court is aware that this ruling is at odds with Judge DuBose's decision in <u>Dial v. HealthSpring of Ala., Inc.</u>, 501 F. Supp. 2d 1348, 2007 WL 2317783 (S.D Ala). Nonetheless, in light of the presumption against finding jurisdiction, <u>Univ. Of S. Ala. v. Am. Tobacco Co.</u>, 168 F.3d at 411, the court can not find the requisite evidence of congressional intent to add to the court's limited jurisdictional grant.

Further, the court in <u>Harris v. Pacificare Life & Health Ins. Co., et al.</u>, Civil Action 2:06-956-ID, 2007 U.S. Dist. LEXIS 73383 (M.D. Ala., 2007)):

Pacificare's reliance on <u>42 U.S.C. § 1395w-26(b)(3)</u> as a complete preemption statute is not supported by any convincing authority or compelling reasoning. Because Pacificare has not demonstrated that <u>42 U.S.C. § 1395w-26(b)(3)</u> "provide[s] the exclusive cause of action" for the wrongful conduct alleged by Plaintiffs or "set[s] forth procedures and remedies governing" Plaintiffs' causes of action, <u>Beneficial National Bank</u>, 539 U.S. at 8, the court finds that complete preemption does not constitute an adequate ground for removal.

Similarly, the court in the very recent case <u>Williams v. Viva Health Ins. Co.</u> 2008 US Dist. LEXIS 5639 (S.D. Ala.) stated that the Dial case was the *only* court to hold that the relevant portions of the Medicare Act entail complete preemption in every case:

2
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPLY TO OPPOSITION TO MOTION TO REMAND CASE TO STATE

Neither the Eleventh Circuit nor any other circuit has addressed whether 1395w-26(b)(3) carries complete preemptive force, but other district courts have found that it does not. See Lassiter v. Pacificare Life & Health Ins. Co., No. 07-583, 2007 U.S. Dist. LEXIS 91970, 2007 WL 4404051, at (M.D. Ala. Dec. 13, 2007); Bolden v. Healthspring of Ala., Inc., Nos. 07-413, 07-414, 2007 U.S. Dist. LEXIS 77950, 2007 WL 4403588, at *10 (S.D. Ala. Oct. 2, 2007); Harris, 514 F. Supp. 2d at 1296. While one court has found that § 1395w-26(b)(3) does completely preempt state law claims, Dial v. Healthspring of Ala., Inc., 501 F. Supp. 2d 1348 (S.D. Ala. 2007), this court joins others in declining to follow Dial. See Lassiter, 2007 U.S. Dist. LEXIS 91970, 2007 WL 4404051, at *2; Bolden, 2007 U.S. Dist. LEXIS 77950, 2007 WL 4403588, at *10; Harris, 514 F. Supp. 2d at 1294 n.13.

Id at   (Emphasis added).

The Court continued:

Moreover, Viva has not shown that Congress intended § 1395w-26(b)(3) to be a complete preemption statute. In effectuating complete preemption under LMRA and ERISA, Congress expressly created a federal cause of action to resolve disputes. 6 See 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees  in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ."); 29 U.S.C. § 1132(f) ("The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action."). Unlike LMRA and ERISA, the MMA does not have a provision providing for a federal cause of action and only requires that federal law "shall supersede any State law or regulation . . . with respect to [Medicare Advantage] plans . . . ." 42 U.S.C. § 1395w-26(b)(3). The plain language of § 1395w-26(b)(3) does not support the conclusion that Congress intended complete preemption.

Finally, in a factually similar case to the case at bar in which the beneficiary of a MMA plan alleged fraud and other state claims, the court in Lassiter v. Pacificare Life & Health Ins. Co. 2007 US Dist LEXIS 91970 (M.D. Ala.) held:

No circuit court of appeals has addressed the question before this Court of whether the MMA completely preempts state law claims and thereby confers federal jurisdiction. However, the issue has been addressed by other district courts. In Harris v. Pacificare Life & Health Ins. Co., 514 F. Supp. 2d 1280, 2007 WL 2846477 (M.D. Ala. 2007) (DeMent, J.), Pacificare attempted to remove state law claims arising out of the sale of a Medicare insurance policy on the ground that § 1395w-26(b)(3) demonstrated Congress's intent for the MMA to completely preempt state law claims, which is the exact same argument they are making to this Court. In Harris, Judge DeMent held that the MMA did not completely preempt state law claims because it does not create an exclusive cause of action. See Harris, 514 F. Supp. 2d 1280, 2007 WL 2846477, at * 10-12. Furthermore, Judge Granade reached the same conclusion in Bolden v. Healthspring of Ala., Inc., No. CV07-413, 2007 U.S. Dist. LEXIS 77950 (S.D. Ala. October 2, 2007). This Court is aware that one court has held that the MMA does completely preempt state law claims. See Dial v. Healthspring of Ala., Inc., 501 F. Supp. 2d 1348 (S.D. Ala. 2007).

3
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPLY TO OPPOSITION TO MOTION TO REMAND CASE TO STATE

1   This Court is persuaded by the reasoning in Harris and Bolden that the MMA does not
2   completely preempt state law claims. A federal statute does not completely preempt state law claims
3   unless Congress intended the federal statute to provide the "exclusive cause of action." See Beneficial
4   Nat'l Bank, 539 U.S. at 8; Geddes, 321 F.3d at 1353 ("The Supreme Court has cautioned that
5   "complete preemption can be found only in statutes with 'extraordinary' preemptive force. Moreover,
6   that 'extraordinary' preemptive force must be manifest in the clearly expressed intent of Congress."
7   (internal citations omitted)). The MMA provides in § 1395w-26(b)(3) that "The standards established
8   under this part shall supersede any State law or regulation (other than State licensing laws or State
9   laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under
10  this part."

11  This language is not sufficient to demonstrate a clear intent by Congress to create an exclusive
12  private federal remedy. Harris, 514 F. Supp. 2d 1280, 2007 WL 2846477, at *11-12. Indeed,
13  Pacificare compares this language to the preemption language in the Employee Retirement Income
14  Security Act of 1974 ("ERISA") § 514(a), codified at 29 U.S.C. § 1144(a). While ERISA is one of
15  the few statutes where the Supreme Court has found complete preemption, it is well settled that
16  complete preemption arises from ERISA's civil enforcement scheme in § 502(a), codified at 29 U.S.C.
17  § 1132(a), and that §514(a) establishes only ordinary preemption. See Butero v. Royal Maccabees Life
18  Ins. Co., 174 F.3d 1207, 1211-12 (11th Cir. 1999). Accordingly, §1395w-26(b)(3) is insufficient to
19  establish a clear Congressional intent that the MMA provides an exclusive private federal remedy.
20  Therefore, this Court lacks jurisdiction over the Plaintiffs' claims and the case must be remanded back
21  to the state court.

22  The Defendant's reliance on two companion cases from the Northern District of California is
23  similarly unavailing. Despite the Defendant's misleading implication that the two cases are
24  independent of one another, they were explicitly based upon almost identical facts and involve the
25  same narrow issue. In Clay v. Permanente Medical Group 2007 WL 4374273 (N.D. Cal. 2007) and
26
27

Drissi v. Kaiser Foundation Hospitals, Inc. 2008 WL 54382 (N.D. 2007), the single issue was whether or not the Defendant's arbitration contract was misleading and violated California law relating to the construction of such agreements. It is crucial to note that *neither court referred to any of the extensive authority* relating to complete pre-emption of state tort claims. The reason is simple: it is clear that federal law pre-empts state claims relating to the contents of MMA agreements. The extensive authority cited *supra* relates on the other hand not to the content of agreements but to the conduct of the Defendant and its agents. The Defendant has therefore not even begun to prove that the two courts "implicitly agreed" that all state tort claims based upon conduct, rather than terms of a contract, are pre-empted.

In fact, the Defendant's reference to the Plaintiff's bad faith claim discloses that the Plaintiff's claim is based upon actionable misconduct, not the terms of a contract. Bad faith insurance tactics are tactics which constitute the withholding of benefits without proper cause. Prudential Ins. Co. of Am. v. Superior Court 98 Cal App 4th 585,605 (2002); Love v. Fire Ins. Exch. 221 Cal App 3d 1136, 49 (1990). The Plaintiff has alleged specific acts of misconduct on the part of the Defendant. After the Plaintiff suffered a major stroke, her first, she was determined to be an excellent candidate for acute rehabilitation. Despite the recommendations for acute rehabilitation, after 4 days at the medical facility where she received treatment for the stroke, UCSD Medical Center, the Defendant's contracting agent indicated that the Plaintiff was not eligible for rehabilitation therapy because a physical therapist said so at the only contracting facility, i.e. Sharp Rehabilitation Hospital, that was covered by her supplemental insurance. Two qualified physicians had determined that the Plaintiff needed immediate and intensive physical therapy. Nonetheless, a non physician "physical therapist" at UCSD stated that the Plaintiff could not endure three hours of rehabilitation services a day, and that she should be transferred to a nursing facility. However, another case worker at Defendant UCSD on the 8th floor confirmed the two physicians' opinion that the Plaintiff met the criteria for acute rehabilitation and suggested Plaintiff's transfer for rehabilitation at Alvarado Hospital. It is important to note that Sharp

5
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPLY TO OPPOSITION TO MOTION TO REMAND CASE TO STATE

1  and Alvarado have the same criteria for admission into acute rehabilitation.  The operative difference
2  is that Defendant HEALTH NET would pay for therapy at Sharp Rehabilitation, but not at Alvarado
3  Rehabilitation.

4  As a result of the denial of services based upon the opinion of a non physician "physical
5  therapist," the plaintiff's daughter, who had the Plaintiff's power of attorney, was informed that the
6  Plaintiff would have to pay for rehabilitation services out of pocket or the Plaintiff would be transferred
7  to a nursing facility, Magnolia.  The Magnolia facility had received numerous citations from the D.H.S.
8  and was one of the worst in San Diego County.  The Plaintiff's family had no choice to transfer the
9  plaintiff to Alvarado Medical Center, to their great expense.

10  Despite being on actual notice of the fact that the Plaintiff had suffered a debilitating stroke and
11  needed immediate rehabilitation services, the Defendant without adequate investigation and with no
12  reasonable basis denied the Plaintiff's request for such services.  The Defendant refused to authorize
13  rehabilitation services in a timely manner, despite being on actual notice that time was of the essence
14  in that immediate rehabilitation was necessary in order to mitigate permanent injury.  The Defendant's
15  decision was ostensibly based upon the groundless opinion of a "physical therapist," in contradiction
16  to the considered opinion of two qualified physicians.

17  The Plaintiff has alleged that the misconduct of the Defendants HEALTHNET is part of a
18  pattern and practice of refusing to pay for adequate care for its members in order to raise its profits.
19  Although Defendants represent to perspective clients that they will receive better care than they would
20  under regular Medicare, such is not the case.  The Defendant uses a combination of incentives and
21  disincentives to discourage the issuance of prescriptions and the rendering of necessary care.  The
22  Defendant does not reimburse providers sufficiently, but rather discourage the provision of necessary
23  care.  The Defendant effectively cause providers to consider their own financial interests as more
24  important than the care of the members of the health plan.

25  In fact, the members of Defendant's health plan would have their interests better served by not
26
27

participating in the Defendant's managed health care plan, but rather by being fee for service Medicare patients. The Defendant effectively discouraged preventative and diagnostic tests such as for diabetes or to detect heart conditions such as atrial fibrillation and murmurs. It discourages the use of physical therapy for good candidates therefor such as the Plaintiff, and rather attempt to send them to nursing homes, which is cheaper. Patients receiving ordinary Medicare benefits would have better access to quality care.

The Plaintiff has alleged that the conduct of the Defendants is actionable, not that the terms of any agreement were not in conformity with federal law. All of the Plaintiff's claims----fraud, bad faith insurance tactics, and unfair business practices—are based upon ordinary state law theories, not federal law. As such, the claims are not pre-empted and the Defendant's motion should be denied.

The Defendant's assertion that the California authority cited by the Plaintiff is not relevant due to the fact that it predated the 2003 amendments to the Medicare statue is patently question-begging. Insofar as every relevant federal opinion save one has held that the 2003 amendments do not completely preempt state law claims, the holdings in McCall and Zolezzi are relevant and on point. The holdings of the courts in McCall v. Pacificare of California 25 Cal 4th 412 (2001) and Zolezzi v. Pacificare of California 105 Cal App 4th 573 (2003) have been vindicated by the vast majority of the courts that have considered the issue of the pre-emptive effects of the 2003 amendments.

The Defendant's claim that the holding in Masey v. Humana, Inc. 2007 US Dist. LEXIS 63556 (M.D. Fla.) supports its position is simply bizarre. The court held that state tort claims were not pre-empted:

A breach of a fiduciary duty is a tort and the beneficiary can obtain redress either at law or in equity for the harm done. King Mt. Condo. Ass'n v. Gundlach, 425 So. 2d 569, 571 (Fla. 4th Dist. Ct. App. 1983). Alternatively, the beneficiary of the fiduciary [*26] duty is entitled to obtain the benefits derived by the fiduciary through the breach of duty. Id. A breach of fiduciary duty will support an award of punitive damages. Laney v. Equity Life Insur. Co., 243 F. Supp. 2d 1347, 1354 (M.D. Fla. 2003). An insured's claim for disgorgement of profits stemming from an insurance company's breach of fiduciary duty is viewed as a request for punitive damages. Carnegie v. Mut. Sav. Life Ins. Co., No. CV-99-S-3292-NE, 2002 U.S. Dist. LEXIS 21396, at *45-56 (N.D. Ala. Nov. 1, 2002).

Thus, Plaintiff's claim for breach of fiduciary duty is not inextricably intertwined with her claim for

7
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPLY TO OPPOSITION TO MOTION TO REMAND CASE TO STATE

reimbursement of benefits. Other courts have held that a beneficiary's claim for breach of fiduciary duty against a Medicare insurer is not a claim arising under the Medicare Act. See e.g., <u>Hofler v. Aetna US Healthcare of Cal., Inc.</u>, 269 F.3d 764, 770 (9th Cir. 2002), overruled in part on other grounds, <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005)(Congress did not intend to abolish all state remedies which might exist against a private Medicare provider for torts committed during its administration of Medicare benefits); <u>Kennedy</u>, 329 F. Supp. 2d at 1317 (claim of breach of fiduciary duty did [*27] not arise under Medicare Act); see also <u>Ardary v. Aetna Health Plans of California, Inc.</u>, 98 F.3d 496, 501 (9th Cir. 1996)(without evidence of Congressional intent to preclude state claims, the "arising under" language should not be interpreted to mean that Medicare providers cannot be held responsible for tortuous acts committed in the context of the denial of Medicare benefits).

3. *Plaintiff's Statutory Consumer Protection Claim Against Humana*

In Count V, Plaintiff asserts that Defendant Humana violated the Kentucky's Consumer Protection Act ("KCPA") by improperly classifying chemotherapy drugs under Medicare Part D.

The KCPA provides that unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are unlawful. Ky. Rev. Stat. § 367.170. If a plaintiff prevails on a KCPA claim and proves defendant's actions are malicious, oppressive or fraudulent, plaintiff may be eligible to recover punitive damages. <u>Hollon v. Consumer Prot. Recovery Ctr.</u>, 417 F. Supp. 2d 849, 852 (E.D. Ky. 2006). The KCPA authorizes the award of attorneys fees and costs. Ky Rev. Stat. § 367.220(3). Assuming the Kentucky consumer protection statute applies to Plaintiff's claim, Plaintiff may be eligible to recover punitive damages, attorneys' fees and costs. As such, this claim is not a claim for reimbursement of medical benefits and is not inextricably intertwined with the Medicare Act. See e.g., <u>Hofler</u>, 296 F.3d at 768 (not clear and manifest intent by Congress to preempt entire field of state regulations regarding Medicare plans); <u>Commonwealth of Pennsylvania v. Tap Pharm. Prods.</u>, 415 F. Supp. 2d 516, 525 n.6 (E.D. Pa. 2005)(Medicare Act does not preempt state's ability to regulate fraudulent billing practices under state consumer protection laws); <u>In re Pharm. Indus. Average Wholesale Price Litig.</u>, 263 F. Supp. 2d 172, 188 (D. Mass. 2003)(same). Thus, Count IV is not inextricably intertwined with Plaintiff's claim for reimbursement of Medicare benefits.

The court concluded:

*CONCLUSION*

Defendants have not shown that Plaintiff's state law claims are expressly preempted by the Medicare Act. However, Plaintiff's contract claims arise under the Medicare Act because these claims are inextricably intertwined with a claim for Medicare benefits. Plaintiff is required to exhaust her administrative remedies before seeking judicial review of her contact claims. Therefore, Counts I and II of Plaintiff's amended complaint should be dismissed.

Plaintiff's tort and consumer protection claims do not arise under the Medicare Act and Plaintiff is not required to exhaust the administrative remedies under the Medicare Act before seeking judicial review of these claims. Defendant Humana's motion to dismiss should be denied as to Counts III and IV.

The Defendant has therefore misrepresented the holding of the <u>Massey</u> court with respect to the Plaintiff's fraud, bad faith insurance tactics, and violation of unfair competition laws. The court

8
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPLY TO OPPOSITION TO MOTION TO REMAND CASE TO STATE

expressly held that **_only_** the breach of contract claims-----not alleged in the present case—are preempted. This court should consider the defendant's misrepresentation of the holding in Massey as an admission of the lack of merit of its position.

The Defendant's reference to the holding in <u>Ingersoll-Rand v. Mclendon</u> 498 U.S. 139 (1990) is unavailing in light of the fact that it relates only to ERISA, not Medicare. Further, the holding in <u>Heckler v. Ringer</u> 466 US 602 (1982) is unavailing, as the vast number of relevant and more recent cases hold that there is no complete preemption in cases such as that at bar.

The Defendant's reference to the holding in <u>Riegel v. Medtronics</u> ----U.S. ----128 S. Ct. 999 (2008) is inappropriate. The Riegel case involved the interpretation of the Medical Devices Amendments 21 U.S.C. 360K(a), ("MDA")which provides:

1. "[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement --

   "(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

   "(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter." 21 U.S.C. § 360k(a).

There is no relationship to the statutes under consideration in this case. Further, even in regard to the MDA, there is no complete preemption of state claims regarding medical devices:

> State requirements are pre-empted under the MDA only to the extent that they are "different from, or in addition to" the requirements imposed by federal law. § 360k(a)(1). Thus, § 360k does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case "parallel," rather than add to, federal requirements. <u>Lohr</u>, 518 U.S., at 495, 116 S. Ct. 2240, 135 L. Ed. 2d 700; see also id., at 513, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (O'Connor, J., concurring in part and dissenting in part). The District Court in this case recognized that parallel claims would not be pre-empted, see App. to Pet. for Cert. 70a-71a, but it interpreted the claims here to assert that Medtronic 's device violated state tort law notwithstanding compliance with the relevant federal requirements, see id., at 68a. Although the Riegels now argue that their lawsuit raises parallel claims, they made no such contention in their briefs before the Second Circuit, nor did they raise this argument in their petition for certiorari. We decline to address that argument in the first instance here.

Id.  The implication, if any, for the present action is not clear.  In any case, the Defendant has not fulfilled its burden of proving that the Plaintiff's claims are preempted.

**CONCLUSION**

Based on the foregoing and on the Plaintiff's motion, the case should be remanded to state court.

Dated: April 14, 2008                                              HAYWORTH AND SUSSMAN

                                                                                Nancy Sussman
                                                                                Attorney for Plaintiff